**EXHIBIT A**

**SCHEDULE A**
**DESCRIPTION**

<u>**Block 1743 and Lot 6**</u>

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Southerly side of 15th Avenue, distant 126.1 feet Easterly from the corner formed by the intersection of the Southerly side of 35th Avenue and the Easterly side of 102nd Street;

RUNNING THENCE Southerly parallel with the Easterly side of 102nd Street, 100 feet;

THENCE Easterly on a line drawn with the Southerly side of 35th Avenue, 45.37 feet to a point where the same is intersected by a line drawn parallel with the Westerly side of 103rd Street and distant 61.88 feet Westerly therefrom;

THENCE Northerly parallel with the Westerly side of 103rd Street, 99.37 feet to the Southerly side of 35th Avenue;

THENCE Westerly along the Southerly side of 35th Avenue, 25.22 feet back to the point or place of BEGINNING.

**Premises known as 102-16 35th Avenue, Corona, New York 11368**

**EXHIBIT B**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2015070800894002001E8DF2

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 45 |
|---|---|---|
| Document ID: **2015070800894002** | Document Date: 06-26-2015 | Preparation Date: 07-08-2015 |

Document Type: AGREEMENT
Document Page Count: 43

| PRESENTER: | RETURN TO: |
|---|---|
| HEIGHTS ABSTRACT, LTD-PICKUP<br>HEIGHTS ABSTRACT, LTD<br>356 COURT STREET<br>BROOKLYN, NY 11231<br>718-624-3100<br>CHRIS@HEIGHTSABSTRACT.COM | KARABELAS & PAPAGIANOPOULOS LLP<br>31-10 37TH AVENUE<br>SUITE 301<br>LONG ISLAND CITY, NY 11101<br>309Q11156 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 1743 | 6 | Entire Lot | 102-16 35TH AVENUE |

Property Type: APARTMENT BUILDING

**CROSS REFERENCE DATA**

Document ID:    2015070800894001
☒ Additional Cross References on Continuation Page

**PARTIES**

| PARTY 1: | PARTY 2: |
|---|---|
| LV 35 AVENUE CORP.<br>102-16 35TH AVENUE<br>CORNA, NY 11368 | ALMA BANK<br>31-10 37TH AVENUE, SUITE 400<br>LONG ISLAND CITY, NY 11101 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,365,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,365,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed      08-06-2015 10:40 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 252.00 | **2015000270948** | |
| Affidavit Fee: | $ | 8.00 | | |

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2015070800894002001C8F72

| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | PAGE 2 OF 45 |
|---|---|

Document ID: **2015070800894002**          Document Date: 06-26-2015          Preparation Date: 07-08-2015
Document Type: AGREEMENT

**CROSS REFERENCE DATA**
CRFN: 2011000346533

MODIFICATION, CONSOLIDATION
AND
<u>EXTENSION AGREEMENT</u>

Dated: June 29, 2015

Between

LV 35 AVENUE CORP.
a New York Corporation
having an address at:
102-16 35th Avenue
Corona, New York 11368
(the "Mortgagor")

And

ALMA BANK
a New York banking corporation
having an office at
31-10 37th Avenue, Ste. 400
Long Island City, New York 11101
(the "Mortgagee")

LOCATION OF PREMISES:

| | |
|---|---|
| Street Address | : 102-16 35th Avenue |
| City of | : New York |
| County of | : Queens |
| State of | : New York |
| Section | : 10 |
| Block | : 1743 |
| Lot | : 6 |

After recording, please return to:

KARABELAS & PAPAGIANOPOULOS LLP
31-10 37th Avenue, Suite 301
Long Island City, New York, 11101

Attachments:  Schedule A, Schedule B

1

AGREEMENT, made the 29th day of June, 2015, between ALMA BANK, a New York banking corporation, having its principal place of business at 31-10 37th Avenue, Ste. 400, Long Island City, New York 11101 ("Mortgagee") and LV 35 AVENUE CORP., a New York Corporation, having an address at 102-16 35th Avenue, Corona, New York 11368 (the "Mortgagor").

WITNESSETH:

WHEREAS, Mortgagee is the holder of the mortgage(s) and the note(s) secured thereby, as described on the attached Schedule B, which mortgage(s) now cover the property known as 102- 16 35th Avenue, Corona, New York, in the County of Queens, City and State of New York (Section: 10, Block: 1743, Lot: 6), as further described on the attached Schedule A, and on which bond(s) and mortgage(s) there is now due and owing the principal sum with interest thereon as more specifically set forth at Schedule B,

WHEREAS, the Mortgagee, as the holder of said notes and mortgages above described, and the Mortgagor, as the owner in fee simple of the property described at Schedule A, have mutually agreed to consolidate and coordinate the liens of the mortgages as set forth at Schedule B and to modify and restate in their entirety the terms thereof and of the notes secured thereby in the manner hereinafter appearing.

NOW THEREFORE, in pursuance of said agreement and in consideration of the sum of One Dollar and other valuable consideration each to the other in hand paid, the receipt and adequacy of which is hereby acknowledged, the parties hereto mutually covenant and agree as follows:

THAT the liens of the mortgages hereinabove mentioned hereby are consolidated and coordinated so that together they shall hereafter constitute in law but one mortgage, a single lien, securing the principal sum of One Million Three Hundred Sixty Five Thousand and XX/100 ($1,365,000.00) Dollars, and interest, upon the property described on Schedule A annexed hereto and made a part hereof.

THAT the time of payment of said principal sum secured by said notes and mortgages, as modified by this agreement is hereby extended so that the same shall be due and payable in accordance with the terms hereof and of that certain Restated Consolidated Substitute Mortgage Note of even date herewith delivered by Mortgagor to Mortgagee (the "Note").

The parties hereto certify that this instrument secures the same indebtedness secured by the said bonds or notes and mortgages hereinabove mentioned, as hereby

2

modified and restated in their entirety, and secures no further or other indebtedness or obligation.

AND, upon the aforesaid considerations and in consideration of the above extension, the Mortgagor does hereby assume, covenant and agree to pay said principal sum and interest as above set forth and not before the maturity thereof, except as otherwise provided herein, as the same is hereby extended, and to comply with the Note and mortgages as hereby consolidated, modified and restated in their entirety (hereinafter collectively, the "Mortgage").

## CERTAIN DEFINITIONS

The Mortgagor and the Mortgagee agree that, unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and to the plural forms of such terms.

"Affiliate" means any person or entity that, directly or indirectly, controls, is controlled by or is under common control of Mortgagor or any Guarantor, as the case may be, or is an inside director or officer of Mortgagor or any Guarantor, as the case may be. For purposes of this definition and for any other definition in this Mortgage, the term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to vote five percent (5%) or more of (i) the voting stock of a corporation, (ii) the partnership interests of a partnership, or (iii) the membership interests of a limited liability company, or to direct or cause the direction of the management and policies of any such entity, whether through the ownership of voting stock, partnership interests, membership interests, by contract or otherwise;

"Chattels" means all fixtures, fittings, appliances, apparatus, equipment, machinery and articles of personal property, and replacements thereof owned by Mortgagor, now or at any time hereafter affixed to, attached to, placed upon or used in any way in connection with the complete and comfortable use, enjoyment, occupancy or operation of the Improvements of the Mortgaged Property.

"Event of Default" means the events and circumstances described as such in Section 2.01 hereof.

"Guarantor" means Jesus Emilio Vera (the "Guarantor"), or any other party or parties who have guaranteed the payment of the Note.

3

"Improvements" means all structures and buildings, and replacements thereof, now or hereafter located upon the Mortgaged Property, including all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever forming part of said structures and/or buildings.

"Interest Rate" means the Interest Rate provided in the Note.

"Default Rate" means the Default Rate provided in the Note, but in no event to exceed the maximum rate allowed by law.

"Mortgaged Property" means the premises described in Schedule A hereto, including all of the air space, easements, rights, privileges, royalties and appurtenances thereunto belonging or in anywise appertaining, and all of the estate, right, title, interest, claim or demand whatsoever of the Mortgagor therein and in the streets, alleys and ways adjacent thereto, either at law or in equity, in possession or expectancy, now or hereafter acquired.

## GRANTING CLAUSE

NOW, THEREFORE, the Mortgagor, in order to secure payment of both the principal of the Note and the interest and any other sums, under this Mortgage and the performance and observance of all the provisions hereof and of the Note including the payment of any sums advanced by the Mortgagee pursuant to this Mortgage (collectively, all of such obligations are hereinafter referred to as the "Indebtedness"), hereby mortgages, hypothecates, pledges, sets over and confirms unto the Mortgagee all its estate, right, title and interest in, to and under any and all of the following described property, whether now owned or held or hereafter acquired:

(a)     the Mortgaged Property;

(b)     the Improvements;

(c)     the Chattels;

(d)     all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of hazard and title insurance and condemnation awards;

(e)     all leases and lettings of the Mortgaged Property now or hereafter entered into and all right, title and interest of the Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of

their obligations thereunder, whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms subject to the Mortgagor's right to possess and apply such cash or securities prior to an Event of Default, including, further, the right, upon the happening of an Event of Default, to receive and collect the rent thereunder.

TO HAVE AND TO HOLD unto the Mortgagee, its successors and assigns forever, together with all the Improvements now or hereafter effected on the Mortgaged Property to its and their own proper use and behoove.  And also the Mortgagor does for itself and its successors and assigns, covenant with the said Mortgagee, its successors and assigns, that at and until the ensealing of these presents he is well seized of the Mortgaged Property in fee simple, and has good right to bargain and sell the same and that the same are free from all encumbrances whatsoever except such as are listed as exceptions to title in the title policy insuring the lien of the Mortgage (the "Permitted Encumbrances").

And furthermore, the Mortgagor does by these presents bind itself and its successors and assigns forever to warrant and defend the Mortgaged Property described in Schedule A to the Mortgagee, its successors and assigns, against all claims and demands whatsoever except as mentioned herein.

ARTICLE I

PARTICULAR COVENANTS OF THE MORTGAGOR

Section 1.01          General Representations, Covenants and Warranties

The Mortgagor represents and warrants that:  (a) it has a good and marketable title to an indefeasible fee estate in the Mortgaged Property subject to no lien, charge or encumbrance, except such as are listed as exceptions to title in the title policy insuring the lien of the Mortgage; (b) the Mortgage is and will remain a valid and enforceable first lien on the Mortgaged Property subject only to the exceptions referred to above; (c) the execution and delivery of the Mortgage and the Note have been duly authorized by the Mortgagor and that there is no provision in any document that evidences or establishes the existence of the Mortgagor requiring further consent for such action by any other entity or person; (d) it is duly organized, validly existing and is in good standing under the laws of the state of its formation or incorporation, as the case may be; (e) it has (i) all necessary licenses, authorizations, registrations, permits and/or approvals and (ii) full power and authority to own its properties and carry on its business as presently conducted and the execution and delivery by it of and performance of its obligations under, the Mortgage and the Note will not result in the Mortgagor being in default under any provisions of any document which

5

evidences or establishes the existence of the Mortgagor or of any mortgage, credit or other agreement to which Mortgagor is a party or which affects the Mortgagor or the Mortgaged Property, or any part thereof; (f) it will preserve such title, and forever warrant and defend the same to the Mortgagee, and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever; (g) the Mortgagor and each Guarantor of the Indebtedness evidenced by the Note is now able to meet its debts as they mature, the fair market value of its assets exceeds its liabilities, and no bankruptcy or insolvency proceedings are pending or contemplated by or against the Mortgagor or the Guarantor; (h) all reports, statements and other data furnished by the Mortgagor and the Guarantor in connection with the loan evidenced by the Note are true and correct and complete in all material respects and do not omit to state any fact or circumstance necessary to make the statements contained therein not misleading; (i) there are no actions, suits, or proceedings pending, or to the knowledge of the Mortgagor threatened, against or affecting the Mortgagor or the Guarantor or the Mortgaged Property; (j) electric, gas, sewer, water facilities and any other necessary utilities are, and at all times hereafter shall be, available in sufficient capacity to service the Mortgaged Property satisfactorily, and any easements necessary to the furnishing of such utility service by the Mortgagor have been obtained and, where necessary, duly recorded; (k) the Mortgagor and the Guarantor are not in default under the terms of any instrument evidencing or securing any Indebtedness of the Mortgagor or the Guarantor, respectively, and there has occurred no event which would, if uncured or uncorrected, constitute a default under any such instrument with the giving of notice, passage of time or both.

    Section 1.02        Further Assurances

    The Mortgagor will, at the sole cost of the Mortgagor, and without expense to the Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, mortgages, assignments, notices of assignment, transfers and assurances as the Mortgagee shall from time to time require, for the better assuring, assigning, transferring and confirming unto the Mortgagee the property and rights hereby mortgaged or assigned or intended now or hereafter so to be, or which the Mortgagor may be, or for carrying out the intention or facilitating the performance of the terms of the Mortgage, or for filing, registering or recording the Mortgage and, on demand, will execute and deliver, and hereby authorizes the Mortgagee to execute and file in the name of the Mortgagor to the extent it may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments to evidence more effectively the lien hereof upon the Mortgaged Property or any part thereof.

    Section 1.03        Lien Upon Chattels

    Section 1.03.1        Filing of Liens

6

The Mortgagor forthwith upon the execution and delivery of the Mortgage, and thereafter from time to time, will cause the Mortgage and any security instrument creating a lien or evidencing the lien hereof upon the Chattels and each instrument of further assurance to be filed, registered and/or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien hereof upon, and the interest of the Mortgagee in, the Mortgaged Property.

Section 1.03.2          Fees and Expenses

The Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the execution and acknowledgement of the Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Chattels and any instrument of further assurance, and all federal, state, county and municipal stamp tax and other taxes, duties, impositions, assessments and charges arising out of or in connection with the execution and delivery of the Note or the recording or enforcement of the Mortgage or any mortgage supplemental hereto, any security instrument with respect to the Chattels or any instrument of further assurance.

Section 1.04          Payment of Money Due

The Mortgagor will punctually pay the principal and interest and all other sums to become due in respect of the Note at the time and place and in the manner specified in any coin or currency of the United States of America which at the time of such payment shall be legal tender for the payment of public and private debts and all such principal and interest due in respect of the Note is hereby deemed an obligation due under the Mortgage.

Section 1.05          Preservation of Entity

The Mortgagor, if a corporation or limited liability company, will, so long as it is owner of the Mortgaged Property or any part thereof, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation or limited liability company under the laws of the state of its establishment and will comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to the Mortgagor or to the Mortgaged Property or any part thereof.

Section 1.06          Acquired Property

All right, title and interest of the Mortgagor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Mortgaged Property hereafter acquired by, or released to, the Mortgagor, or

7

constructed, assembled or placed by the Mortgagor on the Mortgaged Property or any part thereof and all conversions of the security constituted thereby, immediately upon such acquisitions, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further mortgage, assignment or other act by the Mortgagor, shall become subject to the lien of the Mortgage as fully and completely, and with the same effect, as though now owned by the Mortgagor and specifically described in the granting clause hereof, but at any and all times the Mortgagor will execute and deliver to the Mortgagee any and all such further assurances, mortgages or assignments thereof as the Mortgagee may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of the Mortgage.

Section 1.07          Taxes and Other Charges

Section 1.07.1        Taxes and Assessments

Subject to the provisions of this paragraph 1.07.1, the Mortgagor shall pay promptly when due all taxes, assessments, rates, dues, charges, fees, levies, impositions, liabilities, obligations and encumbrances of every kind whatsoever now or hereafter imposed, levied or assessed upon or against the Mortgaged Property or any part thereof, or upon or against the Mortgage or the Indebtedness or other sums secured hereby, or upon or against the interest of the Mortgagee in the Mortgaged Property, as well as all income taxes, assessments and other governmental charges levied and imposed by the United States of America, the State of New York or any other state, municipality or other taxing authority upon or against the Mortgagor or in respect of the Mortgaged Property or any part thereof; provided, however, that the Mortgagor may in good faith, by appropriate proceeding (including, without limitation, payment of the asserted tax or assessments under protest if such payment must be made in order to contest such tax or assessment), contest the validity, applicability or amount of any asserted tax or assessment and pending such contest the Mortgagor shall not be deemed in default hereunder if on or before the due date of the asserted tax or assessment the Mortgagor establishes an escrow acceptable to the Mortgagee in an amount estimated by the Mortgagee to be adequate to cover the payment of such tax or assessment with interest, costs and penalties; and, if the amount of such escrow is insufficient to pay any amount adjudged by a court of competent jurisdiction to be due with all interest, costs and penalties thereon, the Mortgagor shall pay such deficiency no later than the date such judgment becomes final. Upon request by the Mortgagee the Mortgagor shall submit to the Mortgagee paid tax receipts evidencing payment of real estate taxes within sixty (60) days of payment.

Section 1.07.2        Mechanic's and Other Liens

The Mortgagor shall not permit or suffer any mechanic's, laborer's, materialman's statutory or other lien (other than any lien for taxes not yet due) to be created upon the Mortgaged Property. The Mortgagor shall pay, from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, and others

8

which, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part thereof, or on the revenues, rents, issues, income or profits arising therefrom and, in general, the Mortgagor shall do, or cause to be done, at the cost of the Mortgagor and without expense to the Mortgagee, everything necessary to fully preserve the lien of the Mortgage. If any mechanic's lien is filed against the property, the same shall be discharged by Mortgagor within thirty (30) days thereafter, at the Mortgagor's expense, by bonding or otherwise. Upon the Mortgagor's failure to discharge such lien, the Mortgagee shall have the right, but shall not be obligated, to cause the same to be discharged by bond; and the Mortgagor shall on demand reimburse the Mortgagee for all sums so expended, and failure to reimburse the Mortgagee shall constitute a default under the Mortgage.

Section 1.07.3    Tax Escrow

In order to secure the performance and discharge of the Mortgagor's obligations under this paragraph 1.07.3, but not in lieu of such obligations, the Mortgagor will, at the Mortgagee's option, pay to the Mortgagee an amount equal to one-twelfth (1/12) of the next maturing annual taxes, assessments and charges (which charges for purposes of this paragraph shall include, without limitations, water and sewer rents) of the nature described in paragraph 1.07.1 for each month that has elapsed since the last date to which such taxes, assessments and charges were paid; and the Mortgagor will, in addition, pay over to the Mortgagee together with each installment on the Note sufficient funds (as estimated from time to time by the Mortgagee in its sole discretion) to permit the Mortgagee to pay when due said taxes, assessments and charges. Upon demand by the Mortgagee, the Mortgagor shall deliver to the Mortgagee such additional monies as required to make up any deficiencies in the amounts necessary to enable the Mortgagee to pay such taxes, assessments and similar charges and to pay the invoice of the tax service retained by the Mortgagee within thirty (30) days of the billing of such service. Such deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of the Mortgagee, and no interest shall be payable in respect thereof. In the event of a default under any of the terms, covenants and conditions in the Note, the Mortgage or any other instrument securing the Note to be kept, performed or observed by the Mortgagor, the Mortgagee may apply to the reduction of the sums secured hereby, in such manner as the Mortgagee shall determine, any amount under this paragraph 1.07.3 remaining to the Mortgagor's credit.

Section 1.08   Taxes, Fees and Levies Due to Ownership of Note and Mortgage

The Mortgagor will pay any and all taxes, charges, fees and/or levies incurred by or assessed against Mortgagee by reason of its ownership of the Note or the Mortgage and/or resulting from the exercise by Mortgagee of any of its rights and/or remedies provided for under the Mortgage, except for income, franchise or similar taxes. The obligations assumed

9

by Mortgagor pursuant to this Section 1.08 shall survive the exercise by Mortgagee of any of its rights and/or remedies under the Mortgage, and shall survive discharge of the Mortgage.

Section 1.09   Insurance

(a)     The Mortgagor shall keep the Improvements and Chattels insured against damage by fire and other hazards covered by the standard extended coverage insurance policy, and each policy shall be endorsed to name the Mortgagee as an insured thereunder, as its interest may appear, with loss payable to the Mortgagee, without contribution or assessment, under a standard New York mortgagee clause.  Without limiting the foregoing, each policy shall specifically provide that (i) such policy may not be cancelled except upon thirty (30) days prior written notice to the Mortgagee and that no act or thing done by the Mortgagor shall invalidate the policy as against the Mortgagee and (ii) any and all insurance proceeds will be paid to the Mortgagee so long as Mortgagee certifies to the insurer that the unpaid Indebtedness exceeds the proceeds of insurance.  In addition, the Mortgagee may require the Mortgagor to carry such other insurance on the Improvements and Chattels in such amounts as may from time to time be required by institutional lenders, against insurable casualties (including risks of war and nuclear explosion) which at the time are commonly insured against in the case of premises similarly situated.  The Mortgagor will assign and deliver the policy or policies of all such insurance to the Mortgagee, which policy or policies shall have endorsed thereon the standard New York mortgagee clause in the name of the Mortgagee, so and in such manner and form that the Mortgagee and its successors and assigns shall at all times have and hold said policy or policies as collateral and further security for the payment of the Indebtedness until the full payment of the Indebtedness.  In addition, from time to time, upon the occurrence of any change in the use, operation or value of the Mortgaged Property, or in the availability of insurance in the area in which the Mortgaged Property are located, the Mortgagor shall, within ten (10) days after demand by the Mortgagee, take out such additional amounts and/or such other kinds of insurance as the Mortgagee may reasonably require.

(b)     Without limiting any other provisions of this Section 1.09, in no event, however, shall such insurance as required by the Mortgagee in this Section 1.09, or as the Mortgagee may require from time to time be less than the full replacement cost of the Improvements and Chattel located on the Mortgaged Property.  All such insurance policies and endorsements required pursuant to this Section 1.09 shall be fully paid for, nonassessable and contain such provisions and expiration dates and be in such form and amounts satisfactory to the Mortgagee in all respects.  The insurance policies must be from a company licensed to do business in the State where the Mortgaged Property is located and must have at least a minimum policy holders rating of "A-8" or better per the latest rating publication of Property and Casualty Insurers by A.M. Best Company.

10

(c)     The Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Section 1.09, unless the Mortgagee is included thereon as a named insured with loss payable to the Mortgagee under a standard mortgage endorsement of the character above described.  The Mortgagor shall immediately notify the Mortgagee whenever any such separate insurance is taken out and shall promptly deliver to the Mortgagee the policy or policies of such insurance.

(d)     If the Mortgaged Property, or any part thereof, is located in any area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area, the Mortgagor will keep, for as long as any Indebtedness remains unpaid, the Improvements covered by flood insurance in an amount at least equal  to the full amount of the Note or the maximum limit of coverage available for the Mortgaged Property under the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, as the same may have been or may hereafter be amended or modified (and any successor act thereto), whichever is less.

(e)     The Mortgagor shall give the Mortgagee prompt notice of any loss covered by insurance and the Mortgagee shall have the right to join in the Mortgagor in adjusting any loss.  Notwithstanding anything to the contrary contained herein or in Section 254 of the Real Property Law of the State of New York or any other provisions of applicable law, the proceeds of insurance policies coming into the possession of the Mortgagee shall not be deemed trust funds and the Mortgagee shall have the option in its sole discretion to apply any insurance proceeds it may receive pursuant hereto, or otherwise, to the payment of the Indebtedness or to allow all or a portion of such proceeds to be used for the restoration of the Mortgaged Property.  In the event any such insurance proceeds shall be used to reduce the Indebtedness, the same shall be applied by the Mortgagee, after the deduction therefrom and repayment to the Mortgagee of any and all costs incurred by the Mortgagee in the recovery thereof, in any manner it shall designate, including but not limited to, the application of such proceeds to the then unpaid installments of the principal balance due under the Note in the inverse order of their maturity, such that the regular payments, if any, under the Note shall not be reduced or altered in any manner.

(f)     The Mortgagee may allow, in its sole and absolute discretion, the use of such proceeds for the restoration of the Improvements and Chattels, provided the Mortgagee determines that the amount of such insurance proceeds shall be sufficient to complete the restoration, or if the amount of such insurance proceeds shall be insufficient for completion of such restoration and the Mortgagor deposits with Mortgagee an amount equal to the difference between the Mortgagee's said estimated cost of restoration and the insurance proceeds.  In such event the use by the Mortgagor and the advancing by the Mortgagee of the proceeds shall be governed by the terms and conditions for making advances as hereinafter provided in subsection (g) of this Section.

11

(g)      Notwithstanding the foregoing, the Mortgagor shall give the Mortgagee prompt written notice of damage to or destruction of the Improvements and Chattels or any part thereof and, unless the Indebtedness is paid in full to Mortgagee within thirty (30) days of the date of said damage or destruction, and provided that such proceeds are made available to Mortgagor, Mortgagor shall promptly commence and diligently continue to perform the repairs, restoration and rebuilding of the portion of the Improvements and Chattels so damaged or destroyed (hereinafter the "Work") so as to restore the Improvements and Chattels in full compliance with all legal requirements and so that the Mortgaged Property shall be at least equal in value and general utility as they were prior to such damage or destruction, and if such damage or destruction, in the reasonable judgment of the Mortgagee, shall exceed Fifty Thousand ($50,000) Dollars (hereinafter, collectively "Major Work"), the Mortgagor shall, prior to the commencement of the Work, furnish to the Mortgagee for its approval: (1) complete plans and specifications for the Work, with satisfactory evidence of the approval thereof (i) by all governmental authorities whose approval is required and (ii) by an architect satisfactory to the Mortgagee (hereinafter, the "Architect") and which shall be accompanied by the Architect's signed estimate, bearing the Architect's seal, of the entire cost of completing the Work; (2) certified or photostatic copies of all permits and approvals required by law in connection with the commencement and conduct of the Work; and (3) a surety bond or guaranty of the payment for and completion of the Work, which bond or guaranty shall be in form satisfactory to Mortgagee and shall be signed by surety or sureties, or guarantor or guarantors, as the case may be, who are acceptable to the Mortgagee, and in an amount not less than the Architect's estimate of the entire cost of completing the Work, less the amount of insurance proceeds and Mortgagor deposits, if any, then held by the Mortgagee for application toward the cost of the Work.  The Mortgagor shall not commence any of the Work until the Mortgagor shall have complied with applicable requirements referred to in this subsection (g), and after commencing the Work the Mortgagor shall perform the Work diligently and in good faith in accordance with the plans and specifications referred to in this subsection (g), if applicable.

(h)      If the insurance proceeds, less the cost, if any, to the Mortgagee of such recovery and of paying out such proceeds (including reasonable attorneys' fees and costs allocable to inspecting the Work and the plans and specifications therefor) should be paid towards restoration of the Improvements and Chattels or if such insurance proceeds are applied toward such restoration, then such insurance proceeds shall be applied by the Mortgagee as follows:

(i)      To the payment of the cost of the Work and shall be paid out from time to time to the Mortgagor and/or, at the Mortgagee's option exercised from time to time, directly to the contractors, subcontractors, materialmen, laborers, engineers, architects and other persons rendering services or materials for the Work, as said Work progresses except

12

as otherwise hereinafter provided, but subject to the following conditions, any of which the Mortgagee may freely waive:

(A)   If the Work to be done is Major Work, as determined by the Mortgagee, the Architect shall be in charge of the Work;

(B)   Each request for payment shall be made on seven (7) days prior notice to the Mortgagee and shall be accompanied by a certificate of the Architect if one is required under subsection (g) above, otherwise by a certificate of any officer of the Mortgagor, stating (i) that all of the Work completed has been done in compliance with the approved plans and specifications, if any be required under said subsection (g), and in accordance with all provisions of law; (ii) the sum requested is justly required to reimburse the Mortgagor for payments by the Mortgagor to, or is justly due to, the contractor, subcontractors, materialmen, laborers, engineers, architects or other persons rendering services or materials for the Work (giving a brief description of such services and materials), and that when added to all sums, if any, previously paid out by the Mortgagee does not exceed the value of the Work done to date of such certificate, and (iii) that the amount of such proceeds and other deposits remaining in the hands of the Mortgagee will be sufficient on completion of the Work to pay for the same in full (giving in such reasonable detail as the Mortgagee may require an estimate of the cost of such completion);

(C)   Each request shall be accompanied by waivers of liens satisfactory to the Mortgagee covering that part of the Work previously paid for, if any, and by a search prepared by the title company which insured the lien of the Mortgage or by other evidence satisfactory to the Mortgagee, that there has not been filed with respect to the Mortgaged Property or any part thereof any mechanic's lien or other lien or instrument for the retention of title in respect of any part of the Work not discharged of record and that there exist no encumbrances on or affecting the Mortgaged Property or any part thereof other than encumbrances, if any, existing as of the date hereof and which have been approved by the Mortgagee;

(D)   The request for any payment after the Work has been completed shall be accompanied by a copy of all certificates, permits, licenses, waivers and/or other documents required by law to render occupancy of the Mortgaged Property and/or Improvements legal; and

(ii)   Upon completion of the Work and payment in full therefor, or upon failure on the part of the Mortgagor to commence, as provided in subsection (g) of this Section, or diligently to continue the Work, or at any time upon request by the Mortgagor, the Mortgagee may apply the amount of any such proceeds then or thereafter in the hands of the Mortgagee to the payment of the Indebtedness, provided, however, that nothing herein

13

contained shall prevent the Mortgagee from applying at any time the whole or any part of such proceeds to the curing of any default under this Mortgage or the Note.

(i)     In order to secure the performance and discharge of the Mortgagor's obligations under this Section, but not in lieu of such obligations, the Mortgagor will, at the Mortgagee's option, pay to the Mortgagee an amount equal to one-twelfth (1/12) of the next maturing annual insurance premium; and the Mortgagor will, in addition, pay over to the Mortgagee together with each installment on the Note sufficient funds (as estimated from time to time by the Mortgagee in its sole discretion) to permit the Mortgagee to pay when due said insurance premium.

Section 1.10          Failure to Perform Covenants

If the Mortgagor shall fail to perform any of the covenants contained in Section 1.01, 1.03, 1.05, 1.07, 1.08, 1.09, 1.12 or 1.21, the Mortgagee may make advances to perform the same in its behalf upon ten (10) days' prior written notice to Mortgagor, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby.  The Mortgagor will repay on demand all sums so advanced on its behalf with interest at the Default Rate.  The provisions of this Section shall not prevent any default in the observance of any covenant contained in said Section 1.01, 1.03, 1.05, 1.07, 1.08, 1.09, 1.12 or 1.21 from constituting an Event of Default.

Section 1.11          Books and Records

(a)     The Mortgagor will keep adequate records and books of account in accordance with generally accepted accounting principles and will permit the Mortgagee, by its agents, accountants and attorneys, to visit and inspect the Mortgaged Property and examine its records and books of account and to discuss its affairs, finances and accounts with the officers of the Mortgagor, at such reasonable times as may be requested by the Mortgagee.

(b)     The Mortgagor and the Guarantor will deliver to the Mortgagee, (i) within one hundred twenty (120) days after the close of their fiscal years, annual submission of audited financial statements (with all supporting schedules), prepared on an accrual basis; (ii) annual submission of internally prepared balance sheet and statement of profit and loss setting forth in each case, in comparative form, figures for the period ending June 30th of each year, to be submitted ninety (90) days after June 30th of each year; (iii) within ninety (90) days after the close of their fiscal years, annual submission of debt schedule showing any debt outstanding during the year for Mortgagor and Guarantor; (iv) annual federal tax returns within one ninety (90) days after the end of each fiscal year or within thirty (30) days after filing, whichever occurs first; (v) annual certified rent roll; (vi) annual DHCR rent registration summary forms for all rent stabilized apartments; (vii) annual certified income and expense

14

statement. Throughout the term of this Mortgage, the Mortgagor and Guarantor, with reasonable promptness, but not to exceed thirty days, will deliver to the Mortgagee such other information with respect to the Mortgagor and Guarantor as the Mortgagee may request from time to time. All financial statements of the Mortgagor and Guarantor shall be prepared in accordance with generally accepted accounting principles shall be delivered in duplicate and shall be prepared by a firm of certified public accountants satisfactory to the Mortgagee on a review basis. Each such statement shall be accompanied by the certificate of the chief financial or accounting officer or president of the Mortgagor (or Guarantor, as the case may be) stating that he/she knows of no Event of Default, or of any default which after notice or passage of time or both would constitute an Event of Default, which has occurred and is continuing, or, if any such default or Event of Default has occurred and is continuing, specifying the nature and period of existence thereof and what action the Mortgagor and/or Guarantor has taken or proposes to take with respect thereto and, further, advising of (i) any notice of the commencement of any lawsuits initiated against Mortgagor and any Guarantor, whether the same is, or is believed to be, covered by insurance, (ii) any notice of commencement of any proceedings, sanctions or warnings instituted against the Mortgagor or any Guarantor issued to Mortgagor or any Guarantor by any regulatory agency or governmental authority and (iii) any notice relating to any application for an extension of time to file the federal, state or local income tax returns of Mortgagor or any Guarantor, and, except as otherwise specified, stating that the Mortgagor and Guarantor have fulfilled all their obligations under this Mortgage and the Guaranty which are required to be fulfilled on or prior to the date of such certificate.

(c)     The Mortgagor, within ten (10) days upon request by mail, will furnish a written statement duly acknowledged of the amount due, whether for principal or interest on the Note and whether any offsets, counterclaims or defenses exist against the Mortgage, or the Indebtedness, or any part thereof.

Section 1.12        Care of the Mortgaged Property

(a)     The Mortgagor shall preserve and maintain the Mortgaged Property in a first-class state of repair. The Mortgagor shall not permit, commit or suffer any waste, impairment or deterioration of the Mortgaged Property or of any part thereof, and will not take any action or tolerate any condition which will increase the risk of fire or other hazard to the Mortgaged Property or to any part thereof.

(b)     Except as otherwise provided in the Mortgage, no part of the Mortgaged Property shall be removed, demolished or altered, without the prior written consent of the Mortgagee; provided, however, the Mortgagor shall have the right, without such consent, to remove and dispose free from the lien of the Mortgage any part of the Mortgaged Property as from time to time may become worn out or obsolete, as long as that either simultaneously

15

with or prior to such removal, any such mortgaged property shall be replaced with other mortgaged property of equal utility and of a value at least equal to that of the replaced Mortgaged Property when first acquired and free from any security interest of any other person and by such removal and replacement the Mortgagor shall be deemed to have subjected such replacement mortgaged property to the lien of the Mortgage.

(c)     The Mortgagee may enter upon and inspect the Mortgaged Property at any reasonable time upon telephone notice during the life of the Mortgage.

(d)     If any part of the Mortgaged Property shall be lost, damaged or destroyed by fire or any other cause, the Mortgagor will give immediate written notice thereof to the Mortgagee and shall, provided that the Mortgagor received insurance proceeds for such casualty pursuant to paragraph 1.09 hereof, promptly restore the Mortgaged Property to the equivalent of its original condition regardless of whether there shall be ample insurance proceeds therefor. If a part of the Mortgaged Property shall be lost, Mortgagor will promptly restore, repair or alter the remaining Mortgaged Property in a manner satisfactory to the Mortgagee.

(e)     No work required to be performed under this Section shall be undertaken until plans and specifications therefor, prepared by an architect or engineer satisfactory to the Mortgagee, have been submitted to and approved in writing by the Mortgagee.

Section 1.13          Condemnation

The Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Mortgaged Property or any part thereof, will notify the Mortgagee of the pendency of such proceedings. The Mortgagee may participate in any such proceedings and the Mortgagor from time to time will deliver to the Mortgagee all instruments requested by it to permit such participation. In the event of such condemnation proceedings, the award or compensation payable is hereby assigned to and shall be paid to the Mortgagee. The Mortgagee shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. In any such condemnation proceedings, the Mortgagee may be represented by counsel selected by the Mortgagee. The proceeds of any award or compensation so received shall, at the option of the Mortgagee, either be applied toward payment of the Indebtedness, notwithstanding the fact that the Indebtedness may not then be due and payable or to the restoration of the Mortgaged Property pursuant to the same terms, provisions and conditions which are applicable to the use of insurance proceeds as set forth in Section 1.09 (d), (e), (f) and (g) herein. In the event that any portion of the condemnation awards or compensation shall be used to reduce the Indebtedness, same shall be applied by the Mortgagee in any manner it shall designate, including, but not limited to, the application of such award or

16

compensation to the then unpaid installments of the principal balance due under the Note in the inverse order of their maturity such that the regular payments under the Note shall not be reduced or altered in any manner. The Mortgagor upon request by the Mortgagee, shall make, execute and deliver any and all instruments requested for the purpose of confirming the assignment of the aforesaid awards and compensation to the Mortgagee free and clear of any liens, charges or encumbrances of any kind or nature whatsoever. The Mortgagee shall not be limited to the interest paid on the proceeds of any award or compensation, but shall be entitled to the payment by the Mortgagor of interest at the applicable rate provided for in the Note.

Section 1.14          Leases

(a)     The Mortgagor will not (i) execute an assignment of the rents, or any part thereof, from the Mortgaged Property, or (ii) except where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any lease of the Mortgaged Property, or any part thereof, now existing or hereafter to be made, without the prior written consent of Mortgagee, or (iii) modify any such lease so as to shorten the unexpired term thereof or so as to decrease the amount of the rents payable thereunder, or (iv) accept prepayments of any installments of rents to become due under such leases, except prepayments in the nature of security for the performance of the lessees thereunder, or (v) in any other manner impair the value of the Mortgaged Property or the security of the Mortgage.

(b)     The Mortgagor will not execute any lease of all or any portion of the Mortgaged Property without the prior written consent of Mortgagee and will at all times promptly and faithfully perform, or cause to be performed promptly, all of the covenants, conditions, and agreements contained in all leases of the Mortgaged Property, or any part thereof, thereunder to be kept and performed and will at all times do all things necessary to compel performance by the lessee under each lease of all obligations, covenants and agreements by such lessee to be performed thereunder. If any of such leases provide for the giving by the lessee of certificates with respect to the status of such leases, the Mortgagor shall exercise its right to request such certificates within five (5) days of any demand therefor by the Mortgagee.

(c)     The Mortgagor shall furnish to the Mortgagee, within thirty (30) days after a request by the Mortgagee to do so, a written statement containing the names of all lessees of the Mortgaged Property, the terms of their respective leases, the space occupied and the rentals payable thereunder.

(d)     The Mortgagor shall furnish to the Mortgagee copies of all notices received or sent by the Mortgagor pursuant to or in connection with the leases on the Mortgaged Property immediately upon the receipt or sending of such notice by the Mortgagor.

17

Section 1.15         Mortgagee Succeeds to Interest of Lessor

To the extent not so provided by applicable law each lease of the Mortgaged Property, or of any part thereof, shall provide that, in the event of the enforcement by the Mortgagee of the remedies provided for by law or by the Mortgage, the lessee thereunder will, upon request of any person succeeding to the interest of the Mortgagor as a result of such enforcement, automatically become the lessee of said successor in interest, without change in the terms or other provisions of such lease, provided, however, that said successor in interest shall not be bound by (i) any payment of rent or additional rent for more than one (1) month in advance, except prepayments in the nature of security for the performance by said lessee of its obligations under said lease, or (ii) any amendment or modification of the lease made without the consent of the Mortgagee or such successor in interest, such lessee shall execute and deliver an instrument or instruments confirming such attornment.  If the Mortgaged Property, or any part thereof, are located within the State of New York, then reference is hereby made to Section 291-f of the Real Property Law of the State of New York for purposes of obtaining for the Mortgagee the benefit of said Section in connection with the Mortgage.

Section 1.16         Late Charges

In the event any payment provided for herein or in the Note shall become overdue for a period in excess of ten (10) days, a late charge of five (5) cents for each dollar so overdue shall become immediately due to the Mortgagee for the purpose of defraying the expenses incident to handling such delinquent payment, and such charge shall be deemed to be part of the Indebtedness and therefore secured by the Lien of this mortgage.  Late charges shall be payable with the next installment of principal and/or interest due under the Note.

Section 1.17         Trust Funds

The Mortgagor, in compliance with Section 13 of the Lien Law, will receive the advances secured by the Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement and will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purposes.  The Mortgagor agrees that it shall indemnify and hold the Mortgagee harmless against any loss or liability, cost or expense, including, without limitation, any judgments, attorneys' fees, costs of appeal bonds and printing costs arising out of or relating to any proceeding instituted by any claimant alleging priority over the lien of the Mortgage, and/or by any claimant alleging a violation by the Mortgagor or the Mortgagee of any section of Article 3-A of the Lien Law of the State of New York.

Section 1.18         Security Agreement and Financing Statement

18

The Mortgagor (as Debtor) hereby grants to the Mortgagee (as Creditor and Secured Party) a security interest in all Chattels and Intangibles of every nature whatsoever comprising part of the Mortgaged Property.

The Mortgagor shall execute any and all such documents (including without limitation Financing Statements) pursuant to the Uniform Commercial Code of the State of New York, as the Mortgagee may request, to preserve and maintain the priority of the lien created hereby on property which may be deemed personal property or fixtures, and the Mortgagor shall pay to the Mortgagee on demand any expenses incurred by the Mortgagee in connection with the preparation, execution and filing of any such documents. The Mortgagor hereby authorizes and empowers the Mortgagee to execute and file, on its behalf, all Financing Statements and refilings and continuations thereof as the Mortgagee deems necessary or advisable to create, preserve and protect said lien. When and if the Mortgagor and the Mortgagee shall respectively become the Debtor and Secured Party in any Uniform Commercial Code Financing Statement affecting the Mortgaged Property, the Mortgage shall be deemed a security agreement as defined in said Uniform Commercial Code and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be (i) as prescribed herein, (ii) by general law, or (iii) as to such part of the security which is also reflected in said Financing Statement by the specific statutory consequences now or hereafter enacted and specified in the Uniform Commercial Code, all at the Mortgagee's sole election.

The Mortgagor and the Mortgagee agree that the filing of a Financing Statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing the express declaration and intention of the parties hereto, hereinabove stated, that everything used in connection with the production of income from the Mortgaged Property and/or adapted for use therein and/or which is described or reflected in the Mortgage is, and at all times and for all purposes and all proceedings both legal or equitable, shall be regarded as part of the real estate encumbered by the Mortgage irrespective of whether (i) any such lien is physically attached to the Improvements, (ii) serial numbers are used for the better identification of certain equipment items capable of being thus identified in a recital contained herein or in any list filed with the Mortgagee, or (iii) any such item is referred to or reflected in any such Financing Statement so filed at any time. Similarly, the mention in any such Financing Statement of (1) rights in or to the proceeds of any fire and/or hazard insurance policy, or (2) any award in eminent domain proceedings for a taking or for loss of value, or (3) the Mortgagor's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the property mortgaged hereby, whether pursuant to lease or rights to income growing out of the use and/or occupancy of the property mortgaged hereby, whether pursuant to lease or otherwise, shall never be construed as in any way altering any of the rights of the Mortgagee as determined by this instrument or impugning the priority of the Mortgagee's lien granted hereby or by any other recorded document, but such mention in the Financing Statement is declared to be for

19

the protection of the Mortgagee in the event any court or judge shall at any time hold with respect to clauses (1), (2) and (3) hereof that notice of the Mortgagee's priority of interest to be effective against particular class of persons (including, but not limited to, the federal government and any subdivisions or entity of the federal government), must be filed in the Uniform Commercial Code records.

Section 1.19        Assignment of Rents

The assignment described in the Mortgage shall be fully operative without any further action on the part of either party and specifically the Mortgagee shall be entitled, at its option, upon occurrence of any Event of Default hereunder, to all rents, income and other benefits from the mortgaged property whether or not the Mortgagee takes possession of such mortgaged property. The Mortgagor hereby further grants to the Mortgagee the right, at Mortgagee's option, (i) to enter upon and take possession of the Mortgaged Property for the purpose of collecting the said rents, income and other benefits, (ii) to dispossess by the usual summary proceedings any tenant defaulting in the payment thereof to the Mortgagee, (iii) to lease the Mortgaged Property or any part thereof, and (iv) to apply said rents, income and other benefits, after payment of all necessary charges and expenses, on account of the Indebtedness and other sums secured hereby.  At the option of the Mortgagee such assignment and grant shall continue in effect until the Indebtedness and other sums secured hereby are paid, the execution of the Mortgage constituting and evidencing the irrevocable consent of the Mortgagor to the entry upon and taking possession of the Mortgaged Property by the Mortgagee pursuant to such grant whether or not foreclosure has been instituted. Neither the exercise of any rights under this paragraph by the Mortgagee nor the application of any such rents, income or other benefit to the Indebtedness and other sums secured hereby, shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto or to any such notice, but shall be cumulative of all other rights and remedies.

Section 1.20        Expenses

The Mortgagor will pay when due and payable all appraisal fees, recording fees and commissions, abstract fees, title policy fees, escrow fees, attorneys' fees, fees of inspecting architect(s) and engineer(s) and all other costs and expenses of every character which have been incurred or which may hereafter be incurred by the Mortgagee in connection with the issuance of its commitment, the preparation and execution of loan documents and the funding of the loan to the Mortgagor secured hereby; and the Mortgagor will, upon demand by the Mortgagee, reimburse the Mortgagee for all such expenses which have been incurred or which shall be incurred by it; and will indemnify and hold harmless the Mortgagee from and against, and reimburse it for, all claims, demands, liabilities, losses, damages, judgments, penalties, costs, and expenses (including, without limitation, attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by them by reason of, on account of or

20

in connection with any bodily injury or property damage occurring in or upon or in the vicinity of the Mortgaged Property through any cause whatsoever or asserted against them on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Property, or with the Mortgage or any of the Indebtedness evidenced by the Note, excepting for the gross negligence of the Mortgagee or its agents.

       Section 1.21          Hazardous Substance

       (a)     The Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, after due inquiry and investigation, the Mortgaged Property is not now and has not ever been used to generate, manufacture, refine, transport, treat, store, handle dispose, transfer, produce, process or in any manner deal with, Hazardous Materials (as hereinafter defined), and that no Hazardous Materials have ever been installed, placed, or in any manner dealt with on the Mortgaged Property, and that no owner of the Mortgaged Property or any tenant, subtenant, occupant, prior tenant, prior subtenant or prior occupant has received any notice or advice from any governmental agency or any tenant, subtenant or occupant with regard to Hazardous Materials on, from or affecting the Mortgaged Property. The Mortgagor covenants that the Mortgaged Property shall be kept free of Hazardous Materials, and shall not be used to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce, process or in any manner deal with, Hazardous Materials, and the Mortgagor shall not cause or permit, as a result of any intentional or unintentional act or omission on the part of the Mortgagor or any tenant or subtenant or occupant, the installation of Hazardous Materials in the Mortgaged Property or onto any other property or suffer the presence of Hazardous Materials on the Mortgaged Property. The Mortgagor agrees to comply with and ensure compliance by all tenants, subtenants and occupants with all applicable federal, state and local laws, ordinances, rules and regulations. In the event that the Mortgagor receives any notice or advice from any governmental agency, any tenant, subtenant or occupant with regard to Hazardous Materials on, from or affecting the Mortgaged Property, the Mortgagor shall immediately notify the Mortgagee. The Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial, removal, and other actions necessary to clean up and remove all Hazardous Materials, on, from or affecting the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules, regulations, and policies and to the satisfaction of the Mortgagee. For these purposes, "Hazardous Materials" shall include, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances, or related or similar materials, asbestos or any material containing asbestos, or any other substance or material as defined by any Federal, state or local environmental law, ordinance, rule or regulation, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Section 1801, et

21

seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sections 9601, et seq.), and in the regulations adopted and publication promulgated pursuant thereto. These obligations and liabilities of the Mortgagor shall survive any foreclosure involving the Mortgaged Property or the delivery of a deed in lieu of foreclosure.

(b)     The Mortgagor shall protect, indemnify and save harmless the Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorney's fees and expenses), imposed upon or incurred by or asserted against the Mortgagee by reason of (i) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release or threatened release of any Hazardous Materials on, from or affecting the Mortgaged Property or any other property; (ii) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials; (iii) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials; or (iv) any violation of laws, orders, regulations, requirements, or demand of government authorities, or any policies or requirement of the Mortgage which are based upon or in any way related to such Hazardous Materials including, without limitation, attorney or consultant fees, investigation and laboratory fees, court costs, and litigation expenses.

Section 1.22          Compliance with Laws

The Mortgagor covenants and warrants that the Mortgaged Property presently complies with and will continue to comply with all applicable restrictive covenants, applicable zoning and subdivision ordinances and building codes, all applicable health and environmental laws and regulations and all other applicable laws, rules and regulations. If the Mortgagor receives notice from any federal, state or governmental body that it is not in compliance with any such covenant, ordinance, code, law or regulation, the Mortgagor will provide the Mortgagee with a copy of such notice promptly.

ARTICLE II

DEFAULTS

Section 2.01          Event of Default

The term Event of Default, wherever used in the Mortgage shall mean any one or more of the following events:

(a)     if (i) default shall be made in the payment of any interest due under the Note, or in the payment of any installment of principal due under the Note, in either such case, when and as the same shall become due and payable, or (ii) default shall be made in any other

22

payment of the principal of the Note, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any prepayment or otherwise, in each case, as in the Note and the Mortgage provided or default in the payment of any other Indebtedness due to Mortgagee under the Mortgage, or (iii) default shall be made in the payment of any tax required by Section 1.07 to be paid; or

(b)      if default shall be made in the due observance of performance of any covenant, term or agreement on the part of the Mortgagor contained in Section 1.01, 1.03, or 1.08, and such default shall have continued for a period of twenty (20) days after written notice specifying such default shall have been given to the Mortgagor by the Mortgagee, unless such term, covenant or agreement cannot be complied with or such default be cured in such period and provided further that the Mortgagor shall commence compliance with such term, covenant or agreement or curing such default and shall continue to diligently prosecute such compliance or curing such default; or

(c)      if any representation made in Section 1.01 shall have been false when made; or

(d)      if default shall be made in the due observance of performance of any other covenant, term or agreement on the part of the Mortgagor in the Note or in this Mortgage contained, or by Mortgagor or any Guarantor in any other agreement executed in connection herewith including but not limited to subordination agreements, security agreements or collateral assignments of life insurance, and such default shall have continued for a period of thirty (30) days after written notice specifying such default shall have been given to the Mortgagor by the Mortgagee; or

(e)      if by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property, or any part thereof, or of the mortgagor shall be appointed and such order shall not be discharged or Indebtedness dismissed within sixty (60) days after such appointment; or

(f)      if the Mortgagor shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law or to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of the Mortgagor or of any substantial part of its property, of if the Mortgagor shall make any general assignment for the benefit of creditors, or if the Mortgagor shall fail generally to pay its debts as such debts become due, or if the Mortgagor shall take any action in furtherance of any of the foregoing; or

(g)      if any of the creditors of the Mortgagor shall commence against the Mortgagor an involuntary case under any applicable bankruptcy, insolvency or other similar law now

23

or hereafter in effect and if such case shall not be discharged or dismissed within sixty (60) days after the date on which such case was commenced; or

(h)     if final judgment for the payment of money be rendered against the Mortgagor and the Mortgagor shall not discharge the same or cause it to be discharged or bonded within sixty (60) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal; or

(i)     if any of the events enumerated in clauses (e) through (h) of this Section 2.01 shall happen to any Guarantor, if any, or any of its property; or

(j)     if any Guarantor defaults under or attempts to withdraw, cancel or disclaim liability under any guaranty of the Note or any other obligation issued to Mortgagee; or

(k)     if the Mortgagor sells, transfers, assigns, leases, conveys or further encumbers the Mortgaged Property, other than a Permitted Encumbrance, or any part thereof or any interest therein without the prior written consent of the Mortgagee; or

(l)     if a default occurs under any mortgage that is prior or subordinate to the lien of the Mortgage or the mortgagee under any prior or subordinate mortgage commences a foreclosure action in connection with said mortgage; it being further agreed by the Mortgagor that an Event of Default hereunder shall constitute an Event of Default under any such other mortgage or deed of trust held by the Mortgagee; or

(m)     if the Mortgagor, its Affiliates, or any other entity having similar ownership defaults under any other agreement with the Mortgagee; or

(n)     if any shares of the capital stock of the Mortgagor or any Guarantor, if the Mortgagor or such Guarantor is a corporation, shall be sold, assigned, transferred, conveyed, mortgaged, pledged, hypothecated or alienated without the prior written consent of the Mortgagee, or

(o)     if any partnership or equity interest in the Mortgagor or any Guarantor, if the Mortgagor or such Guarantor is a partnership or limited liability company, shall be sold, assigned, transferred, conveyed, mortgaged, pledged, hypothecated or alienated without the prior written consent of the Mortgagee; or

(p)     if it shall be illegal for the Mortgagor to pay any tax referred to in Section 1.08 hereof or if the payment of such tax by the Mortgagor would result in the violation of the usury laws of the State of New York; or

24

(q)     if any person or entity having or claiming an interest in the Mortgagor or Mortgaged Property commences an action or proceeding against the Mortgagor, the Mortgaged Property or any person or entity having or claiming an interest in the Mortgagor or the Mortgaged Property; or

(r)     if any material inaccuracy shall exist in any of the financial statements or in any other information furnished by or to be furnished by the Mortgagor to the Mortgagee pursuant to the provisions of the Mortgage or furnished or to be furnished to the Mortgagee to induce the Mortgagee to make the loan evidenced by the Note; or

(s)     if all or any material part of the Mortgaged Property shall be damaged or taken through condemnation (which term when used herein shall include any damage or taking by any governmental authority or any other authority authorized by the laws of the State of New York or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily for a period in excess of thirty (30) days, or permanently; or

(t)     the entry by any court of last resort of a decision that an undertaking by the Mortgagor as herein provided to pay taxes, assessments, levies, liabilities, obligations and encumbrances is legally inoperative or cannot be enforced, or in the event of the passage of any law changing in any way or respect the laws now in force for the taxation of mortgages or debts secured thereby for any purpose, or the manner of collection of any such taxes, so as to affect adversely the Mortgage or the Indebtedness or other sums secured hereby; or

(u)     death of any Guarantor; or

(v)     failure of Mortgagor, upon request, to furnish a statement of the amount due on the Mortgage and whether any offsets or defenses exist against the Mortgage debt; or

(w)     failure of Mortgagor to exhibit to the Mortgagee within ten (10) days after demand, receipts or other suitable proof of payment showing payment of all taxes, water rates, sewer rents and assessments; or

(x)     failure of Mortgagor to comply with any requirement or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Mortgaged Property within three (3) months from the issuance thereof, unless the Mortgagor shall have taken necessary steps to cure same or is contesting the appropriateness of same; or

(y)     if the Mortgagor or any Guarantor or any other partnership or any corporate or other entity having common ownership with the Mortgagor, defaults under any other agreement

25

or document, now existing or in the future existing, with the Mortgagee or if a default shall be made by the Mortgagor or any Guarantor or any other partnership or corporate entity having common ownership with the Mortgagor in the payment of principal or interest or any charges on any note or other instrument executed, or in the future executed and delivered to the Mortgagee by the Mortgagor or any Guarantor or any other partnership or corporate entity having common ownership with either the Mortgagor or any Guarantor when and as the same shall become due and payable, whether at a due date or by acceleration thereof; or

(z)      if the Mortgagor or any Guarantor shall (i) incur any additional debt or otherwise guaranty, assume, endorse, or otherwise become liable upon the obligations of any third party or (ii) lend, advance or make any financial accommodation to any of its officers, members or shareholders or to any Affiliate or Affiliate's officers, members or shareholders without the prior written consent of Mortgagee; or

(aa)      failure by Mortgagor to maintain throughout the term of this Mortgage an account relationship with the Mortgagee acting as the sole operating account for the Mortgaged Property with sufficient funds on hand for payment by direct debit to such account on the first day of each month of principal, interest, escrow installments, if any, and all other sums due under this Mortgage; or

(bb)      failure by Mortgagor to maintain a minimum Debt Service Coverage Ratio at all times during the term of the Mortgage of at least 1.2 to 1.  Debt Service Coverage Ratio shall be defined as (a) the sum of Mortgagor's after-tax net income, depreciation and amortization, other non-cash expenses and interest expense, less dividends and other distributions to shareholders, divided by (b) the sum of Mortgagor's interest expense and any scheduled principal amortization on all of their respective debt.

## ARTICLE III

## REMEDIES

Section 3.01          Acceleration of Maturity

If an Event of Default shall have occurred, Mortgagee may declare the outstanding principal amount of the Note and the interest accrued thereon, and all other sums secured hereby, to be due and payable immediately, and upon such declaration such principal and interest and other sums shall immediately become due and payable except as otherwise provided in the Note.

Section 3.02          Mortgagee's Power of Enforcement

26

If any Event of Default shall have occurred, Mortgagee may, either with or without entry or taking possession as hereinabove provided or otherwise, and without regard to whether or not the Indebtedness and other sums secured hereby shall be due and without prejudice to the right of the Mortgagee thereafter to, at its option, (a) proceed by way of non-judicial foreclosure pursuant to Article 14 of the Real Property Actions and Proceedings Law, or (b) bring an action of foreclosure or any other action for any default existing at the time such earlier action was commenced, bring any appropriate action of foreclosure or any other action for any default existing at the time such earlier action was commenced: (a) to enforce payment of the Note or the performance of any term thereof or hereof or any other right of the Mortgagee under the Mortgage or any other agreements securing the Note; (b) to foreclose this Mortgage and any other documents securing the Note by judicial or non-judicial proceeding, and to sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the power of sale hereinafter provided or the judgment or decree of a court or courts of competent jurisdiction; and (c) to pursue any other remedy available to it. The Mortgagee shall take action either by such proceedings or by the exercise of its power with respect to entry and/or taking possession, or both, as the Mortgagee may determine.

      Section 3.03         Mortgagee's Rights to Enter and Take Possession, Operate and Apply Income

(a)      If any Event of Default shall have occurred, (i) upon demand of the Mortgagee, the Mortgagor shall forthwith surrender to the Mortgagee the actual possession of the Mortgaged Property and if and to the extent permitted by law, the Mortgagee itself, or by such officers or agents as it may appoint, may enter and take possession of all or a portion of the Mortgaged Property and may exclude the Mortgagor and his agents and employees wholly therefrom and may have joint access with the Mortgagor to the books, papers and accounts of the Mortgagor; and (ii) the Mortgagor will pay monthly in advance to the Mortgagee, on Mortgagee's entry into possession, or to any receiver appointed to collect the rents, income and other benefits of the Mortgaged Property, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may remain in possession of the Mortgagor, and upon default in any such payment will vacate and surrender possession of such part of the Mortgaged Property to the Mortgagee or to such receiver and, in default thereof, the Mortgagor may be evicted by summary proceedings or otherwise.

(b)      If the Mortgagor shall for any reason fail to surrender or deliver the Mortgaged Property or any part thereof after the Mortgagee's demand, the Mortgagee may obtain a judgment or decree conferring on the Mortgagee the right to immediate possession or requiring the Mortgagor to deliver immediate possession of all or part of the Mortgaged Property to the Mortgagee. The Mortgagor shall pay the Mortgagee, upon demand, all costs and expenses of obtaining such judgment or decree and reasonable compensation to the

27

Mortgagee, its attorneys and agents, and all such costs, expenses and compensation shall, until paid, be secured by the lien of the Mortgage.

(c)     Upon every such entering upon or taking of possession, the Mortgagee may hold, store, use, operate, manage and control the Mortgaged Property and conduct the business thereof, and, from time to time:

(i)   make and conduct all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire fixtures, personal and other mortgaged property;

(ii)  insure and keep the Mortgaged Property insured;

(iii) manage and operate the Mortgaged Property and exercise all the rights and powers of the Mortgagor in its name or otherwise with respect to the same;

(iv)  enter into agreements with others to exercise the powers herein granted the Mortgagee, all as the Mortgagee from time to time may determine; and the Mortgagee may collect and receive all the rents, income and other benefits thereof, including those past due as well as those thereafter due; and shall apply the monies so received by the Mortgagee in such priority as the Mortgagee may determine to (1) the payment of interest, principal, and other payments due and payable on the Note, or pursuant to the Mortgage, (2) the deposits for taxes and assessments and insurance premiums due, (3) the cost of insurance, taxes, assessments and other proper charges upon the Mortgaged Property or any part thereto, (4) the compensation, expenses and disbursements of the agents, attorneys and other representatives of the Mortgagee.

The Mortgagee, at its option, shall surrender possession of the Mortgaged Property to the Mortgagor only at such time that all amounts due under any of the terms of the Note and the Mortgage shall have been fully paid and all defaults cured.  The same right to taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

Section 3.04          Purchase by Mortgagee

28

Upon any such foreclosure sale, the Mortgagee may bid for and purchase the Mortgaged Property and, upon compliance with the terms of sale, may hold, retain and possess and dispose of such property in his own absolute right without further accountability.

Section 3.05          Application of Indebtedness Toward Purchase Price

Upon any such foreclosure sale, the Mortgagee may, if permitted by law, and after allowing for costs and expenses of the sale, compensation and other charges, in paying the purchase price, apply any portion or all of the Indebtedness and other sums due to the Mortgagee under the Note, the Mortgage or any other instrument securing the Note, in lieu of cash, to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon.

Section 3.06          Waiver of Appraisement, Valuation, Stay, Execution and Redemption Laws

The Mortgagor agrees to the full extent permitted by law that in case of a default on its part hereunder, neither the Mortgagor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of the Mortgage or the absolute sale of the Mortgaged Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and the Mortgagor for itself and all who may at any time claim through or under it, hereby waives, to the full extent that may be lawfully so do, the benefit of all such laws, and any and all right to have the assets comprising the Mortgaged Property marshalled upon any foreclosure of the lien hereof and agrees that the Mortgagee or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property in part or as an entirety.  Mortgagor agrees that neither it nor any Guarantor will assert a defense in any action to recover a deficiency judgment following a foreclosure that the sales price realized at the sale was less than the fair market value.

Section 3.07          Receiver

If any Event of Default shall have occurred, the Mortgagee, to the extent permitted by law and without regard to the value, adequacy or sufficiency of the security for the Indebtedness and other sums secured hereby, shall be entitled as a matter of right if it so elects to the appointment of a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents, income and other benefits thereof and apply the same as the court may direct. The expenses, including receiver's fees, reasonable attorneys' fees, costs and reasonable agent's compensation, incurred pursuant to the powers herein contained shall be secured by the Mortgage.  The right to enter and take possession of and to manage and operate the

29

Mortgaged Property and to collect all rents, income and other benefits thereof, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law or in equity and may be exercised concurrently therewith of independently therewith or independently thereof. The Mortgagee shall be liable to account only for such rents, income and other benefits actually received by the Mortgagee, whether received pursuant to this Section or Section 3.03. Notwithstanding the appointment of any receiver or other custodian, the Mortgagee shall be entitled as pledgee to the possession and control of any cash, deposits, or instruments at the time held by, or payable or deliverable under the terms of the Mortgage to, the Mortgagee.

Section 3.08            Suits to Protect the Mortgaged Property

The Mortgagee shall have the power and authority to institute and maintain any suits and proceedings as the Mortgagee may deem advisable in its judgment (a) to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or any violation of the Mortgage, (b) to preserve or protect its interest in the Mortgaged Property, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order might impair the security hereunder or be prejudicial to the Mortgagee's interest.

Section 3.09            Proofs of Claim

In case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceedings affecting the Mortgagor or any Guarantor, co-maker or endorser of any of the Mortgagor's obligations, its creditors or its property, the Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such proceedings for the entire amount due and payable by the Mortgagor under the Note, the Mortgage and any other instrument securing the Note, at the date of the institution of such proceedings, and for any additional amounts which may become due and payable by the Mortgagor after such date.

Section 3.10            Mortgagor to Pay the Note on Any Default in Payment; Application of Monies by Mortgagee

(a)        If default shall be made in the payment of any amount due under the Note, the Mortgage or any other instrument securing the Note, then, the Mortgagee shall be entitled, unless precluded under the Note or any of the documents securing the Note or executed in connection therewith (collectively the "Loan Documents") to seek a judgment against the Mortgagor for the whole amount so due and unpaid, together with costs and expenses, including without limitation the reasonable compensation, expenses and disbursements of the

30

Mortgagee's agents, attorneys and other representatives, either before, after or during the pendency of any proceedings for the enforcement of the Mortgage; and the right of the Mortgagee to recover such judgment shall not be affected by any taking possession or foreclosure sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the terms of the Mortgage, or the foreclosure of the lien hereof.

(b)     In case of a foreclosure sale of all or any part of the Mortgaged Property and of the application of the proceeds of the sale to the payment of the sums secured hereby or payable hereunder, the Mortgagee shall, unless precluded under the Note or the Loan Documents from seeking a deficiency judgment against the Mortgagor or any Guarantor, be entitled to enforce payment from the Mortgagor or any Guarantor of all amounts then remaining due and unpaid and to recover judgment against the Mortgagor or Guarantor for any portion thereof remaining unpaid, with interest.

(c)     The Mortgagor hereby agrees, to the extent permitted by law, that no recovery of any such judgment by the Mortgagee and no attachment or levy of any execution upon any of the Mortgaged Property or any other property shall in any way affect the lien of the Mortgage upon the Mortgaged Property or any part thereof or of any lien, rights, powers or remedies of the Mortgagee hereunder, but such lien, rights, powers and remedies shall continue unimpaired as before.

(d)     Any monies collected or received by the Mortgagee under this Section 3.10 shall be applied to the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of the Mortgagee, and the balance remaining shall be applied to the payment of amounts due and unpaid under the Note, the Mortgage and the Loan Documents.

(e)     The provisions of this paragraph shall not be deemed to limit or otherwise modify the provisions of any guaranty of the Indebtedness evidenced by the Note.

Section 3.11          Delay or Omission No Waiver

No delay or omission of Mortgagee or of any holder of the Note to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to waive any such Event of Default or to constitute acquiescence therein.  Every right, power and remedy given to the Mortgagee may be exercised from time to time and as often as may be deemed expedient by the Mortgagee.

Section 3.12          No Waiver of One Default to Affect Another

31

No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon.  If the Mortgagee (a) grants forbearance or an extension of time for the payment of any sums secured hereby; (b) takes other or additional security for the payment thereof; (c) waives or does not exercise any right granted in the Note, the Mortgage or any instrument securing the Note; (d) releases any part of the Mortgaged Property from the lien of the Mortgage or any other instrument securing the Note; (e) consents to the filing of any map, plat or replat of the Mortgaged Property; (f) consents to the granting of any easement on the Mortgaged Property; or (g) makes or consents to any agreement changing the terms of the Mortgage or subordinating the lien or any charge hereof, then, except as otherwise provided by an instrument executed by the Mortgagee, no such act or omission shall release, discharge, modify, change or affect the original liability under the Note, the Mortgage or otherwise of the Mortgagor or any subsequent purchaser of the Mortgaged Property or any part thereof.  No such act or omission shall preclude the Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default nor, except as otherwise expressly provided in an instrument executed by the Mortgagee, shall the lien of the Mortgage be altered thereby, except to the extent of releases as described in subparagraph (d) above of this Section 3.12.  In the event of the sale or transfer by operation of law or otherwise of all or any part of the Mortgaged Property, the Mortgagee, without notice to any person, firm or corporation, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Mortgaged Property or the Indebtedness secured hereby, or with reference to any of the terms or conditions hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any of the liabilities or undertakings hereunder.

Section 3.13          Discontinuance of Proceedings; Position of Parties Restored

If the Mortgagee shall have proceeded to enforce any right or remedy under the Mortgage by foreclosure, entry or otherwise and such proceedings shall have resulted in a final determination adverse to the Mortgagee, then and in every such case the Mortgagor and the Mortgagee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of the Mortgagee shall continue as if no such proceedings had occurred or had been taken.

Section 3.14          Remedies Cumulative

` No right, power or remedy conferred upon or reserved to the Mortgagee by the Note, the Mortgage or any other instrument securing the Note is exclusive of any other right, power or remedy, but each such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note

32

or any other instrument securing the Note, or now or hereafter existing as law, in equity or by statute.

Section 3.15          Defeasance

If Mortgagor shall pay or cause to be paid the principal of and premium, if any, and interest on the Note, in accordance with the terms thereof, and if the Mortgagor shall pay or cause to be paid all sums payable hereunder by the Mortgagor and shall comply with all terms, conditions and requirements hereof, then the Mortgage shall be null and void and of no further force and effect and shall be released by the Mortgagee upon the written request and at the expense of the Mortgagor.

Section 3.16          Interest After Event of Default

If an Event of Default shall have occurred, all sums outstanding and unpaid under the Note and the Mortgage shall, at the Mortgagee's option, bear interest at the Default Rate.

ARTICLE IV

MISCELLANEOUS PROVISIONS

Section 4.01          Construction of Mortgagee Rights

All covenants hereof shall be construed as affording to the Mortgagee rights additional to and not exclusive of the rights conferred under the provisions of Section 254 and 273 of the Real Property Law of the State of New York.

Section 4.02          Successors in Interest

All of the grants, terms, conditions, provisions and covenants of the Mortgage shall run with the land, shall be binding upon the Mortgagor and shall inure to the benefit of the Mortgagee, subsequent holders of the Mortgage and their respective successors and assigns. For the purpose of the Mortgage, the term "Mortgagor" shall include and refer to the mortgagor named herein, any subsequent owner of the Mortgaged Property, or any part thereof, and their respective heirs, executors, legal representatives, successors and assigns. If there is more than one Mortgagor, all their undertakings hereunder shall be deemed joint and several.

Section 4.03          Jurisdiction

33

The enforcement of the Mortgage shall be governed, construed and interpreted by the laws of the State where the Mortgaged Property is located. Nothing in the Mortgage, the Note or in any other agreement between the Mortgagor and the Mortgagee shall require the Mortgagor to pay, or the Mortgagee to accept interest in an amount which would subject the Mortgagee to any penalty or forfeiture under applicable law. In the event that the payment of any charges, fees or other sums due hereunder or under the Note or any such other agreement, which are or could be held to be in the nature of interest and which would subject the Mortgagee to any penalty or forfeiture under applicable law, then, ipso facto, the obligations of the Mortgagor to make such payment shall be reduced to the highest rate authorized under applicable law. Should the Mortgagee receive any payment which is or would be in excess of the highest rate authorized under law, such payment shall have been, and shall be deemed to have been, made in error, and shall automatically be applied to reduce the outstanding balance of the Indebtedness.

Section 4.04        Receipt of Copy of Mortgage

The Mortgagor acknowledges that it has received a true copy of the Mortgage. The Mortgage may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original; and all such counterparts shall together constitute but one and the same mortgage.

Section 4.05        Cover Page

The information set forth on the cover hereof is hereby incorporated herein.

Section 4.06        Mortgage is Security Agreement

The Mortgagor expressly agrees, intending that the Mortgagee rely thereon, that the Mortgage also shall constitute a "security agreement", as such term is defined in the Uniform Commercial Code in the jurisdiction wherein the Mortgaged Property are situated (the "Code"). The Mortgaged Property includes, and shall be deemed to include, inter alia, the Chattels regardless of whether they are held or hereafter acquired, of the Mortgagor in, to and under the Mortgaged Property. By executing and delivering the Mortgage, the Mortgagor has granted, in the same manner and with the same effect described in the Granting Clause hereof, to the Mortgagee, as additional security, a security interest in the Chattels which are subject to the Code. If any Event of Default shall occur, the Mortgagee shall have, in addition to any and all other rights and remedies set forth in the Mortgage, and may exercise without demand, any and all rights and remedies granted to a secured party under the Code, including, but no limited to, the right to take possession of the Chattels, or any part thereof, and the right to advertise and sell the Chattels, or any part thereof, pursuant to and in accordance with the power of sale provided for in the Mortgage. The Mortgagor agrees that

34

any notice of sale or other action intended by the Mortgagee with respect to the Chattels, or any part thereof, shall constitute reasonable notice if it is sent to the Mortgagor not less than ten (10) days prior to any such sale or intended action.

Section 4.07          Reappraisal of Mortgaged Property

At reasonable intervals, the Mortgagee may order a reappraisal of the Mortgaged Property by an independent appraiser of its selection, or by a employee of the Mortgagee, and Mortgagor agrees to allow access to the Mortgaged Property to such independent appraiser or employee of the Mortgagee upon reasonable notice under the circumstances, and in the case of an independent appraiser, the Mortgagor shall pay such appraiser's reasonable fees and expenses.

Section 4.08          Jurisdiction

The Mortgagor agrees to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of the Mortgage.

Section 4.09          Consent of Mortgagee

Whenever the consent or approval of the Mortgagee is required, the decision whether to consent or approve shall be in the sole and absolute discretion of the Mortgagee.

Section 4.10          Construction of Loan Document

The Mortgage, the Note and all other documents executed and delivered in connection herewith or therewith shall be given a fair and reasonable construction in accordance with the intention of the parties as expressed herein and therein and without regard for any rule of law requiring construction against the party who prepared such instruments.

Section 4.11          Removal of Top Soil and Other Materials from Property

The Mortgagor covenants that no top soil, sand, sod, loam, clay or gravel shall be mined, stripped or removed from the Mortgaged Property. However, this covenant shall not be construed to forbid or restrict removal of any such material taken from excavations necessary to construct a basement, cellar, or foundation footings for the erection of a building or buildings for which a building permit or permits has or have first been issued by the local governmental authority having jurisdiction over the Mortgaged Property.

Section 4.12          Authority to Execute Mortgage

35

The execution of this Mortgage, the Note, and all agreements and documents executed in connection hereto or thereto have been duly authorized by all of the members of the Mortgagor, if Mortgagor is a limited liability company, or the vote of two-thirds of the entire Board of Directors, provided that if there are two or more directors, the vote of a majority of the entire Board shall be sufficient, if the Mortgagor is a corporation.

Section 4.13      Addresses for Notices, Etc.

(a)      Any notice, report, demand or other instrument authorized or required to be given or furnished shall be addressed to the party intended to receive the same, at the address of such party set forth below and shall be deemed effective for all purposes (i) upon delivery, if delivered in person, (ii) within three (3) days, if sent by registered or certified mail, return receipt requested, or (iii) within one (1) day, if sent by nationally recognized overnight courier:

MORTGAGEE:      ALMA BANK
31-10 37th Avenue, Ste. 400
Long Island City, NY 11101

with a copy to:      KARABELAS & PAPAGIANOPOULOS LLP
31-10 37th Avenue, Suite 301
Astoria, New York 11101
Attn: Michael Papagianopoulos, Esq.

MORTGAGOR:      LV 35 AVENUE CORP.
102-16 35th Avenue
Corona, New York 11368

with a copy to:      WILLIAM L. SENA, ESQ.
37-32 75th Street
Jackson Heights, New York 11372

(b)      Any party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties.

Section 4.14      Headings

36

The headings of the articles, sections, paragraphs and subdivisions of the Mortgage are for convenience of reference only, are not to be considered a part hereof, and shall not limit or expand or otherwise affect any of the terms hereof.

Section 4.15          Invalid Provisions to Affect No Others

In the event that any of the covenants, agreements, terms or provisions contained in the Note, or in the Mortgage or in any other instrument securing the Note shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein or in the Note or in any other instrument securing the Note shall be in no way affected, prejudiced or disturbed thereby.

Section 4.16          Changes, Etc.

Neither the Mortgage nor any term hereof may be changed, waived, discharged or terminated orally, or by any action or inaction, but only be an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.

Section 4.17          Required Notices

The Mortgagor shall notify the Mortgagee promptly of the occurrence of any of the following: (i) receipt of notice from any governmental authority relating to the Mortgaged Property; (ii) receipt of any notice from any tenant leasing all or any portion of the Mortgaged Property; (iii) any change in the occupancy of the Mortgaged Property; (iv) receipt of any notice from the holder of any other lien or security interest in the Mortgaged Property; or (v) commencement of any judicial or administrative proceedings by or against or otherwise affecting the Mortgagor, the Guarantor (if any), the Mortgaged Property or any entity controlled by or under common control with the Mortgagor or the Guarantor, or any other action by any creditor thereof as a result of any default under the terms of any loan.

Section 4.18          Set-Off

Mortgagor represents, warrants and covenants that there are no offsets, counterclaims or defenses against the Indebtedness, the Mortgage or the Note and that Mortgagor and the undersigned has full power, authority and legal right to execute the Mortgage and to keep and observe all of the terms of the Mortgage on Mortgagor's part to be observed or performed.

Section 4.19          Right to Prepay

37

The Mortgagor shall have the right to prepay the Note, in whole or in part, with or without the payment of a premium, penalty or other charges as provided in the Note.

Section 4.20          WAIVER OF JURY TRIAL

THE MORTGAGOR AND THE MORTGAGEE AGREE THAT ANY LITIGATION GROWING OUT OF ANY CONTROVERSY WITH RESPECT TO, IN CONNECTION WITH OR ARISING OUT OF THE MORTGAGE OR ANY INSTRUMENT OR DOCUMENT DELIVERED PURSUANT HERETO WILL BE TRIED BY A COURT BY A JUDGE SITTING WITHOUT A JURY. THE MORTGAGOR AND THE MORTGAGEE CONFIRM THAT THE FOREGOING WAIVER OF A TRIAL BY JURY IS INFORMED AND FREELY MADE.

NO FURTHER TEXT ON PAGE

38

IN WITNESS WHEREOF, this Agreement has been duly executed by the Mortgagor and Mortgagee this 29th day of June, 2015.

LV 35 AVENUE CORP.

By: Jesus Emilio Vera, Pres.

ALMA BANK

By: _____

Richard Ferranti

STATE OF NEW YORK )
                  )ss.:
COUNTY OF QUEENS  )

On the 29th day of June, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared Jesus Emilio Vera, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MITCHEL GUBERMAN
Notary Public, State of New York
No. 01GU4849405
Qualified in Nassau County
Commission Expires January 6, 2018

STATE OF NEW YORK )
                  )ss.:
COUNTY OF QUEENS  )

On the 29th day of June, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared Richard Ferranti, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

HECTOR ALEXIADES
Notary Public, State of New York
No. 02AL6016470
Qualified in Queens County
Commission Expires November 23, 20___
January 16, 2019

39

SCHEDULE A

40

SCHEDULE B

SCHEDULE OF MORTGAGES

**Mortgage "A"**

Revolving Credit Line Mortgage dated September 16, 2011 made by JESUS EMILIO VERA and HILDA VERA to ALMA BANK in the principal sum of $750,000.00 recorded in the Office of the City Register of Queens County on September 30, 2011 in CRFN 2011000346533, on which said Mortgage A, as above described, as consolidated, there now remains unpaid the principal sum of $677,025.39;

**Mortgage "B"**

Gap Mortgage dated June 29, 2015, made by LV 35 AVENUE CORP. to ALMA BANK in the principal sum of $687,974.61 and to be recorded simultaneously herewith, on which said mortgage there now remains unpaid the principal sum of $687,974.61;

**Which Mortgages A and B above described are herein consolidated to form a single lien in the amount of $1,365,000.00, all covering the premises known as 102-16 35th Avenue, Corona, New York, in the County of Queens, City and State of New York (Section: 10, Block: 1743, Lot: 6).**

41

MODIFICATION, CONSOLIDATION

AND EXTENSION AGREEMENT

ALMA BANK

with

LV 35 AVENUE CORP.

Section:      10
Block:        1743
Lot:          6
County:       QUEENS

RECORD AND RETURN TO:

KARABELAS & PAPAGIANOPOULOS LLP
31-10 37th Avenue, Suite 301
Long Island City, New York, 11101

42

**SCHEDULE A**

**DESCRIPTION**

Title Number: **309Q11156**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of 15th Avenue distant 126.1 feet Easterly from the corner formed by the intersection of the Southerly side of 35th Avenue and the Easterly side of 102nd Street;

RUNNING THENCE Southerly parallel with the Easterly side of 102nd Street, 100 feet;

THENCE Easterly on a line drawn with the Southerly side of 35th Avenue, 45.37 feet to a point where the same is intersected by a line drawn parallel with the Westerly side of 103rd Street and distant 61.88 feet Westerly therefrom;

THENCE Northerly parallel with the Westerly side of 103rd Street, 99.37 feet to the Southerly side of 35th Avenue;

THENCE Westerly along the Southerly side of Avenue, 25.22 feet back to the point or place of BEGINNING.

## SECTION 255 AFFIDAVIT

State of New York   )
                    ) ss.
County of Queens   )

       I, Jesus Emilio Vera, being duly sworn, depose and say:

       1.  I am the President of LV 35 AVENUE CORP., a New York Corporation, having an address at 102-16 35th Avenue, Corona, New York 11368 ("Borrower") and am fully familiar with all the facts and circumstances set forth below.

       2.  On this date, Borrower entered into a loan in the total amount of Six Hundred Eighty Seven Thousand Nine Hundred Seventy Four and 61/100 ($687,974.61) Dollars from Alma Bank (the "Lender"), evidenced by a Restated Consolidated Substituted Mortgage Note and secured by a Modification, Consolidation and Extension Agreement (the "Mortgage").

       3.  That the Mortgage consolidates the lien of certain prior mortgages having an outstanding principal balance of Six Hundred Seventy Seven Thousand Twenty Five and 39/100 ($677,025.39) Dollars ("Prior Mortgages"), as listed on the Schedule of Mortgages attached hereto, on the premises commonly known as 102- 16 35th Avenue, Corona, New York, in the County of Queens, City and State of New York (Section: 10, Block: 1743, Lot: 6), and the full mortgage tax has previously been with respect to such Prior Mortgages.

       4.  That the Mortgage now forms a single lien in the amount of One Million Three Hundred Sixty Five Thousand and XX/100 ($1,365,000.00) Dollars, and the Mortgage is being delivered to the Office of the City Register, Queens County, for recording simultaneously with this Affidavit.

       5.  That the Mortgage does not create any new or additional indebtedness nor did the Lender advance any additional funds to Borrowers with respect to the Prior Mortgages.

       6.  I respectfully request that the Mortgage be accepted for recording without the payment of any additional tax on the Prior Mortgages in accordance with the provisions of Section 255 of the New York Tax Law.

Sworn to before me on this
29th day of June, 2015

_____
Jesus Emilio Vera

Notary

MITCHEL GUBERMAN
Notary Public, State of New York
No. 01GU4849405
Qualified in Nassau County
Commission Expires January 6, 2018

## SCHEDULE OF MORTGAGES

Revolving Credit Line Mortgage dated September 16, 2011 made by JESUS EMILIO VERA and HILDA VERA to ALMA BANK in the principal sum of $750,000.00 recorded in the Office of the City Register of Queens County on September 30, 2011 in CRFN 2011000346533.

<u>SECTION 255 AFFIDAVIT</u>

State of New York   )
                    ) ss.
County of Queens    )

    I, Jesus Emilio Vera, being duly sworn, depose and say:

    1.  I am the President of LV 35 AVENUE CORP., a New York Corporation, having an address at 102-16 35th Avenue, Corona, New York 11368 ("Borrower") and am fully familiar with all the facts and circumstances set forth below.

    2.  On this date, Borrower entered into a loan in the total amount of Six Hundred Eighty Seven Thousand Nine Hundred Seventy Four and 61/100 ($687,974.61) Dollars from Alma Bank (the "Lender"), evidenced by a Restated Consolidated Substituted Mortgage Note and secured by a Modification, Consolidation and Extension Agreement (the "Mortgage").

    3.  That the Mortgage consolidates the lien of certain prior mortgages having an outstanding principal balance of Six Hundred Seventy Seven Thousand Twenty Five and 39/100 ($677,025.39) Dollars ("Prior Mortgages"), as listed on the Schedule of Mortgages attached hereto, on the premises commonly known as 102-16 35th Avenue, Corona, New York, in the County of Queens, City and State of New York (Section: 10, Block: 1743, Lot: 6), and the full mortgage tax has previously been with respect to such Prior Mortgages.

    4.  That the Mortgage now forms a single lien in the amount of One Million Three Hundred Sixty Five Thousand and XX/100 ($1,365,000.00) Dollars, and the Mortgage is being delivered to the Office of the City Register, Queens County, for recording simultaneously with this Affidavit.

    5.  That the Mortgage does not create any new or additional indebtedness nor did the Lender advance any additional funds to Borrowers with respect to the Prior Mortgages.

    6.  I respectfully request that the Mortgage be accepted for recording without the payment of any additional tax on the Prior Mortgages in accordance with the provisions of Section 255 of the New York Tax Law.

                                   Sworn to before me on this
                                   29th day of June, 2015

_____       _____
Jesus Emilio Vera                     Notary

MITCHEL GUBERMAN
Notary Public, State of New York
No. 01GU4849405
Qualified in Nassau County
Commission Expires January 6, 2018

## SCHEDULE OF MORTGAGES

Revolving Credit Line Mortgage dated September 16, 2011 made by JESUS EMILIO VERA and HILDA VERA to ALMA BANK in the principal sum of $750,000.00 recorded in the Office of the City Register of Queens County on September 30, 2011 in CRFN 2011000346533.

**EXHIBIT C**

<u>RESTATED CONSOLIDATED SUBSTITUTE MORTGAGE NOTE</u>

DATE OF NOTE:               June 29, 2015

PRINCIPAL AMOUNT:           $1,365,000.00. This Note represents a total consolidated
                            indebtedness in the aforesaid principal amount which
                            is the sum of:

                            (a) The outstanding principal balance of $677,025.39,
                            which is now due and owing on and with respect to the
                            bonds, notes or obligations held by, or otherwise in
                            favor of Alma Bank (the "Prior Notes"), as is set forth at
                            the Schedule of Notes attached hereto; and

                            (b) The Gap Mortgage Note of even date herewith in
                            the original principal amount of $687,974.61.

                            This Restated Consolidated and Substitute Mortgage
                            Note is given by the undersigned in substitute for the
                            Prior Notes, but not in payment, satisfaction or
                            cancellation of the outstanding indebtedness evidenced
                            by the Prior Notes, which indebtedness shall now and
                            hereafter be evidenced by this Note.

INTEREST RATE:              For the first five years, five (5.00%) percent per annum,
                            thereafter adjusted.

DEFAULT RATE:               Sixteen (16%) percent per annum, but in no event to
                            exceed the maximum rate allowed by law.

MATURITY DATE:              July 1, 2025

        FOR VALUE RECEIVED, the undersigned, LV 35 AVENUE CORP., a New York
Corporation, having an address at 102-16 35th Avenue, Corona, New York 11368
(hereinafter, the "Borrower"), does hereby covenant and promise to pay to the order of
Alma Bank (hereinafter with its successors or assigns being collectively termed the
"Lender"), having an office at 31-10 37th Avenue, Ste. 400, Long Island City, New York
11101, or at such other place or places as the Lender may designate to the Borrower in
writing from time to time, in coin or currency of the United States which is then legal
tender for the payment of public or private debts, the Principal Amount, together with
interest on the Principal Amount at the Interest Rate, from the date hereof until such
amount is paid in full.

1. Interest will accrue from the date hereof at the rate of 5.00% per annum to and including June 30, 2020 and shall thereafter adjust as set forth in greater detail below. The Principal Amount, together with interest thereon at the Interest Rate, shall be payable as follows:

A. On the date of the closing of this loan, interest only, from the date hereof to and including the 30th day of June, 2015;

B. On and from August 1, 2015 and on the first day of each month thereafter through and including July 1, 2020, in constant and consecutive monthly payments of principal and interest in the amount of Seven Thousand Three Hundred Twenty Seven and 62/100 ($7,327.62) Dollars, which includes interest at the rate of 5.00% and is based on a thirty (30) year amortization of the original outstanding principal amount;

C. Commencing on July 1, 2020 and until June 30, 2025, interest will accrue at an annual interest to be charged on the then unpaid principal balance equal to the five year Federal Home Loan Bank of New York ("FHLBNY") published rate of interest adjusted to constant maturity, as in effect on the first business day of the month for the calendar month ninety (90) days prior to the commencement of the sixth year of the Loan plus 275 basis points and rounded up to the nearest one-eighth (0.125%) percent per annum, but in no event shall said interest rate be less than 5.00% per annum. Commencing on August 1, 2020 and on the first day of each month thereafter through and including June 1, 2025, Borrower shall make monthly payments of accrued interest plus principal computed on the unpaid principal balance based on the remaining Twenty Five (25) year amortization period of the original Thirty (30) year amortization period. If the FHLBNY is not available, the Lender may substitute same with a comparable index;

D. On the Maturity Date, the entire unpaid Principal Amount, together with all accrued and unpaid interest, in one lump sum.

E. The monthly payments shall be applied first to interest and second to principal.

F. Interest shall be calculated on the basis of a 360 day year. The amount of each monthly payment made by Borrower that is allocated to interest will be based on the actual number of calendar days during such month and shall be calculated by multiplying the unpaid principal balance of this Note by the per annum interest rate, dividing the product by 360 and multiplying the quotient by the actual number of days elapsed during the month. Borrower understands that the amount allocated to interest for each month will vary depending on the actual number of calendar days during such month.

2. A late payment premium equal to five (5.00%) percent of any principal, interest or escrow payment made more than ten (10) days after the due date thereof shall be due with any such late payment.

3. This Note is secured by and the parties hereto are entitled to the benefits of that certain Modification, Consolidation and Extension Agreement, of even date herewith (the "Mortgage"), made by the Borrower to the Lender, encumbering, among other things, certain real property and improvements now or hereafter located on said real property, known as 102-16 35th Avenue, Corona, New York, in the County of Queens, City and State of New York (Section: 10, Block: 1743, Lot: 6), as more particularly described in the Mortgage, all of the covenants, conditions and agreements of the Mortgage being made a part hereof by this reference.

4. It is expressly agreed that, upon the failure of the Borrower to timely make any payment due hereunder, or upon the happening of any "Event of Default" as said term is defined in the Mortgage, the entire unpaid principal balance of this Note, together with accrued interest and all other expenses, including, but not limited to reasonable attorneys' fees, shall immediately become due and payable at the option of the holder of this Note, notwithstanding the Maturity Date set forth herein. Upon the occurrence of an Event of Default, whether or not the Lender exercises any of its rights and remedies contained herein, including the right to declare all Indebtedness to be immediately due and payable, the Borrower shall pay interest on the unpaid principal balance hereunder at a rate equal to the Default Rate. The unpaid principal balance hereunder shall bear the Default Rate of Interest until (i) all Indebtedness is paid in full; (ii) the Borrower has cured said Event of Default to the satisfaction of the Lender; or (iii) the Lender, in writing, has waived said Event of Default.

5. Notwithstanding anything to the contrary contained in this Note, this Note is subject to the express condition that at no time shall the Borrower be obligated or be required to pay interest on the principal balance of this Note at a rate which could subject the Lender either to civil or criminal penalty as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If by the terms of this Note the Borrower at any time is required or obligated to pay interest on the principal balance of this Note at a rate in excess of such maximum rate then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any prior interest payments made in excess of such maximum rate shall be applied and shall be deemed to have been payments made in reduction of the principal balance of this Note.

6. Subject to the terms and conditions set forth below, Borrower shall have the right to prepay the Principal Amount, in whole, or partially, upon not less than thirty (30) days prior written notice (the "Prepayment Notice"), which notice shall be irrevocable, to Lender specifying the date on which prepayment is to be made (the "Prepayment Date") and the amount of any such prepayment (the "Prepayment Amount"). On the Prepayment Date, Borrower shall pay (i) the Prepayment Amount, (ii) interest accrued and unpaid on the Prepayment Amount to and including the last day immediately prior to the Prepayment Date, (iii) in the event the Prepayment Amount equals the entire outstanding Principal

Amount, all other unpaid indebtedness secured by the Mortgage and (iv) a premium (the "Prepayment Premium") equal to a percentage of the Prepayment Amount calculated as follows:

      (a)     Five (5%) percent of the Prepayment Amount during the first and sixth year of the loan.

      (b)     Four (4%) percent of the Prepayment Amount during the second and seventh year of the loan.

      (c)     Three (3%) percent of the Prepayment Amount during the third and eighth year of the loan.

      (d)     Two (2%) percent of the Prepayment Amount during the fourth and ninth year of the loan.

      (e)     One (1%) percent of the Prepayment Amount during the fifth and tenth year of the loan.

      (f)     90 days or less prior to the completion of the fifth and tenth year of the loan, borrower may prepay the loan without a Prepayment Premium.

For purposes of this Note, the first year of the loan shall commence on the date of this Note and shall end on the last day of June, 2016.

Prepayments shall be applied to the unpaid principal installments of this Note in the inverse order of their regular maturities, shall not affect the duty of the Borrower to pay all installments when due or change the amount of such installments and shall not affect or impair the right of the Lender to pursue all remedies available to the Lender under this Note. The Prepayment Premium shall apply to any prepayments, voluntary and involuntary, except in the event of casualty or condemnation, including those made after acceleration of maturity of this Note.

7. Should the indebtedness represented by this Note or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection upon default, the Borrower agrees to pay, in addition to the principal, interest due and payable hereon, all costs of collection or attempting to collect this Note, including reasonable attorneys' fees and expenses.

8. The Borrower hereby waives demand, notice of demand, presentment for payment, notice of dishonor, protest and notice of protest of this Note.

9. This Note has been drawn, executed and delivered in the State of New York, where all advances and repayments shall be made. This Note and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with the laws of the State of New York.

10. Time is of the essence as to all dates set forth herein, provided, however, that whenever any payment to be made under this Note shall be stated to be due on a Saturday, Sunday or a public holiday or the equivalent for banks generally under the laws of the State of New York (any other day being a "Business Day"), such payment may be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computations of payment of interest.

11. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, termination, modification or discharge is sought.

12. The Borrower hereby grants to the Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to the Lender, whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of the Lender or any entity under the control of Lender and its successors and assigns. At any time after a default hereunder or under the Mortgage beyond applicable notice and/or cure periods, if any, and the continuation of such default, without demand or notice (any such notice being expressly waived by the Borrower), the Lender may setoff the same or any part thereof and apply the same to any liability or obligation of the Borrower regardless of the adequacy of any other collateral securing the Loan. ANY AND ALL RIGHTS TO REQUIRE THE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR ANY GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

13. The Lender may at any time pledge all or any portion of its rights under the loan documents including any portion of the Note to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341. No such pledge or enforcement thereof shall release the Lender from its obligations under any of the loan documents.

14. THE BORROWER AND THE LENDER (BY ACCEPTANCE OF THIS NOTE) MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION

HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF THE LENDER RELATING TO THE ADMINISTRATION OF THE LOAN OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.    BORROWER CERTIFIES THAT NO REPRESENTATIVE, AGENT, OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.    THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR THE LENDER TO ACCEPT THIS NOTE AND MAKE THE LOAN.

15. Any judicial proceeding brought against Borrower with respect to this Note or the other Loan Documents shall be brought only in any court of competent jurisdiction in the City of New York, and Borrower (a) accepts, generally and unconditionally, the nonexclusive jurisdiction of such courts and any related appellate courts and irrevocably agrees to be bound by any judgment rendered thereby in connection with any Loan Document and (b) irrevocably waives any objection it may now or hereafter have as to the venue of any such proceeding brought in such a court or that such a court is an inconvenient forum. Any judicial proceeding by Borrower against Lender shall be brought only in a court located in the City and State of New York.

16. Any provision of this Note or the other Loan Documents that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

17. All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

NO FURTHER TEXT ON PAGE

IN WITNESS WHEREOF, the Borrower has duly executed this Restated Consolidated Substitute Mortgage Note as of the date hereof.

LV 35 AVENUE CORP.

By: Jesus Emilio Vera, Pres.

| STATE OF NEW YORK | ) |
|---|---|
| | )ss.: |
| COUNTY OF QUEENS | ) |

On the 29th day of June, 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared Jesus Emilio Vera, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

MITCHEL GUBERMAN
Notary Public, State of New York
No. 01GU4849405
Qualified in Nassau County
Commission Expires January 6, 2018

## SCHEDULE OF NOTES

Revolving Credit Line Note, dated September 16, 2011, made by JESUS EMILIO VERA and HILDA VERA to Alma Bank in the original principal amount of $750,000.00.

**ALLONGE TO RESTATED CONSOLIDATED SUBSTITUTE MORTGAGE NOTE**

This Allonge to Restated Consolidated Substitute Mortgage Note shall be annexed to and made a part of that certain Restated Consolidated Substitute Mortgage Note, dated as of June 29, 2015, in the stated principal amount of $1,365,000.00 executed by LV 35 Avenue Corp., and made payable to the order of Alma Bank.

Pay to the order of Green Mountain Holdings (Cayman) Ltd., its successors and/or assigns, without recourse.

Assignor:

35TH Avenue Funding LLC

By: _____

Name: _Abraham Goldman_

Title: _Authorized signatory_

<u>PERSONAL GUARANTY</u>

GUARANTY, dated as of June 29, 2015, by Julio Emilio Vera, residing at 108-68 50th Avenue, Corona, New York 11368 (the "Guarantor"), in favor of ALMA BANK,, a New York banking corporation, having an office at 31-10 37th Avenue, Ste. 400, Long Island City, New York 11101  (the "Bank").

1.      Guaranty of Payment.

(a)      Guarantor hereby unconditionally guarantees the full and prompt payment to the Bank when due, whether by acceleration or otherwise, of any and all Indebtedness (as hereinafter defined) of LV 35 AVENUE CORP. (the"Borrower") to the Bank.

(b)      As used in this Guaranty, "Indebtedness" shall mean any and all indebtedness and other liabilities of Borrower to the Bank of every kind and character and all extensions, renewals and replacements thereof, including, without limitation, all unpaid accrued interest thereon and all costs and expenses payable as hereinafter provided: (i) whether now existing or hereafter incurred; (ii) whether direct, indirect, primary, absolute, secondary, contingent. secured, unsecured, matured or unmatured, by guarantee or otherwise; (iii) whether such indebtedness is from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred; (iv) whether such indebtedness was originally contracted with the Bank or with another or others; (v) whether or not such indebtedness is evidenced by a negotiable or non-negotiable instrument or any other writing; and (vi) whether such indebtedness is contracted by Borrower alone or jointly or severally with another or others.

(c)      Guarantor acknowledges that valuable consideration supports this Guaranty, including, without limitation, any commitment to lend, extension of credit or other financial accommodation, whether heretofore or hereafter made by the Bank to Borrower; any extension, renewal or replacement of any Indebtedness, any forbearance with respect to any Indebtedness or otherwise; any cancellation of an existing guaranty; any purchase of any of Borrower's assets by the Bank; or any other valuable consideration.

2.      Bank's Costs and Expenses.  Guarantor agrees to pay on demand all costs and expenses of every kind incurred by the Bank: (a) in enforcing this Guaranty; (b) in collecting any Indebtedness from Borrower or Guarantor; (c) in realizing upon or protecting any collateral for this Guaranty or for payment of any Indebtedness; and (d) for any other purpose related to the Indebtedness or this Guaranty. "Costs and expenses" as used in the preceding sentence shall include, without limitation, upon the occurrence of an event of default under any document evidencing all or any part of the Indebtedness, the actual reasonable attorneys' fees incurred by the Bank in retaining

counsel for advice, suit, appeal, any insolvency or other proceedings under the Federal Bankruptcy Code or otherwise, or for any purpose specified in the preceding sentence.

3.      Nature of Guaranty: Continuing, Absolute and Unconditional.

(a)      This Guaranty is and is intended to be a continuing guaranty of payment of the Indebtedness (irrespective of the aggregate amount thereof and whether or not the Indebtedness from time to time exceeds the amount of this Guaranty, if limited), independent of, in addition and without modification to, and does not impair or in any way affect, any other guaranty, indorsement, or other agreement in connection with the Indebtedness, or in connection with any other indebtedness or liability to the Bank, or collateral held by the Bank therefor or with respect thereto, whether or not furnished by Guarantor. This Guaranty and Guarantor's obligations hereunder shall not be modified, terminated, impaired or in any way affected by the execution, delivery or performance by Guarantor, Borrower or any other person of any other guaranty, indorsement or other agreement or the delivery of collateral therefor. Guarantor waives any claim, remedy or other right which Guarantor might now have or hereafter acquire against Borrower or any other person that is primarily or contingently liable for the Indebtedness including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, indemnification, or any right to participate in any claim or remedy of the Bank against Borrower or any collateral therefor which the Bank now has or hereafter acquires, whether or not such claim, remedy or right arises in equity, or under contract, statute, or common law.

(b)      This Guaranty is absolute and unconditional and shall not be changed or affected by any representation, oral agreement, act or thing whatsoever, except as herein provided. This Guaranty is intended by Guarantor to be the final, complete and exclusive expression of the agreement between Guarantor and the Bank. Guarantor expressly disclaims any reliance on any course of dealing or usage of trade or oral representation of the Bank including, without limitation, representations to make loans to Borrower or enter into any other agreement with Borrower or Guarantor. No modification or amendment of any provision of this Guaranty and no waiver of any right by the Bank shall be effective unless in writing and signed by a duly authorized officer of the Bank.

4.      Certain Rights and Obligations.

(a)      Guarantor authorizes the Bank, without notice, demand or additional reservation of rights against Guarantor and without affecting Guarantor's obligations hereunder, from time to time: (i) to renew, refinance, modify, subordinate, extend, increase, accelerate, or otherwise change the time for payment of, the terms of or the interest on the Indebtedness or any part thereof; (ii) to accept from any person or entity and hold collateral for the payment of the Indebtedness or any part thereof, and

to exchange, enforce or refrain from enforcing, or release such collateral or any part thereof; (iii) to accept and hold any indorsement or guaranty of payment of the Indebtedness or any part thereof or any negotiable instrument or other writing intended by any party to create an accord and satisfaction with respect to the Indebtedness or any part thereof, and to discharge, terminate, release, substitute, replace or modify any such obligation of any such indorser or guarantor, or any person or entity who has given any security interest in any collateral as security for the payment of the Indebtedness or any part thereof, or any other person or entity in any way obligated to pay the Indebtedness or any part thereof, and to enforce or refrain from enforcing, or compromise or modify. the terms of any obligation of any such indorser, guarantor, person or entity; (iv) to dispose of any and all collateral securing the Indebtedness in any manner as the Bank, in its sole discretion, may deem appropriate, and to direct the order or manner of such disposition and the enforcement of any and all indorsements and guaranties relating to the Indebtedness or any part thereof as the Bank, in its sole discretion,  may determine; and (v) to determine the manner, amount and time of application of payments and credits, if any, to be made on all or any part of any component or components of the Indebtedness (whether principal, interest, costs and expenses, or otherwise), including, without limitation, if this Guaranty is limited in amount, to make any such application to Indebtedness, if any, in excess of the amount of this Guaranty.

(b)     If any default shall be made in the payment of any Indebtedness, Guarantor hereby agrees to pay the same in full: (i) without deduction by reason of any setoff, defense or counterclaim of Borrower; (ii) without requiring protest, presentment or notice of non-payment or notice of default to Guarantor, to Borrower or to any other person; (iii) without demand for payment or proof of such demand; (iv) without requiring the Bank to resort first to Borrower (this being a guaranty of payment and not of collection) or to any other guaranty or any collateral which the Bank may hold; (v) without requiring notice of acceptance hereof or assent hereto by the Bank; and (vi) without requiring notice that any Indebtedness has been incurred or of the reliance by the Bank upon this Guaranty, all of which Guarantor hereby waives.

(c)     Guarantor's obligation hereunder shall not be affected by any of the following, all of which Guarantor hereby waives: (i) any failure to perfect or continue the perfection of any security interest in or other lien on any collateral securing payment of any Indebtedness or Guarantor's obligation hereunder; (ii) the invalidity, unenforceability, propriety of manner of enforcement of, or loss or change in priority of any such security interest or other lien; (iii) any taking, holding, continuation, collection, modification, leasing, impairment, surrender or abandonment of, or any failure to protect, preserve or insure, any such collateral; (iv) any delay in the exercise or waiver of, any failure to exercise, or any forbearance in the exercise of, any right or remedy of the Bank or any person (including. without limitation, those remedies described in

3

Section 4(c)(iii) of this Guaranty) against Guarantor, Borrower or any person or relating to the Indebtedness or any part thereof or the collateral therefor; (v) failure of Guarantor to receive notice of any intended disposition of such collateral; (vi) any defense arising by reason of the cessation from any cause whatsoever of liability of the Borrower including, without limitation, any failure, delay, waiver, forbearance, negligence or omission by the Bank in enforcing its claims against the Borrower or any collateral therefor including, without limitation, any failure to make, prove, or vote any claim relating to the Indebtedness or any collateral therefor in any case or proceeding pursuant to the Federal Bankruptcy Code or any similar law, or any satisfaction of the Indebtedness or any part thereof by reason of the failure of the Bank to recover against any collateral therefor or the failure of the Bank to obtain a judgment for any deficiency; (vii) any release, settlement, composition, adjustment, compromise, replacement, cancellation, discharge, assignment, sale, exchange, conversion, participation or other transfer or disposition of any obligation of Borrower or of any collateral therefor; (viii) the invalidity or unenforceability of any of the Indebtedness; (ix) the creation of any security interest, lien or other encumbrance in favor of any person other than the Bank; (x) any refusal or failure of the Bank or any other person prior to the date hereof or hereafter to grant any additional loan or other credit accommodation to Borrower or the Bank's or any other party's receipt of notice of such refusal or failure; (xi) any refusal or failure of the Bank or any other person to provide to Guarantor any information relating to Borrower, any other guarantor, indorser, or any person or entity who has given any collateral as security for the payment of the Indebtedness or any information relating to Borrowers or such guarantor's, indorser's, person's or entity's financial condition, business or assets; (xii) any change in the ownership or membership of Guarantor or Borrower; (xiii) the expiration of the period of any statute of limitations with respect to any lawsuit or other legal proceeding against Borrower or any person in any way related to the Indebtedness or a part thereof or any collateral therefor; or (xiv) any other thing or circumstance which might otherwise constitute a defense to Guarantor's obligation hereunder.

5.      Collateral.  As further security for payment of the Indebtedness and of any other indebtedness, now existing or hereafter incurred, of Guarantor to the Bank, Guarantor hereby grants to the Bank a security interest in and lien on any and all money, securities and other property of Guarantor, and all proceeds thereof, which is or hereafter maybe in the actual or constructive possession or control of the Bank in any capacity or of any third party acting on the Bank's behalf, including, without limitation, all deposit and other accounts and all moneys owed or to be owed by the Bank to Guarantor; and with respect to all such money, securities and other property, the Bank shall have all the rights and remedies of a secured party under the Uniform Commercial Code and under any other applicable law, as the same may from time to time be in

4

effect in the State of New York, in addition to those rights granted herein or in any other agreement now or hereafter in effect between Guarantor and the Bank .

6.      Guaranty of Performance. Guarantor also guarantees the full, prompt and unconditional performance of all obligations and agreements of every kind owed or hereafter to be owed by Borrower to the Bank.  Every provision for the benefit of the Bank contained in this Guaranty shall apply to the guaranty of performance given in this paragraph.

7.      Termination. This Guaranty shall remain in full force and effect as to each Guarantor until the officer in charge of the Lending Office, Department or Division of the Bank    shall actually receive from such Guarantor written notice of its discontinuance, or notice of the death or judicial declaration of incompetency of such Guarantor; provided, however, this Guaranty shall remain in full force and effect thereafter until all indebtedness outstanding, or contracted or committed for (whether or not outstanding), before the receipt of such notice by the Bank, and any extensions, renewals or replacements thereof (whether made before or after receipt of such notice), together with interest accruing thereon after such notice, shall be finally and irrevocably paid in full.  Discontinuance of this Guaranty as to one Guarantor shall not operate as a discontinuance hereof as to any other Guarantor.  Payment of all of the Indebtedness from time to time shall not operate as a discontinuance of this Guaranty, unless notice of discontinuance as above provided has theretofore actually been received by the Bank. Guarantor agrees that, to the extent that Borrower makes a payment or payments to the Bank on the Indebtedness, or the Bank receives any proceeds of collateral to be applied to the Indebtedness, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or otherwise are required to be repaid to Borrower, its estate, trustee, receiver or any other party, including, without limitation, under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such repayment, the obligation or part thereof which has been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date such initial payment, reduction or satisfaction occurred, notwithstanding any contrary action which may have been taken by the Bank in reliance upon such payment or payments. As of the date any payment or proceeds of collateral are returned, the statute of limitations shall start anew with respect to any action or proceeding by the Bank against Guarantor under this Guaranty. Guarantor shall defend and indemnify the Bank of and from any claim or loss under this paragraph including reasonable attorneys' fees and expenses in the defense of any such action or suit.

8.      Other Parties; Joint and Several Liability.

5

(a)     The Bank shall have the right to discharge or release one or more of the undersigned from any obligation hereunder, in whole or in part, without in any way releasing. impairing or affecting its right against the other or others of the undersigned. The failure of any other person to sign this Guaranty shall not release or affect the obligations or liability of the undersigned.

(b)     If more than one party executes this Guaranty, the obligations of the undersigned hereunder shall be joint and several and the term "Guarantor" shall include each as well as all of them.

9.     Hazardous Substances. For the purposes of this Section 9, (i) "Hazardous Substances" means, without limitation, any explosives, radon, radioactive material, asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls, petroleum and petroleum products, methane, hazardous materials, hazardous wastes, hazardous or toxic substances or any other material defined as a hazardous substance in Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Sections 9601 et seq., and (ii) "Release" has the same meaning as given to that term in Section 101(22) of such Act and the regulations promulgated thereunder. Guarantor agrees to indemnify, defend, and hold harmless the Bank from and against any and all liabilities, claims, damages, penalties, liens, expenditures, losses, and charges including, but not limited to, all reasonable costs of investigation, monitoring, legal representation, remedial response, removal, restoration or permit acquisition, which may now or in the future be undertaken, suffered, paid, awarded, assessed, or otherwise incurred by the Bank as a result of the presence or suspected presence of, Release of or threatened Release of Hazardous Substances on, in, under or near any property or improvements thereon, owned, leased or operated by Borrower or Guarantor. The liability of Guarantor to the Bank under the covenants of this Section is not limited by any exculpatory provisions in any agreement in connection with the Indebtedness or collateral therefor and shall survive repayment of the Indebtedness or any transfer or termination of any agreement in connection with the Indebtedness or collateral therefor or this Guaranty regardless of the means of such transfer or termination.

10.     Miscellaneous.

(a)     "Borrower" and "Guarantor" as used in this Guaranty shall include: (i) any successor individual or individuals, association, partnership or corporation to which all or a substantial part of the business or assets of Borrower or Guarantor shall have been transferred including, without limitation, a debtor in possession under the Federal Bankruptcy Code; (ii) in the case of a partnership Borrower or Guarantor, any new partnership which shall have been created by reason

6

of the admission of any new partner or partners therein or by reason of the dissolution of the existing partnership by voluntary agreement or the death, resignation or other withdrawal of any partner; and (iii) in the case of a corporate Borrower or Guarantor, any other corporation into or with which Guarantor or Borrower (if Borrower is a corporation) shall have been merged, consolidated, reorganized or absorbed.

(b)     Without limiting any other right of the Bank, whenever the Bank has the right to declare any Indebtedness to be immediately due and payable (whether or not it has so declared), the Bank at its sole election may set off against the Indebtedness any and all moneys then owed to Guarantor by the Bank in any capacity, whether or not the Indebtedness or the obligation to pay such moneys owed by the Bank is then due, and the Bank shall be deemed to have exercised such right of setoff immediately at the time of such election even though any charge therefor is made or entered on the Bank's records subsequent thereto.

(c)     Guarantor's obligation hereunder is to pay the Indebtedness in full when due according to its terms, and shall not be affected by any extension of time for payment by Borrower, any bar to the enforceability of the Indebtedness, or any limitation on the right to attorneys' fees, resulting from any proceeding under the Federal Bankruptcy Code or any similar law.  Guarantor's obligation under this Guaranty shall also include payment of interest accrued on the Indebtedness before or after a filing of a petition under the bankruptcy laws and interest on, and principal of, loans made to the debtor in possession after the filing of such a petition by or against Borrower.

(d)     No course of dealing or usage of trade, and no oral or written representations or agreement, between Borrower or Guarantor and the Bank, whether or not relied on or acted upon, and no act, delay or omission by the Bank in exercising any right or remedy hereunder or with respect to any Indebtedness shall operate as a waiver thereof or of any other right or remedy, and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy. The giving of notice or a demand by the Bank at any time shall not operate as a waiver in the future of the Bank's right to exercise any right or remedy without notice or demand. The Bank may remedy any default by Borrower under any agreement with Borrower or with respect to any Indebtedness in any reasonable manner without waiving the default remedied and without waiving any other prior or subsequent default by Borrower. After Borrower's failure to pay the Indebtedness in full, or any part thereof, the Bank may exercise against Guarantor each right and remedy of a creditor against a principal debtor upon a past due liquidated obligation. All rights and remedies of the Bank hereunder are cumulative.

7

(e)   The Bank and Guarantor as used herein shall include the heirs, executors or administrators, or successors or assigns, of those parties. The rights and benefits of the Bank hereunder shall, if the Bank so directs, inure to any party acquiring any interest in the Indebtedness or any part thereof. If any right of the Bank hereunder is construed to be a power of attorney, such power of attorney shall not be affected by the subsequent disability or incompetence of Borrower or Guarantor.

(f)   The Bank's rights and remedies under this Guaranty are assignable and any participation may be granted by the Bank herein in connection with the assignment or granting of a participation by the Bank in the Indebtedness or any part thereof.

(g)   Captions of the sections of this Guaranty are solely for the convenience of the Bank and Guarantor, and are not an aid in the interpretation of this Guaranty.

(h)   If any provision of this Guaranty is unenforceable in whole or in part for any reason, it shall be deemed modified to the extent necessary to make it or the applicable provision enforceable, or if for any reason such provision is not deemed modified, the remaining provisions shall continue to be effective.

(i)   Any payment or other act which results in the extension or renewal of the statute of limitations in connection with any action or proceeding against the Borrower relating to the Indebtedness, shall extend or renew the statute of limitations in connection with any action or other proceeding against the Guarantor in connection with this Guaranty whether or not Guarantor had notice of, or consented to, such payment or act.

(j)   Any demand for payment against Guarantor made by the Bank under this Guaranty shall be in writing and shall be deemed effective for all purposes (i) upon delivery, if delivered in person, (ii) within three (3) days, if sent by registered or certified mail, return receipt requested, or (iii) within one (1) day, if sent by nationally recognized overnight courier.

(k)   This Guaranty and the transactions evidenced hereby shall be construed under the laws of the State of New York without regard to principles of conflicts of law.

(l)   GUARANTOR AND THE BANK HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY GUARANTOR AND BANK MAY HAVE IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THE GUARANTY OR THE

8

TRANSACTIONS RELATED HERETO. GUARANTOR REPRESENTS AND WARRANTS THAT NO REPRESENTATIVE OR AGENT OF THE BANK HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WILL NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS JURY TRIAL WAIVER. GUARANTOR ACKNOWLEDGES THAT THE BANK HAS BEEN INDUCED TO ENTER INTO THIS GUARANTY BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS SECTION.

NO FURTHER TEXT ON PAGE

9

IN WITNESS WHEREOF, Guarantor executed this Guaranty the day and year first above written.

_Julio Emilio Vera_
Julio Emilio Vera

STATE OF NEW YORK      )
                                          ) ss.:
COUNTY OF QUEENS      )

On the 29th day of June, 2015, before me, the undersigned, personally appeared Julio Emilio Vera, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

MITCHEL GUBERMAN
Notary Public, State of New York
No. 01GU6040805
Qualified in Nassau County
Commission Expires January 6, 2018

10

**EXHIBIT D**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019010701155001001E9CA1

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|
| Document ID: **2019010701155001** | Document Date: 12-31-2018 | Preparation Date: 01-07-2019 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| KONNER TEITELBAUM AND GALLAGHER PC<br>462 7TH AVE FL 12<br>NEW YORK, NY 10018 | KONNER TEITELBAUM AND GALLAGHER PC<br>462 7TH AVE FL 12<br>NEW YORK, NY 10018 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 1743 | 6 | Entire Lot | 102-16 35TH AVENUE |
| Property Type: | APARTMENT BUILDING | | | |

### CROSS REFERENCE DATA

CRFN: 2011000346533
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| ALMA BANK<br>28-31 31ST STREET<br>ASTORIA, NY 11102 | 35TH AVENUE FUNDING LLC<br>C/O HIRHSMARK CAPITAL LLC, 15 W. 26TH STREET,<br>SUITE 901<br>NEW YORK, NY 10010 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed      01-09-2019 15:55 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 58.00 | **2019000010110** | |
| Affidavit Fee: | $ | 0.00 | *Annette M Hill* | |
| | | | *City Register Official Signature* | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2019010701155001001C9E21

| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

Document ID: 2019010701155001   Document Date: 12-31-2018   Preparation Date: 01-07-2019
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
**CRFN:** 2015000270947
**CRFN:** 2015000270948

## ASSIGNMENT OF MORTGAGE

## ASSIGNMENT OF MORTGAGE

**KNOW THAT ALMA BANK**, a bank organized under the laws of the State of New York, having an address at 28-31 31st Street, Astoria, New York 11102 (**"Assignor"**) in consideration of Ten ($10.00) or more Dollars, paid by 35TH Avenue Funding LLC c/o Hirshmark Capital LLC., a New York Limited Liability Company, having a place of business located at, 15 West 26th Street, New York, New York 10010 ("Assignee"), hereby assigns unto Assignee, those certain mortgages described in Schedule A annexed hereto and incorporated herein by this reference, covering the premises commonly known as 102-16 35th Avenue, Corona, NY 11368 (Section 10, Block 1743, Lot 6) and more particularly described on Exhibit A attached hereto and made a part hereof.

**TOGETHER** with the bonds, notes or other obligations described in said mortgages, and the monies due and to grow thereon with interest;

**TO HAVE AND TO HOLD** the same unto the Assignee and to the successors, legal representatives and assigns forever

**THIS ASSIGNMENT IS MADE WITHOUT RECOURSE TO ASSIGNOR AND WITHOUT REPRESENTATION, WARRANTY OR COVENANT OF ANY KIND WHATSOEVER BY ASSIGNOR EITHER EXPRESS OR IMPLIED.**

The Mortgage(s) assigned hereby has not been further assigned except as set forth herein.

This Assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment of Mortgage as of the 31st day of December, 2018.

ASSIGNOR:

ALMA BANK

By: _____

Name:  Thomas E. DiMaio

Title:  Senior Vice President

STATE OF NEW YORK　　）

　　　　　　　　　　　　）ss.:

COUNTY OF ~~NEW YORK~~  QUEENS ）

On the 31st day of December, 2018, before me, the undersigned, a Notary Public in and for the State, personally appeared Thomas E. DiMaio, personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name (s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature (s) on the instrument, the individual (s), or the person on behalf of which the individual (s) acted, executed the instrument.

_____

Notary Public

KRISTEN PRAWL
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PR6355606
Qualified in New York County
My Commission Expires 03-13-2021

# EXHIBIT A
## DESCRIPTION OF MORTGAGES

1. Revolving Credit Line Mortgage made by Jesus Emilio Vera and Hilda Vera to Alma Bank, dated September 16, 2011 in the principal amount of $750,000.00 and recorded September 30, 2011 in the Office of the City Register of the City of New York, Queens County ("Register's Office") in CRFN # 2011000346533 at which time Mortgage Tax in the amount of $21,000.00 was paid;

2. Gap Mortgage made by LV 35 Avenue Corp. to Alma Bank dated June 29, 2015 in the principal amount of $687,974.611 and recorded August 6, 2015 in the Register's Office in CRFN # 2015000270947; and

   Mortgages 1 and 2 are hereby consolidated to form a single lien of $1,365,000.00 by Consolidation, Extension and Modification Agreement dated June 29, 2015 between LV 35 Avenue Corp. and Alma Bank and was recorded on August 6, 2015 in the Register's Office in CRFN # 2015000270948.



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

**2021080500705001001EEDC3**

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

**Document ID:** 2021080500705001   **Document Date:** 08-02-2021   **Preparation Date:** 08-05-2021
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 4

| PRESENTER: | RETURN TO: |
|---|---|
| RICHMOND MONROE<br>82 JIM LINEGAR LANE<br>BRANSON WEST, MO 65737<br>MITCHELL.BELL@RICHMONDMONROE.COM | GREEN MOUNTAIN HOLDINGS (CAYMAN) LTD.<br>PO BOX 458<br>KIMBERLING CITY, MO 65686<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 1743 | 6 | Entire Lot | 102-16 35TH AVENUE |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2011000346533

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| 35TH AVENUE FUNDING LLC<br>1140 BROADWAY SUITE 304<br>NEW YORK, NY 10001 | GREEN MOUNTAIN HOLDINGS (CAYMAN) LTD.<br>1688 MERIDIAN AVENUE 7TH FLOOR<br>MIAMI BEACH, FL 33139 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 60.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed   08-09-2021 17:47
City Register File No.(CRFN):
**2021000311391**

*Janette M Lill*

*City Register Official Signature*

## ASSIGNMENT OF MORTGAGE

### 35TH Avenue Funding LLC

### TO

### Green Mountain Holdings (Cayman) Ltd., its successors and/or assigns,

Address:

102-16 35th Avenue, Corona, New York 11368

Block: 1743
Lot: 6
County: Queens
State: New York

**When Recorded Return To:**
P.O. Box 458
Kimberling City, MO 65686
Ref#: 0012360000000210     / 29062021
GREEN MOUNTAIN HOLDINGS (CAYMAN) LTD
**NY**                    **QUEENS**

## ASSIGNMENT OF MORTGAGE

KNOW THAT **35TH Avenue Funding LLC,** having an office at c/o Hirshmark Capital LLC, 1140 Broadway, Suite 304, New York, New York 10001 (the "Assignor"), in consideration of **Ten Dollars** and other good and valuable consideration paid and delivered by **Green Mountain Holdings (Cayman) Ltd., its successors and/or assigns,** having an office at 1688 Meridian Avenue, 7th Floor, Miami Beach, Florida 33139 (the "Assignee"), hereby assigns unto the Assignee, the following mortgage:

**See Mortgage Schedule attached hereto.**

TOGETHER with the bonds or notes or obligations described in said mortgage, and the moneys due and to grow due thereon with interests, TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

SUBJECT TO all liens of record.

THIS ASSIGNMENT is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

The Assignor represents and warrants that to Assignee that (i) the Assignor has the full power, authority and right to assign said mortgage to Assignee; (ii) the person executing this instrument on behalf of Assignor has been duly authorized to do so; and (iii) the Assignor has not previously assigned, sold or transferred said mortgage.

Assignee is not acting as a nominee of Assignor, and the Mortgage being assigned continues to secure bona fide obligations. Assignor has made no prior assignment, transfer, sale, pledge or hypothecation of the Mortgage.

Other than as specifically set forth herein, this Assignment is made without warranty or representation of any kind, express or implied, and without recourse to Assignor for any reason whatsoever other than the breach of any covenant, warranty or representation made herein.

The word "Assignor" or "Assignee" shall be constructed as if it read "Assignors" or "Assignees" wherever the sense of this instrument so requires.

## [SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF,** the Assignor has duly executed this Assignment as of the 2nd day of August , 2021.

35TH Avenue Funding LLC

BY: _____
Name: Doris Shen
Title: Authorized Signatory

STATE OF NEW YORK          )
                                              )
COUNTY OF New York       )

On the  2  day of ___August___ , in the year 2021 before me personally appeared __Doris Shen__ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature on the instrument, the individual , or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

ALGY VARGAS
Notary Public, State of New York
Reg. No. 01VA6349554
Qualified in New York County
Commission Expires 10/24/2024

## Mortgage Schedule

1.  Revolving Credit Line Mortgage made by Jesus Emilio Vera and Hilda Vera to Alma Bank, dated September 16, 2011 in the principal amount of $750,000.00 and recorded September 30, 2011 in the Office of the City Register of the City of New York, Queens County ("Register's Office") in CRFN # 2011000346533 at which time Mortgage Tax in the amount of $21,000.00 was paid;

2.  Gap Mortgage made by LV 35 Avenue Corp. to Alma Bank dated June 29, 2015 in the principal amount of $687,974.61 and recorded August 6, 2015 in the Register's Office in CRFN # 2015000270947;

3.  Mortgages 1 and 2 are hereby consolidated to form a single lien of $1,365,000.00 by Consolidation, Extension and Modification Agreement dated June 29, 2015 between LV 35 Avenue Corp. and Alma Bank and was recorded on August 6, 2015 in the Register's Office in CRFN # 2015000270948.

4.  Assignment of Mortgage assigning the Consolidation, Extension and Modification Agreement from Alma Bank to 35TH Avenue Funding LLC dated December 31, 2018 and was recorded on January 9, 2019 in the Register's Office in CRFN #2019000010110.

**EXHIBIT E**



### THE
# MARGOLIN & WEINREB
L A W   G R O U P ,   L L P
ATTORNEYS AT LAW

165 Eileen Way, Suite 101
Syosset, New York 11791

T. (516) 921-3838
F. (516) 921-3824
www.nyfclaw.com

ALAN WEINREB, ESQ.    C. LANCE MARGOLIN, ESQ.    CYNTHIA A. NIERER, ESQ.

---

February 4, 2022

Via Certified and Regular First Class Mail

LV 35 AVENUE CORP.
102-16 35th Avenue          7021 0950 0001 0791 4918
Corona, NY 11368

JESUS EMILIO VERA
102-16 35th Avenue          7021 0950 0001 0791 4901
Corona, NY 11368

HILDA VERA
102-16 35th Avenue          7021 0950 0001 0791 4895
Corona, NY 11368

Re:    NOTICE OF ACCELERATION AND INTENT TO FORECLOSE

      Current Lender:    Green Mountain Holdings (Cayman) Ltd
      Original Loan:     Made to Alma Bank dated June 29, 2015 & modified by agreement
                         dated April 16, 2019
      Borrower:          LV 35 AVENUE CORP.
      Guarantor:         JESUS EMILIO VERA
      Property:          102-16 35th Avenue, Corona, NY 11368

Ladies and Gentlemen:

       This firm has been engaged by Green Mountain Holdings (Cayman) Ltd with respect to
the above-referenced matter. The Current Lender is the holder and owner of the above referenced
Loan Documents. You are hereby advised that the borrower is in default of its obligations under
the Loan Documents (the "Default") by, among other things, failing to make payments of interest
when due on said Loan Documents. You are thus hereby advised that as a result of said Default,
the Current Lender is hereby electing and does hereby elect to IMMEDIATELY ACCELERATE
all amounts due on the Loan Documents.

---

**WE ARE A DEBT COLLECTOR AND ARE ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The Margolin & Weinreb Law Group, LLP may be a debt collector attempting to collect a debt and any information obtained may be used
for that purpose. If you are in a pending bankruptcy proceeding, The Margolin & Weinreb Law Group, LLP will take no action, except as
allowed under the Bankruptcy Code. If you received a Chapter 7 discharge of this debt, this communication is not an attempt to collect
the debt against you personally, but is notice of a possible enforcement against the collateral property.

  

Consequently, in accordance with the terms of the Loan Documents, DEMAND IS HEREBY MADE for the immediate payment of all sums due pursuant to the Loan Documents (the "Indebtedness"). The Indebtedness outstanding on the Loan Documents as of February 4, 2022, is as follows:

| | |
|---|---|
| Unpaid Principal Balance | $1,420,575.74 |
| Interest from June 1, 2021 through February 25, 2022 | $227,528.88 |
| Total Late Charges | $591.91 |
| Legal Fees | $289.00 |
| **INDEBTEDNESS AS OF February 4, 2022** | **$1,648,985.53** |
| (Plus attorney's fees, costs and disbursements) | |

Until the Indebtedness is paid in full, interest will continue to accrue at the default rate provided for under the Loan Documents (the "Default Interest Rate") together with late charges, as well as costs and legal fees as provided for in the Loan Documents.

Please be advised that if payment in full of the Indebtedness is not received within thirty (30) days from the date of this letter, the Current Lender intends to pursue its rights and remedies, including, without limitation, the institution of foreclosure and legal proceedings against the Borrower and the Property. These actions will result in additional expenses that will be added to the amount required to pay off the Loan.

The fact that the Current Lender has not noted any other facts which constitute, or form the basis of a default or an event of default under the Loan Documents is not, and shall not be deemed to be a waiver of any default or event of default, whether now or hereafter existing under the Loan Documents.

The Current Lender hereby reserves:

(1) the right to notify Borrower of any default or event of default under the Loan Documents not noted herein;

(2) All of the Current Lender's rights and remedies with respect to any or event of default under the Loan Documents, whether now or hereafter existing and whether or not noted herein.

This letter shall not entitle the Borrower or any guarantor to any other or further notice, Whether in connection with the aforesaid defaults or events of default or in connection with any other default or event of default or noncompliance or otherwise.

Your right to collect and retain rents, issues and profits of the Property (collectively, the "Rents") has been terminated and the Current Lender hereby renews its demand that you deliver and turn over all of the Rents to the Current Lender.

Nothing contained herein or omitted in this letter is intended to, nor shall it constitute, a Waiver or relinquishment of any of the Current Lender's rights and remedies, all of which are expressly reserved. Any partial payments made by you will be credited against the amount owed, but shall not be deemed a waiver or cure of the Default invoked by the Current Lender or an impairment of the Current Lender's rights and remedies pursuant to the Loan Documents or under the law.

Please feel free to contact the undersigned to request the full amount of the payoff of the Loan. Please be guided accordingly.

Very truly yours,

The Margolin & Weinreb Law Group, LLP


Alan H. Weinreb, Esq.

Cc:   Green Mountain Holdings (Cayman) Ltd

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HILDA VERA
102-16 35th Avenue
Corona, NY 11368

9590 9402 7053 1225 9208 13

2. Article Number (Transfer from service label)
7021 0950 0001 0774 4895

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee  $ 3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)         $
☐ Return Receipt (electronic)       $ 2.85
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage  $ 0.53

Total Postage and Fees  $ 6.93

Sent To    JESUS EMILIO VERA
Street and Apt. No.   102-16 35th Avenue
City, State, ZIP+4®   Corona, NY 11368

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7021 0950 0001 0791 4401

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee  $ 3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)         $
☐ Return Receipt (electronic)       $ 2.85
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage  $ 0.53

Total Postage and Fees  $ 6.93

Sent To    LV 35 AVENUE CORP.
Street and Apt. No.   102-16 35th Avenue
City, State, ZIP+4®   Corona, NY 11368

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7021 0950 0001 0791 4918

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee  $ 3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)         $
☐ Return Receipt (electronic)       $ 2.85
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $

Postage  $ 0.53

Total Postage and Fees  $ 6.93

Sent To    HILDA VERA
Street and Apt. No.   102-16 35th Avenue
City, State, ZIP+4®   Corona, NY 11368

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7021 0950 0001 0791 4895

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JESUS EMILIO VERA
102-16 35th Avenue
Corona, NY 11368

9590 9402 7053 1225 9208 20

2. Article Number (Transfer from service label)
7021 0460 0001 0741 4901

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. LV 35 AVENUE CORP.
102-16 35th Avenue
Corona, NY 11368

9590 9402 7053 1225 9208 37

2. Article Number (Transfer from service label)
7021 0460 0001 0741 4918

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



**UNITED STATES POSTAGE**
PITNEY BOWES
$006.93⁰
02 1P
0002037043   FEB 04 2022
MAILED FROM ZIP CODE 11791

**UNITED STATES POSTAGE**
PITNEY BOWES
$006.93⁰
02 1P
0002037043   FEB 04 2022
MAILED FROM ZIP CODE 11791

7021 0950 0001 0791 4918

165 Eileen Way, Suite 101
Syosset, NY 11791

LV 35 AVENUE CORP.
102-16 35th Avenue
Corona, NY 11368

CERTIFIED MAIL

7021 0950 0001 0791 4901

165 Eileen Way, Suite 101
Syosset, NY 11791

JESUS EMILIO VERA
102-16 35th Avenue
Corona, NY 11368



**$006.930**
PITNEY BOWES
02 1P
0002037043 FEB 04 2022
MAILED FROM ZIP CODE 11791

**$000.53⁰**
PITNEY BOWES
02 1P
0002037043 FEB 04 2022
MAILED FROM ZIP CODE 11791

CERTIFIED MAIL

7021 0950 0001 0791 4895

165 Eileen Way, Suite 101
Syosset, NY 11791

HILDA VERA
102-16 35th Avenue
Corona, NY 11368

LV 35 AVENUE CORP.
102-16 35th Avenue
Corona, NY 11368

165 Eileen Way, Suite 101
Syosset, NY 11791



UNITED STATES POSTAGE
$000.53⁰
02 1P
0002037043  FEB 04 2022
MAILED FROM ZIP CODE 11791
PITNEY BOWES



UNITED STATES POSTAGE
$000.53⁰
02 1P
0002037043  FEB 04 2022
MAILED FROM ZIP CODE 11791
PITNEY BOWES

JESUS EMILIO VERA
102-16 35th Avenue
Corona, NY 11368

HILDA VERA
102-16 35th Avenue
Corona, NY 11368

165 Eileen Way, Suite 101
Syosset, NY 11791

165 Eileen Way, Suite 101
Syosset, NY 11791

AFFIDAVIT OF MAILING

Property Address: 102-16 35th Avenue, Corona, NY 11368


STATE OF NEW YORK)
                 ) ss:
COUNTY OF NASSAU)


     Helena Nierer, being duly sworn, deposes and says:

     That I am not a party to the action, am over the age of 18 years and work in Nassau County, New York.

     In accordance with the standard mailing practices and procedures, on February 4, 2022, deponent served the **30-day Demand Letter and CFPB Regulation F Validation Notice** by depositing a true copy by **certified mail and first-class mail** thereof in a post-paid wrapper, in an official United States Postal depository under the care and custody of the United States Postal Service within the State of New York.

     Each of the notices were addressed to each of the following persons at the last known address set forth after each name:

LV 35 AVENUE CORP.              JESUS EMILIO VERA              HILDA VERA
102-16 35th Avenue              102-16 35th Avenue            102-16 35th Avenue
Corona, NY 11368                Corona, NY 11368              Corona, NY 11368



                                                                            Helena Nierer

Sworn to before me this
4th Day of February, 2022

Notary Public

JOANNE FIORELLO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01FI6056210
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES MARCH 19, 2023

**EXHIBIT F**

## <u>NOTE and MORTGAGE MODIFICATION AGREEMENT</u>

This Note and Mortgage Modification Agreement (this "Agreement") is entered into as of the ____ day of April, 2019, between **35ᵀᴴ AVENUE FUNDING LLC**, successor in interest by assignment from ALMA BANK, with offices at 15 West 26th Street, New York, New York 10010 (hereinafter the "Lender"), **LV 35 AVENUE CORP.**, with offices at 102-16 35th Avenue, Corona, New York 11368, (hereinafter the "Borrower"), and **JESUS EMILIO VERA**, residing at 108-68 50th Avenue, Corona, New York 11368 (hereinafter the "Guarantor"),

## R E C I T A L S

**WHEREAS**, on June 29, 2015, Borrower obtained a loan in the sum of **ONE MILLION, THREE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 ($1,365,000.00) DOLLARS** (the "Indebtedness" or the "Loan") from ALMA BANK, as evidenced by the Restated Consolidated Substituted Mortgage Note (the "Note");

**WHEREAS**, payment of the Note was secured by series of mortgages consolidated by a Consolidation, Extension and Modification Agreement of even date, in the principal amount of $1,365,000.00 and recorded on August 6, 2015, in CRFN 2015000270948 in the Office of the City Register, Queens County (the "Mortgage")(the Note and Mortgage together with the personal guarantees thereof and all other documents executed and/or delivered in connection with the Note and Mortgage are collectively referred to as the "Loan Documents");

**WHEREAS**, the Note and Mortgage, by their terms, consolidate and extend the notes and mortgages recited therein;

**WHEREAS**, payment of the Indebtedness memorialized in the Note and secured by the Mortgage was personally, absolutely and unconditionally guaranteed by the Guarantor in the Personal Guaranty dated June 29, 2015 (the "Guaranty");

**WHEREAS**, the Note, Mortgage and other Loan Documents were assigned to Lender 35ᵀᴴ AVENUE FUNDING LLC, by Assignment of Mortgage dated December 31, 2018, which instrument was recorded on January 9, 2019, in CRFN No. 2019000010110 in the Office of the City Register of Queens County;

2

**WHEREAS**, the Mortgage constitutes a valid and sustaining first lien on the premises located at 102-16 35th Avenue, Corona, New York, Queens County, designated as Block 1743, Lot 6 (the "Property"), more particularly described on Schedule A annexed hereto;

**WHEREAS**, by letter dated December 5, 2018, the Borrower was advised that it was in default under the Note and Mortgage, and that the principal balance was immediately due and payable;

**WHEREAS**, as of March 31, 2019, there was due and owing under the Note and Mortgage One Million, Five Hundred Eighty-Five Thousand, Five Hundred Seventy-Five and 74/100 ($1,585,575.74) Dollars (the "Balance Due" as set forth on the payoff letter dated April 8, 2019 annexed hereto as Schedule B), inclusive of the unpaid principal balance in the amount of $1,299,407.45 (the "Unpaid Principal Balance"), without offset or defense of any kind whatsoever; and

**WHEREAS**, the Borrower has requested that the Lender to modify and reinstate the Note and Mortgage, and the Lender is willing to do so, but only on terms and conditions herein set forth.

**NOW THEREFORE**, in consideration of the foregoing and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Initial Payments.** Upon execution of this Agreement, the Borrower shall pay the sum of $165,000.00 (the "Initial Payment"), by bank or certified check or wire transfer, payable to the Lender, which sum shall be applied to the arrears due and owing and not the Unpaid Principal Balance. In addition, the Borrower will pay $1,750.00 to "Konner Teitelbaum & Gallagher" for the negotiation and drafting of this Agreement. All of said payments will be tendered by bank or certified check or wire transfer.

2. **Modification of the Note**. The Note is hereby modified as of the 1st say of April, 2019 as follows:

09299.0194 Note & Mortgage Mod v3

3

a)   The Maturity Date as defined on page 1 of the Note shall now be April 1, 2022 (the "New Maturity Date").

b)   On the 1st day of May, 2019 and on the first day of each and every month thereafter through the 1st day of April, 2020, the Borrower shall pay interest payments only in the amount of $8,286.69 per month.

c)   On the 1st day of May, 2020 and on the first day of each and every month thereafter through the 1st day of April, 2021, the Borrower shall pay interest only in the amount of $9,470.51 per month.

d)   On the 1st day of May, 2021 and on the first day of each and every month thereafter through the 1st day of March, 2022, the Borrower shall pay interest only in the amount of $11,838.13 per month.

e)   On the New Maturity Date, the entire unpaid Balance Due plus accrued and unpaid interest and all fees and costs allowed under the Loan Documents shall be due and payable.

f)   The Borrower's failure to pay the sums stated in paragraph 3(b-d) above, on or before the **eighth (8th) day** of each and every month, will constitute an Event of Default as defined in Section 2.01 of the Mortgage.

g)   The definition of Default Rate appearing on page 1 of the Note is hereby deemed amended to replace the default rate of interest for all purposes under the Loan Documents with the rate of twenty-four percent (24.0%) per annum, to accrue from the date of default in the Note and Mortgage, as amended herein, which rate shall be the Default Rate of the Note and Mortgage for all purposes after default and until the receipt of full payment due under the Loan Documents, notwithstanding entry of a judgment of foreclosure.

4

    h)   If and only if the Borrower fulfills all of its obligations hereunder and under the Loan Documents, there shall be no prepayment due and owing under the Note.

3.   **Modification of Mortgage.** Neither the Borrower nor the Guarantor will be required to provide financial statements, profit and loss statements, income and expenses statement, tax returns or any other financial reporting information, but the Borrower will be required upon **thirty (30)** days' written notice from Lender to provide a current, certified rent roll and updated DHCR rent registration summary forms.

4.   **No Offset/Defenses.** Borrower acknowledges that, as of March 31, 2019, the Balance Due under the Loan Documents is the sum of $1,585,575.74. Borrower further acknowledges it has no defenses to payment of the Balance Due, and/or enforcement of the Note, and/or enforcement of the Mortgage and has no right of offset or claim against Lender and hereby waives any and all defenses in or to any claim, action or proceeding made or brought by Lender in an attempt to collect the Balance Due or to enforce any or all of the Loan Documents.

5.   **Short Payoff.** Following the payments stated in paragraphs 1 and 2, and all other sums that may be required hereunder, Borrower shall have a one-time opportunity to pay off the Loan with the payment of $1,500,000.00 less the Initial Payment of $165,000.00 (the "Short Payoff") on or before the New Maturity Date. As a result of an Event of Default as defined in Section 2.01 of the Mortgage, the offer of a Short Payoff will be deemed automatically null and void and thereby immediately revoked and the Lender will be entitled to pursue any and all remedies allowed under the Loan Documents and/or permitted under the laws of the State of New York, at law or in equity, **without notice**, including but not limited to seeking recovery of the full outstanding Balance Due, plus any and all accrued but unpaid interest and all fees and costs allowed under the Loan Documents

6.   **Loan Documents Continued**. Except as otherwise provided herein, the Loan Documents executed by the Borrower in connection with the Loan shall remain in full force and effect without

09299.0194 Note & Mortgage Mod v3

5

modification or change, including but not limited to the Note, Mortgage and the Guaranty executed by the Guarantor.

7.   **Agreement Controlling**.   When the terms and provisions contained in the Note and/or Mortgage are in any conflict with the terms and provisions contained in this Agreement, the terms and provisions herein contained shall prevail, and that as modified by this Agreement, the Loan Documents are hereby ratified and confirmed in all respects. This Agreement constitutes the entire agreement, and supersedes all prior and contemporaneous agreements and understandings of Borrower and Lender with respect to the Loan Documents.   Borrower is not relying on any oral or written statements from any officer, agent, attorney, or representative of Lender not expressly set forth in this Agreement.

8.   **No Other Changes; Parties Bound**.   This Agreement may not be changed or terminated orally, the covenants contained in this Agreement shall bind the Borrower and the Guarantors, their heirs, representatives, successors and assigns.   The Borrower and Guarantors acknowledge that, throughout the negotiation, preparation and execution of this Agreement, the Borrower and Guarantor have been represented by independent counsel of their own choosing.

8.   **Binding**.   This Agreement is not binding on Lender until countersigned by Lender and delivered to Borrower's counsel.

9.   **Recitals.**   The Borrower, Guarantors and Lender hereby agree that the recitals set forth above are hereby incorporated by reference as if fully set forth herein.

10.  **Counterparts.**   This instrument may be signed in counterparts which, when taken together, will constitute the entire document, and a fax or PDF signature will be considered an original signature for purposes of this instrument.   All singular terms herein will be deemed to include the plural, and all plural terms will be deemed to include the singular.

[Signature and Notary pages to follow]

09299.0194 Note & Mortgage Mod v3

6

**IN WITNESS WHEREOF**, this Agreement has been duly executed by the parties hereto as of the day and year first above written.

LENDER:
35TH AVENUE FUNDING LLC

By: _____
     Mark Levin, Manager

BORROWER:
LV 35 AVENUE CORP.

By: _____
     Jesus Emilio Vera, President

GUARANTOR:

_____
Jesus Emilio Vera, Individually

7

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF  QUEENS        )

On the __26__ day of April, 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared **Jesus Emilio Vera**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

WILLIAM L. SENA
NOTARY PUBLIC, State of New York
No. 02SE4835975
Qualified in Nassau County
Commission Expires June 30, 20__

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the __30__ day of April, 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared **Mark Levin**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

IGOR VAYSBERG
NOTARY PUBLIC, State of New York
No. 02VA6205691
Qualified in Kings County
Commission Expires 05/11/20__

8

Schedule A - Description

## SCHEDULE A

## DESCRIPTION

Title Number: 309Q11156

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of 15th Avenue distant 126.1 feet Easterly from the corner formed by the Intersection of the Southerly side of 35th Avenue and the Easterly side of 102nd Street;

RUNNING THENCE Southerly parallel with the Easterly side of 102nd Street, 100 feet;

THENCE Easterly on a line drawn with the Southerly side of 35th Avenue, 45.37 feet to a point where the same is intersected by a line drawn parallel with the Westerly side of 103rd Street and distant 61.88 feet Westerly therefrom;

THENCE Northerly parallel with the Westerly side of 103rd Street, 99.37 feet to the Southerly side of 35th Avenue;

THENCE Westerly along the Southerly side of Avenue, 25.22 feet back to the point or place of BEGINNING.

9

Schedule B — Payoff Letter

**35th** Avenue Funding LLC
15 W 26th Street, Suite 901
New York, NY 10010
(347)782 2648

April 8, 2019

Payoff quote for:     LV 35 Avenue Corp.
Property:             102-16 35th Avenue
                      Corona, NY

| | | | |
|---|---|---|---|
| Unpaid Principal Balance | | $ | 1,299,407.45 |
| Interest Due: 10/1/2018-3/31/2019 *Per Diem $ 180.47* | 5% | $ | 32,845.54 |
| Default Interest Due: 1/1/2018-3/31/2019 *Per Diem $397.04* | 11% | $ | 180,653.20 |
| Late Fees | | $ | 3,663.80 |
| Escrow Deficit | | $ | 40,517.60 |
| Foreclosure search, attorney's fees and other costs | | $ | 2,500.00 |
| Prepayment penalty | 2% | $ | 25,988.15 |
| **TOTAL PAYOFF:** | | $ | 1,585,575.74* |

Total amount due to 35th Avenue Funding LLC good through March 31, 2019.

Thank You,

**35th Avenue Funding LLC**

*\* 35th Avenue Funding LLC is willing to accept a short payoff of $1,500,000 if unpaid principal balance is being paid down by $165,000 on or before March 31, 2019, TIME IS OF THE ESSENCE. Funds must be certified, cashier's check, or in the form of a wire transfer. Funds are to be received no later than 1:00 p.m. Funds received after 1:00pm will be charged additional day's interest. Please note that all amounts quoted above are to March 31, 2019. After March 31, 2019, the total payoff quoted herein will no longer be considered valid and litigation will ensue.*
*\*\*This statement is issued upon the condition that it will not be considered as an estoppel against the Bank by any person.*
*\*\*Payoff figures are subject to change. 35th Avenue Funding LLC reserves the right to amend these figures, or correct the same, at anytime, prior to issuance of a satisfaction of this loan. It is also requested that you contact us on the date of closing to verify these figures.*

10

NOTE and MORTGAGE MODIFICATION AGREEMENT

Between:

35ᵀᴴ AVENUE FUNDING   LLC

-and-

LV 35 AVENUE CORP.

BLOCK:          1743
LOT:            6
COUNTY:         Queens
PREMISES:       102-16 35th Avenue
                Corona, New York

RECORD AND RETURN TO:

KONNER TEITELBAUM & GALLAGHER
Att: James E. Cantanno, Esq.
462 Seventh Avenue - 12th Floor
New York, New York 10018