UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GREEN MOUNTAIN HOLDINGS,
(CAYMAN) LTD.,

     *Plaintiff*,

       **MEMORANDUM & ORDER**

  -against-      22-CV-1395 (OEM) (SJB)

LV 35 AVENUE CORP. and JESUS EMILIO VERA,

     *Defendants*.
------------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

  Before the Court is Plaintiff Green Mountain Holdings (Cayman) Ltd.'s ("Plaintiff" or

"Green Mountain") motion for summary judgment in this foreclosure action against Defendants

LV 35 Avenue Corp. ("LV 35") and its President and shareholder, Jesus Emilio Vera ("Jesus

Vera") (together, "Defendants").   Additionally, Plaintiff seeks to strike Defendants' fifth

affirmative defense (the "Motion to Strike").

  For the following reasons, Plaintiff's motion for summary judgment is **DENIED** and the

Motion to Strike is **DENIED**.

**BACKGROUND[1]**

  This is a mortgage foreclosure action brought pursuant to New York Real Property Actions

and Proceedings Law ("RPAPL"), Section 1301 *et seq.* to foreclose on a commercial[2] mortgage

---

[1] The following facts are taken from the parties' various submissions and are undisputed unless otherwise noted.

[2] "Defendants do not assert that this is a residential real estate transaction, and the documentary evidence establishes that the subject loan is a commercial loan, involving non-residential real property." *Bayside KCNP Inc. v. New Millenium United Methodist Church*, 2904/12, 2012 WL 5830124 (N.Y. Sup. Ct. Nov. 2, 2012). "The borrowers here are limited liability companies [and] the debt was commercial in nature" as Defendants collected monthly rents on the nine apartments comprising the Property. *See Wilmington Trust v. 1867-1871 Amsterdam Ave. LLC*, 850269/2022, 2024 WL 1887605, at *4 (N.Y. Sup. Ct. Apr. 26, 2024); *See* Mortgage Recording, ECF 1 at PageID 12; Ramer Aff. in Support of Receivership, ECF 28-4, ¶¶ 6-8; *see also* RPAPL § 1304 (defining "home loan" to mean "(i) The borrower is a natural person (ii) The debt is incurred by the borrower primarily for personal, family, or household purposes; (iii) The loan is secured by a mortgage or deed of trust on real estate improved by a one to four family dwelling, or a condominium unit, in either case, used or intended to be used or occupied wholly or partly,

encumbering the property commonly known as 102-16 35th Avenue, Corona, New York 11368 known on the Queens County Tax Map as Block 1743 and Lot 6 (the "Subject Property").[3]  *See* Compl. ¶ 1.  The Subject Property is used as a rental property and neither Vera nor any of his family members live at the Subject Property.  *See* Transcript of July 18, 2024 Oral Argument ("OA Tr.") at 26:20-27:7.

Vera does not occupy the Subject Property but rather lives elsewhere in Corona, Queens. *See* Affidavit of Jesus Emilio Vero in Opp. to Default ("Vera Default Aff."), ECF 17-2, ¶¶ 1-2.

**A.  June 2015 Execution of Note and Mortgage**

On June 29, 2015, LV 35 executed a Consolidated Note (the "Note") in the principal amount of $1,365,000.00 plus interest in favor of Alma Bank ("Alma Bank").  Pl's 56.1 ¶ 4; Ex. C to Compl. (the "Note"), ECF 1-1 at PageID 61-70.  To secure the indebtedness, LV 35 executed a mortgage dated June 29, 2015, to Alma Bank.  Pl's 56.1 ¶ 4; Ex. B to Compl. (the "Mortgage"), ECF 1-1 at PageID 11-60.[4]

Also, on June 29, 2015, Jesus Emilio Vera, executed a personal guaranty (the "Personal Guaranty") wherein he personally guaranteed payment of the Note and Mortgage to the lender, its successors and assigns.[5]  Pl's 56.1 ¶ 4; "Personal Guaranty", ECF 1-1 at PageID 71-80.  On the

_____

as the home or residence of one or more persons and which is or will be occupied by the borrower as the borrower's principal dwelling . . .").

[3] This Court has subject matter jurisdiction over the action under 28 U.S.C. § 1332(a) given the diversity of the parties and an amount in controversy alleged to exceed $75,0000.  *See* Complaint ("Compl."), ECF 1, ¶ 6; Plaintiffs 56.1 Statement ("Pl's 56.1"), ECF 49-1, ¶¶ 1-3; *see also* Defendants' 56.1 Counterstatement ("Defs' 56.1"), ECF 51-2, ¶¶ 1-3.

[4] The Mortgage was recorded on August 6, 2015, under City Register File No. ("CRFN") 2015000270948.  Ex. B to Compl. at PageID 12-13.

[5] While the pre-printed name below the signature long on the Personal Guaranty states that it is to be signed by a "Julio Vera," the actual signature affixed is executed by Jesus Emilio Vera.  *See* Personal Guaranty at PageID 80.  Defendants also admit that Jesus Vera is the personal guarantor in their 56.1 Statement.  *See* Defs' 56.1 ¶ 4.  At oral argument, Defense counsel also represented that his understanding was that Jesus was the original guarantor." OA Tr. 15:18-22. Accordingly, the Court, deems Jesus Emilio Vera as the guarantor for the purposes of this motion only.

guarantee, Jesus Vera is listed as residing at 108-68 50th Avenue in Corona.  Personal Guaranty at PageID 71.

### B.  The Mortgage's Notice Provisions

A crucial issue in this case is the issue of what notices, if any, were due to Defendants as the borrowers-obligors.

The Mortgage contains a notice provision stating that: "Any notice, report, demand or other instrument authorized or required to be given or furnished shall be addressed to the party intended to receive the same, at the address of such party set forth below . . . ."  Mortgage § 4.13(a) at PageID 49.

For LV 35, such notices were to be sent to the Subject Property's address "with a copy to" L 35's attorney, William L. Sena, Esq., in Jackson Heights, Queens.  *See id.*

At oral argument, Plaintiff's counsel conceded that notice was at the core of the action and that the Mortgage itself was "silent" as to whether an assignment of the mortgage was covered under § 4.13(a).  OA Tr. at 4:18-25, 5:9-13.

In its supplemental briefing, Plaintiff points to twenty-two (22) other places in the Mortgage in which "notice, report, demand or other instrument" is "authorized or required to be given or furnished."  *See* Plaintiff's Supplemental Brief, ("Pl's Supp. Br."), ECF 59 at PageID 904-05 (citing Mortgage §§ 1.07.1; 1.09(a); 1.09(e); 1.09(g); 1.09(i)(B); 1.10; 1.11(a); 1.11(b); 1.11(c); 1.12(d); 1.13; 1.14(b); 1.14(c); 1.15; 1.22; 2.01(b); 2.01(d); 2.01(v); 3.01; 3.15; 4.17; and 4.18 at PageID 21-50).

Crucially, § 3.01, which provides an "Acceleration of Maturity" as a remedy for an event of default under the Mortgage states:

> If an Event of Default shall have occurred, Mortgagee *may declare* the outstanding principal amount of the Note and the interest accrued thereon, and all other sums

secured hereby, to be due and payable immediately, and *upon such declaration* such principal and interest and other sums shall immediately become due and payable except as otherwise provided in the Note.

Mortgage § 3.01 at PageID 39 (emphases added).

### C. December 2018 – Assignment of Note and Mortgage from Alma Bank to 35th Avenue Funding

On December 31, 2018, Alma Bank, assigned its interest in the Mortgage in favor of Plaintiff's predecessor-in-interest, 35th Avenue Funding LLC ("35th Ave Funding"). Pl's 56.1 ¶ 5; Ex. D to Compl. at PageID at 84-86. The assignment was recorded at CRFN 201900001010. *See* Ex. D to Compl. at PageID 82. Doris Shen, an authorized signatory for 35th Ave Funding, states in an affidavit that the Note was transferred to 35th Ave Funding's possession. Affidavit of Doris Shen ("Shen Aff."), ECF 49-8, ¶ 4.

At oral argument, Defendants explained how it was that Vera had notice of this initial assignment of the Note and Mortgage. Defense counsel represented that Vera, who is a construction worker, had worked repeatedly with Alma Bank and its construction related entities. OA Tr. 18:19-21. Given this relationship, Alma "funded" Vera to build the Subject Property for an initial loan of $600,000. *Id.* at 18:21-24. At some point thereafter, a refinancing occurred which increased the loan obligation to $1.35 million. *Id.* at 18:24-19:1. The refinancing culminated in an in-person closing during which the assignment from Alma Bank to 35th Ave Funding was execute and which at Vera was present. *Id.* at 19:14-20:3.

### D. April 2019 – Signing of the Loan Modification Agreement

On April 26, 2019, LV 35 entered into a written Note and Mortgage Modification Agreement ("Modification Agreement") with the 35th Ave Funding whereby LV 35, guaranteed by defendant Vera, reaffirmed its original obligations under Note and Mortgage and modified the terms of the repayment of the loan (the Note, the Mortgage, and the Modification Agreement are

4

collectively referred to as the "Loan").  Compl. ¶ 10; *See* Ex. F to Complaint, the "Modification Agreement," PageID 103-08.

As explained at oral argument, the impetus for this modification was the fact that the original mortgage was due to mature.  OA Tr. 20:5-13.  According to Defendants Alma Bank "wanted out" from the mortgage dealings.  *Id.*

In relevant part, the Modification Agreement contained the following modifications and provisions:

- A new the maturity date of April 1, 2022, upon which the entire unpaid balance on the Loan was due, Modification Agreement ¶ 2(a), (e) at PageID 105;

- Interest payments of $8,286.69 per month between May 1, 2019, until April 1, 2020, *id.* at (b);

- Interest payments of $9,470.51 per month between May 1, 2020, until April 1, 2021, *id.* at (c);

  Interest payments of $11,838.13 per month between May 1, 2021, until March 1, 2022, *id.* at (d);

- An eight (8) day grace period before such a failure to pay interest would count as an Event of Default under the Mortgage, *id.* at (f);

- An amended default rate of 24% per annum would accrue from the date of the default, *id.* at (g);

The Modification Agreement also contained the following provision as to offsets and defenses:

> **No Offset/Defenses.** Borrower acknowledges that, as of March 31, 2019, the Balance Due under the Loan Documents is the sum of $1,585,575.74. Borrower further acknowledges it has no defenses to payment of the Balance Due, and/or enforcement of the Note, and/or enforcement of the Mortgage and has no right of offset or claim against Lender and hereby waives any and all defenses in or to any claim, action or proceeding made or brought by Lender in an attempt to collect the Balance Due or to enforce any or all of the Loan Documents.

*Id*. at ¶ 4 at PageID 106.

The Modification Agreement was signed by Vera on behalf of LV 35.  *Id.* at PageID 108. Vera continued as the personal guarantor as well.  *Id*.

**E.  June 2021 – Transfer of the Note and Mortgage From 35th Avenue Funding to Green Mountain**

On June 29, 2021, the physical wet-ink Note was transferred to Green Mountain's possession.  Pl's 56.1 Statement ¶ 7;  Shen Aff.  ¶ 4.

Thereafter, on August 2, 2021, the Mortgage was also assigned 35th Ave Funding to Green Mountain and subsequently recorded in the Queens County Clerk's Office on August 9, 2021.  Pl's 56.1 Statement ¶ 7 (providing CRFN: 2021000311391); Compl. at PageID 87-91;  Shen Aff. ¶ 4.

At this point, LV 35 was bound by the Modification Agreement to make interest payments of \$11,838.13 by the 8th day of each month.  *See* Modification Agreement ¶ 2(f) (grace period) at PageID 105.  That is, under the terms of the Modification Agreement, LV 35 was obliged to pay the next interest installment of \$11,838.13 to Green Mountain or its authorized servicer by July 8, 2021.  *See id.* ¶ (2)(d).

As represented by Plaintiff's counsel, Green Mountain itself never sent any notice of this assignment to LV 35, to Vera individually, or to LV 35's attorney.  *See* OA Tr. 24:11-18.

**F.  July 2021 – Introduction of a New Loan Servicer, FCI Lender Services.**

On July 9, 2021, Plaintiff, through its servicing agent, FCI Lender Services, Inc. ("FCI"), mailed to defendant LV 35 a so-called Borrower Welcome Letter.  Ex. C to the Hadar Decl. (the "Borrower Welcome Letter"), ECF 49-6.  The Borrower Welcome Letter was addressed to "LV 35 Ave. Corp." with the Subject Property's address: at "102-16 35th  Avenue, Corona Queens." *See id.*  This is the same address used by LV 35 in the Mortgage, *see* Mortgage at PageID 12, and conceded by Defendants to have been the correct address to mail notifications in care of LV 35

despite the fact that neither Jesus Vera nor any of the other Vera family members did not reside at this address as it was a rental property.[6]  *See* OA Tr. at 26:20-27:20.

Plaintiff's counsel also conceded at oral argument that a copy of the Borrower Welcome letter was not sent LV 35's attorney in Queens.  OA Tr. 28:2-21.

Unlike other evidence adduced, there is no evidence, such as postage receipt, to indicate that the Borrower Welcome Letter was actually mailed or received.  Plaintiff's counsel represented that he believed the letter was sent by registered certified mail.  OA Tr. at 13:1-7.

Moreover, Plaintiff's counsel conceded that the Borrower Welcome letter was the first of any type of notice that Defendants would have received indicating that their Mortgage and Note had been reassigned to a new Lender, Green Mountain.  OA Tr. at 36:1-11.

Substantively, the Borrower Welcome Letter notified LV 35 that Green Mountain was the new lender/creditor on the Note, that FCI was now servicing the Note on behalf of Green Mountain, provided information as to the total amount of debt (with a breakdown of the principal balance and the accrued interest), detailed FCI's phone number and business hours, and provided the available methods for online payment.  *See* Borrower Welcome Letter; Pl's 56.1 ¶ 8 (citing *id.*).

### G. July 2021 Through May 2022 -- LV 35  Repeatedly Sends Checks to Its Prior Servicer, 35th Ave Funding

Sometime on or before July 8, 2021,  35th Ave Funding–now no longer the servicer on the Loan–received a check from LV 35 dated July 8, 2021, in the sum of $11,838.13, bearing number check #500033714.  Pl's 56.1 ¶ 9; Shen Aff. ¶ 5.

---

[6] There is also no indication that the Borrower Welcome Letter was ever sent to Vera's home address: "108-68 50th Avenue, Corona, New York."  *See* Personal Guaranty at PageID 82.

On July 15, 2021, 35th Ave Funding, via its counsel at Mavrides, Moyal, Packman, Sadkin ("MMPS"), sent a so-called "goodbye letter" (the "Goodbye Letter") to LV 35 and Vera via Fedex priority overnight. *See* Ex. D. to Hadar Decl. ("Goodbye Letter"), ECF 49-7; Shen Aff. ¶ 5. Annexed to the Goodbye Letter was the bank check from July 8, 2021.[7] *See* Goodbye Letter. A copy of the Goodbye Letter was also mailed via FedEx to Jesus Vera at his home address at 108-68 50th Ave. *Id.* FedEx priority overnight tracking numbers were provided for both mailings.[8]

The Goodbye Letter explained that the Loan had been sold by 35th Ave Funding to Green Mountain, that 35th Ave Funding was no longer servicing the loan, and that going forward the Defendants should only contact Green Mountain in connection with the loan and should do so via Green Mountain's loan servicer, FCI. *See id*.

There is no evidence that the Goodbye Letter was sent to LV 35's attorney and Plaintiff's counsel conceded the same. *See* OA Tr. 38:1-39:12.

Nonetheless, Defendants continued to send checks to the 35th Ave Funding. *See* Shen Aff. ¶¶ 6; Pl's 56.1 ¶ 9. In total, 35th Ave Funding received the following checks from LV 35:

| Month | Check # | Amount |
|---|---|---|
| 08/01/2021 | 500043124 | $11,846.13 |
| 10/01/2021 | 500059786 | $11,846.13 |
| 02/01/2022 | 500091966 | $11,854.00 |
| 03/01/2022 | 500099371 | $11,854.00 |
| 04/01/2022 | 500108061 | $11,854.00 |

---

[7] At oral argument, Defense counsel explained the Defendants maintained a bank account with New York Community Bank ("NBYC") in Queens. OA Tr. 33:12-35:15. It was Defendants practice to draw "bank checks" from the NYCB branch and then FedEx those bank check to the lender, which prior to Green Mountain was, 35th Ave Funding. *Id.* Unlike retail checks in which an account holder's account is debited at the time of cashing by the recipient, when a bank check is issued, the account holder's account is automatically debited the amount the check is written out *at the time the account holder writes the check* so as to guarantee payment for the recipient. *See id.* Relevant to the dispute here is that, as a result of LV 35 using drawing bank checks to pay its mortgage, it had no later indication or notice of whether the putative recipient had actually cashed that check because its NYCB account was debited the moment the mortgage payment was drawn, not when any lender later cashed it. *See id.*

[8] While there is evidence that the Goodbye Letter was sent and that Vera ultimately received it, there is a dispute as to when Vera received it or that Vera understood it as he is an Ecuadorian non-English speaker. OA Tr. 9:19-20; 39:17-24. As represented in oral argument, Defendants first found out that something was terribly amiss when Vera went to NYCB and was told that him there was a *lis pendens* against the Subject Property and that Defendants were the subject of a mortgage foreclosure action. OA Tr. at 44:10-17.

| 05/01/2022 | 500116541 | $11,854.00 |

Shen Aff. ¶ 6; Pl's 56.1 ¶ 9

35th Ave Funding representative Shen states that these checks were never cashed by 35th Ave Funding.  Shen Aff. ¶ 7.  Rather, Shen states, without providing any explanation, that these six checks were kept in 35th Ave Funding's possession for approximately *10 months* and "eventually sent back to" LV 35 in "June 2022 via FedEx," long after the initiation of this lawsuit. Shen Aff. ¶¶ 6-7 (providing two FedEx tracking numbers but no labels); Pl's 56.1 ¶ 10.

Further, Defendants' own evidence contradicts Shen's affidavit as it shows remittance of payments for September 2021, November 2021, December 2021, and January 2022, to 35 Ave Funding.  *See* Ex. D to Default Mot., NYCB Bank Statements, ECF 17-6.

### H.   February 2022 – Notification of Default and Acceleration

On February 4, 2022 – over six months after LV 35 began remitting payments erroneously to FCI – Green Mountain's counsel at the time, Alan H. Weinreb ("Weinreb") of the Margolin & Weinreb Law Group, LLP ("M&W"), sent, by certified and regular mail, a letter to LV 35 with the subject line "Notice of Acceleration and Intent to Foreclose."  *See* Ex. E to Compl. ("Default and Acceleration Notice") at PageID 93-95.  Plaintiff adduced three United States Postal Service ("USPS") certified mail receipts corresponding to three purported mailing of the Default and Acceleration Notice to LV 35, Jesus Vera, and a Hilda Vera.  *See id.* at PageID 96-100.  However, all three mailings were addressed to the same address, the Subject Property, and none were to the address listed on the Personal Guaranty.  *Id.* at Aff. of Mailing at PageID 101.  While Defendants admit that these were sent, there is no evidence that they were received.  *See* Defs' 56.1 ¶ 13; OA Tr. 32:20-21.  Notably, the USPS Certified Mail receipts do not show that these mailings were actually received by any person as all of the signature lines are blank.  Default and Acceleration Notice at PageID 96-100.

And, notably, there is no evidence that the letter was sent to LV 35's attorney as required pursuant to Mortgage sections 3.01 and 4.13. *See* Mortgage at PageID 39, 49.

The Default and Acceleration Notice advised LV 35 it had had defaulted on the Loan by, "among other things, failing to make payments of interest when due on said Loan Documents." Default and Acceleration Notice at PageID 93. Notably, the Default and Acceleration Notice never specified which payments were untimely. However, it did break down the amount owed under the unpaid principal balance stating that interest from owed had accrued from June 1, 2021, through February 25, 2022. *Id.* at PageID 94. Further, Green Mountain's Complaint alleges that LV 35 "has failed to comply with the terms and provisions of the said Mortgage and said instruments secured by the Mortgage, by failing to pay the July 1, 2021 and all subsequent payments[.]" Compl. ¶ 14; Pl's 56.1 ¶ 12 (citing *id.*).

As a result of said default, the Default and Acceleration notified LV 35 that Green Mountain had elected to immediately accelerate all amounts due on the loan. Compl. ¶ 15; Default and Acceleration Notice at PageID 94.

## I. March 2022 - Plaintiff Initiates the Foreclosure Action and Requests a Certificate of Default

On March 14, 2022, Green Mountain, two weeks prior to the maturity date, commenced the instant foreclosure action in this Court. *See Compl.* Subsequently certain disputes about service arose. The affidavit of service executed for defendant Jesus Vera stated an incorrect address in Bay Shore, New York. *See* Vera Default Aff. ¶ 3. Jesus Vera has a son who has an identical name who lives at the Bay Shore address visited by the process server. Vera Default Aff. ¶¶ 1, 3. Jesus Vera also swears that he "never authorized [his son] or anyone in his household to accept service of anything on my behalf at [the Bay Shore] address. Neither my son nor anyone

in his family ever told me that they were served with something for me relating to this Action or relating to any other matter."  *Id.* ¶ 3.

Jesus Vera also stated that LV 35 never received the summons executed for it from the Secretary of State, its registered agent. *See id.* ¶ 4; Summons on LV 35, ECF 7.

On April 28, 2022, the Clerk issued a Certificate of Default.  ECF 11.

**J.   May 2022 - Defendants Learn of the Erroneous Payments, Foreclosure Action; the Escrow Agreement**

Vera states that on May 12, 2022, he learned of the action against him and LV 35 when vesting the Subject Property when "he saw a package left for LV."  Vera Default Aff. ¶ 5.  Vera immediately reached out to his counsel, Jonathan Scher ("Scher"),  who met with him that night. Affirmation of Jonathan L. Scher in Opposition to Default ("Scher Default Aff."), ECF 17-1, ¶ 2.[9]

The next day, on Friday, May 13, 2022, Scher "placed a telephone call to Plaintiff's counsel's office, by calling Alan Weinreb, Esq. [of Margolin & Weinreb Law Group LLP ("M&W")], but he was unavailable" and so Scher pressed to speak to the associate working on the file." [10]  Scher Default Aff., ¶ 3.  That associate, Alyssa Kapner ("Kapner"), did not initially respond.  *Id.*

On Tuesday, May 17, 2022, Scher finally got in touch with Kapner and "told her [his] clients paid each and every monthly payment and that [he] would email to her proof of every one of those payments made, by bank check, and remitted by Fed Ex, to be received by the lender on or before the 15th of the month."  *Id.*

---

[9] The Court may consider and credit an attorney's affirmation on summary judgment so long as it is made upon knowledge or supported by evidence.  *See Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983). Such is the case here.
[10] M&W were later terminated as counsel on June 15, 2023 and replaced by current counsel of record, Hasbani and Light.  *See* ECF 26 (consent of substitution of attorneys).

On Wednesday, May 18, 2022, Scher sent an email to Kapner with the subject "RE: LV 35 Avenue Corp., Jesus Emilio Vera = 22VC1395 (EDNY)" asking to talk. *See* Ex. C to Scher Default Aff., ECF 17-5. Attached to that email, Scher appended "proof of every monthly payment was made by bank check, approximately 18 months, together with proof that each of the payments were remitted by Fed Ex, to be received by the lender on or before the 15th of the month." *Id.*; *See* Ex. D to Scher Default Aff., ECF 17-6. That same day, Scher "personally spoke with Ms. Kapner again, and discussed with her that the Defendants had made the monthly payments to the prior lender because the Defendants were unaware that the mortgage had been assigned to the Plaintiff." Scher Default Aff. ¶ 5.

On Thursday, May 19, 2022, sometime before 2:10 PM,

> [Scher] called Ms. Kapner again, **not only** to confirm her receipt of the documents that [he] sent to her by email the day before, **but also** to explain to her that because my clients made their payments by bank checks drawn on New York Community Bank, the Defendants herein had no idea that the original lender was receiving the checks sent by Federal Express, but not depositing them. The Defendants had no idea that the checks were not cashed, because each month, the money to make the mortgage payment was withdrawn from the mortgagor's bank account and deposited into New York Community Bank's account, for the NYCB check to be drawn for the payments to be remitted. As a result, the money had already been withdrawn from the mortgagor's account and there would be no surplus funds in the Defendants' account to tip him off that the checks were not cashed and that a potential problem existed.

Scher Default Aff. ¶ 6.

In response, Kapner told Scher over the telephone that her firm, M&W, "would take no further action on the file, and would not pursue a default judgment until after we conferred about how to resolve this case since the mortgagor was remitting payments." *Id.* ¶ 7.

Scher contends that this discussion constituted an unambiguous oral agreement to refrain from prosecuting the foreclosure action until it was further investigated and a resolution was discussed between counsel. *Id.* ¶¶ 8-9.

12

Kapner later responded to Scher's May 18th email, replying "receive[d] and we are looking into this. We will be in touch." Ex. E to Scher Default Aff., ECF 17-7.

On Friday, June 10, 2022, attorney Scher sent a follow up email to Kapner "to find out where and to whom the Defendants were expected to remit their June 2022 mortgage payment . . . ." Scher Default Aff. ¶ 13. Scher's email stated:

> My client contacted me to ask to whom does he send this month's regular monthly payment. I called you 3x, and left word on your VM and with the receptionist, but to no avail, since you never called back. I also resorted to calling Mr. Weinreb 1x today, but no call back from him either.
> Mr. Vera used to make his payment, on or about the 9th or 10th of every month, the sum of $9,470.51 per month, to 35th Ave Funding LLC (in 2020 and 2021), but then in June 2021, the sum increased to 11,838.13. The record of his payments, starting in June 2021, shows he remitted payment on or before the 12th of every month, to 35th Ave Funding LLC (in 2021 and 2022) the following monies:

Ex. F to Scher Default Aff., ECF 17-8. Below this, Scher included a chart containing the dates and amounts of payments purportedly made to 35 Ave Funding from June 2021 to May 2022, including the check numbers. The chart indicates that all payments were remitted to the New York Community Bank ("NYCB") on or before the 12th of the month. It also clashes with Shen's affidavit as there are checks remitted to NYCB for September, November, and December 2021 and January 2022, which Shen indicates were not received by 35th Ave Funding. *Compare* Shen Aff ¶ 6, *with* Ex. D to Scher Default Aff. at PageID 339 (Sept. 2021), 341 (Nov. 2021), 342 (Dec. 2021), 343 (Jan. 2022).

Scher received an out of office response from Kapner about Weinreb replied that he would "pass along [his] email." Ex. G to Scher Default Aff., ECF 17-9.

On June 11, 2022, Scher sent a follow up email to Mr. Weinreb inquiring if he could send the June payment to M&W's escrow account. Scher Default Aff ¶ 15; Ex H. to Scher Default Aff., ECF 17-10 ("My client does not want to miss a payment, or be deemed late,

just because a dispute exists between the assignor and assignee of the Mortgage that my client did not know was assigned.")

On Monday, June 13, 2022, attorney Scher received a reply from attorney Weinreb stating "Please hold the June funds in your escrow account until [the M&W Director] returns and can contact the client for further direction."  Ex I. to Scher Default Aff., ECF 17-11;  Scher Default Aff ¶ 16.

On Tuesday, June 14, 2022, after collecting the funds from Defendants, Scher responded that

> As per the below email received yesterday from Alan Weinreb, Esq., last night Mr. Vera provided me with a bank check drawn on NYCB in the sum of $11,486.00 made payable to "The Scher Law Firm LLP, as Escrow Agent." Today, I deposited said funds into my escrow account, as per Mr. Weinreb's suggestion below.

Ex J. to Scher Default Aff., ECF 17-12.

### K.  July 2022 – Default Proceedings and the Remaining Escrow

On July 6, 2022, Plaintiff moved for default judgment and foreclosure of the Mortgage. ECF 13.

Scher avers he did not hear back further from Kapner or Weinreb and so on July 15, 2022, he collected the July 2022 payment from Defendants and deposited it as well into his firm's escrow account.  Scher Default Aff ¶ 18-19; Ex K. to Scher Default Aff., ECF 17-13.

Defendants filed an answer on July 19, 2022, ECF 16, and moved to vacate the default and the motion was referred to the presiding magistrate judge who ultimately vacated the default on July 29, 2022.  *See* Order Dated July 29, 2022 (SJB).

In Scher's affirmation submitted in connection with the instant motion, he states that the escrow account now holds $216,064.00 in back mortgage payments from Defendants. Affirmation of Jonathan L. Scher, ECF 51, ¶ 4.  Further, he claims his firm is "ready, willing, and able to

14

transfer the $216,064.00 to Plaintiff's attorneys or directly to the Plaintiff provided TSLF is provided with wiring instructions or an address to send a check. Plaintiffs former counsel never directed the money to be sent anywhere, so it has been sitting in escrow awaiting those instructions." *Id.*

On June 16, 2023, new counsel for Defendants, Hasbani and Light P.C. ("H&L"), entered a notice of appearance on the docket. ECF 27. The Court thereafter set a briefing schedule on the motion for summary judgment which was fully briefed and filed on December 26, 2023. ECF 49, *et seq.*

On July 18, 2024, the Court held oral argument on the motion. *See* Minute Entry dated 7/18/2024. The Court ordered supplementary briefing on the issues of f (1) the scope and coverage of the notice provision in the mortgage as to the notices discussed; (2) the scope and enforceability of the waiver provision in CEMA as to the affirmative defenses, including the defense of unclean hands; (3) the merits of any "unclean hands" argument. *Id.* On August 15, 2024, Plaintiff filed a supplemental brief ("Pl's Supp. Br."), ECF 58. On September 5, 2024, Defendants filed a supplemental brief ("Def's Supp. Br."), ECF 59.

**LEGAL STANDARD**

"Summary judgment is often an appropriate mechanism for the resolution of mortgage foreclosure actions." *United States v. Paugh*, 332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004); *see also Builders Bank v. Charm Developments II, LLC,* 09-cv-3935 (JG) (LB), 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (alterations and quotation marks omitted).

"The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (emphasis in *Brizzi* omitted); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the

16

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

Given the posture of this case, the Court also deems "[s]tatements made by an attorney during oral argument . . . constitute binding judicial admissions." *Gen. Ins. Co. of Am. v. Mezzacappa Bros.*, 01-CV-7394 (FB), 2003 WL 22244964, at *5 (E.D.N.Y. Oct. 1, 2003), *aff'd*, 110 Fed. App'x. 183 (2d Cir. 2004); *accord Michalow v. E. Coast Restoration & Consulting Corp.*, 09-CV-5475(KAM)(RML), 2018 WL 1559762, at *7 (E.D.N.Y. Mar. 31, 2018); s*ee also United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir.1981) ("Statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney."); *Pride Acquisitions, LLC v. Osagie*, 3:12-CV-639 (JCH), 2014 WL 5465677, at *2 (D. Conn. Oct. 27, 2014) ("Although it is inappropriate to grant summary judgment where the facts do not support it, a court may consider, and bind a party to, its attorney's representations just as much as it may consider other evidence in determining whether it is appropriate to grant a motion.").

### DISCUSSION

#### A.  Plaintiff has Established a Prima Facie Case for Foreclosure

"The basis of a foreclosure is that an actionable breach of the mortgage has occurred entitling the plaintiff/mortgagee to sell the property to satisfy the debt the mortgage secured." *Weiss v. Phillips*, 65 N.Y.S.3d 147, 152 (App. Div. 2017).  As it regards a commercial mortgage loan, "plaintiff may establish a prima facie right to foreclosure by producing the mortgage documents underlying the transaction and undisputed evidence of nonpayment." *Red Tulip, LLC v. Neiva*, 842 N.Y.S.2d 1, 5 (App. Div. 2007).

"If the plaintiff did not originate the loan, it is required to prove its valid and current ownership of the instruments." *358 & 360 Atl. Ave. Holdings, LLC v. 358 Atl. Realty LLC*, 21-CV-168 (DG)(PK), 2023 WL 2969297, at *6 (E.D.N.Y. Mar. 1, 2023).  Here, Plaintiff has established a *prima facie* case to foreclose on the Property.

#### 1.  Existence of an Obligation or Note Held by Plaintiff

"In a typical mortgage foreclosure transaction, a *prima facie* case is based on production of the unpaid note and mortgage, which establishes that the plaintiff is entitled to foreclose on the unpaid note." *Weiss*, 65 N.Y.S.3d at 153; *see Seaway Cap. Corp. v. 500 Sterling Realty Corp.*, , 941 N.Y.S.2d 871 (App. Div. 2012) (The party seeking to foreclose must submit "proof of the existence of the mortgage and note.").

While the 2015 Note was introduced as an attachment to the Complaint, that does not necessarily prove Green Mountain is currently in possession of the Note.  However, John Ramer, a loan default analyst, attorney, and authorized signatory for Green Mountain, who has access to Green Mountain's business records involving mortgage loans, including the subject Loan, swore that "[t]he Note was transferred to Plaintiff's possession on June 29, 2021."  Affidavit of John Ramer in Support of Summary Judgment, ECF 49-2, ¶¶ 2, 4, 5, 7, 12.  Absent any admissible

evidence controverting such a sworn statement, such affidavits have been found legally sufficient to establish possession of a note. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016) ("New York courts have repeatedly held that proof of physical possession—such as the affidavits of OneWest's corporate representative and counsel in this case—is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note."); *Weiss*, 65 N.Y.S.3d at 152 (rejecting the argument that the failure to produce the note prevents plaintiff from establishing a *prima facie* case for foreclosure where defaulting party acknowledges the existence and validity of the unpaid note and mortgage and other evidence does not challenge the existence of the note). Lastly, Defendants themselves admit that "the Note was transferred to Plaintiff's Possession on June 29, 2021[.]"[11]  Defs' 56.1 ¶ 7.

There is no triable issue of fact as to the proof of existence of an obligation, *i.e.*, the Note, held by Green Mountain.

## 2.     Proof of Nonpayment on the Note

As to default, Green Mountain claims that LV 35 breached its obligations under the Note – and thereby caused an event of default under the terms of the Mortgage[12] – by failing to pay the regular monthly payment which came due on July 1, 2021, and all subsequent payments.  Pl's 56.1 ¶ 12.

---

[11] This admission disposes of Defendants' Sixth Affirmative Defense, challenging Plaintiff's standing to prosecute this foreclosure action.  Answer ¶ 30.  *See HSBC Bank USA, N.A. v. Spitzer*, 131 A.D.3d 1206, 18 N.Y.S.3d 67, 68 (2015) ("A plaintiff has standing in a mortgage foreclosure action where it is the holder or assignee of the underlying note at the time the action is commenced."); *accord CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 337 (2d Cir. 2021).

[12] The Mortgage provides, as an "Event of Default," that a "(i) default shall be made in the payment of any interest due under the Note, or in the payment of any installment of principal due under the Note, in either such case, when and as the same shall become due and payable, or (ii) default shall be made in any other payment of the principal of the Note, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any prepayment or otherwise, in each case, as in the Note and the Mortgage provided or default in the payment of any other Indebtedness due to Mortgagee under the Mortgage . . ."  Mortgage § 2.01(a) at PageID 35-36.

Additionally, Green Mountain asserts that a separate event of default occurred upon LV 35's failure to tender the full outstanding and balance when the note matured on April 1, 2022.[13] *See id.*; *see also* Modification Agreement ¶ 2(e) at PageID 105, ("On the New Maturity Date, the entire unpaid Balance Due plus accrued and unpaid interest and all fees and costs allowed under the Loan Documents shall be due and payable.").

Defendants do not deny that they did not make the July 2021 mortgage payment to the proper loan servicer, FCI, or Green Mountain at the time the July 2021 payment was due or within the eight-day grace period. *See* Modification Agreement at 2(f) at PageID 105.[14]   In fact, Defendants explicitly admit that they "made payments to the wrong entity." Defs' 56.1 ¶ 12 at Response.  Nor do they dispute that they failed to pay the outstanding sum of the Loan on the April 2022 maturity date.

Instead, Defendants raise an unpled affirmative defense of unclean hands. Defs' Supp. Br. at PageID 916-17.  Defendants argue that LV 35 is not in default because "once [they] learned that their payments were sent to the wrong entity, the Defendants sought to pay those payments to the Plaintiff to bring the mortgage current but, the Plaintiff rejected any payment from the

---

[13] Defendants argue that because a default on the basis of the failing to pay the entire loan on the maturity date was not alleged in the complaint, and Plaintiff did not seek to amend the complaint, that this Court cannot consider these additional facts establishing a separate default based on defaulting at the time of maturity. *See* Defs' Opp. at PageID 856-58. Defendants are incorrect. Rule 15 requires no formal motion and a court may *sua sponte* consider complaints amended "so long as the opposing party has not been prejudiced in presenting its case." *New York State Elec. & Gas Corp. v. Sec'y of Lab.*, 88 F.3d 98, 104-05 (2d Cir. 1996) (citation omitted) ("Rule 15(b) requires no motion or formal amendment of the pleadings."). Here, Defendants are not presented with any prejudice by the consideration of this additional default. This action was initiated March 2022, before the possible default, and once the default occurred in April 2022, Plaintiff then made clear in its pre-motion conference letter dated July 27, 2023, ECF 36, that it also considered the failure to pay on the maturity date an additional default. *See id.* at 3. As the purpose of pleadings are to provide fair and sufficient notice to the opposing party, and such notice was provided in this action prior to briefing, "the Court will deem the complaint to be amended to conform to the proof." *Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81, 118–19 (E.D.N.Y. 2001); *see Millenium Expressions, Inc. v. Chauss Mktg.*, Ltd., 02 CIV.7545 JCF, 2007 WL 950070, at *5 (S.D.N.Y. Mar. 30, 2007) ("[A] court may deem a pleading amended *sua sponte*.").

[14] "The Borrower's failure to pay the sums stated in paragraph 3(b-d) above, on or before the eight (8th) day of each and every month will constitute an event of Default as defined in Section 2.01 of the Mortgage." Modification Agreement ¶ 2(f) at PageID 105.

Defendants." Affidavit of Luis Vera ("Luis Aff."), ECF 51-1, ¶ 2.; *See* Defs' 56.1 ¶ 12 at Response; Defs' Opp., ECF 51-3 at PageID 855-56; *see also* Affirmation of Jonathan L. Scher, ECF 51, ¶¶ 2-4 (explaining the circumstances of the purported escrow agreement between the parties).

Even though this may be case, it does not matter here for the purposes of establishing a finding of default as a matter of law. That an alternate payment agreement or escrow structure may have later been discussed between counsel does not change the outcome of the relevant question of default: whether the entity entitled to be paid on the Note – FCI *viz.* Green Mountain – was indeed timely paid as required under the terms of the Loan.

It is undisputed that Defendants did not pay Green Mountain or its servicer, FCI, pursuant to the terms the parties had previously agreed upon, namely paying the regular monthly payment due on July 1, 2021 within the grace period of 8 days. Additionally, there is no dispute of fact Defendants have also defaulted by failing to pay the full accelerated amount on April 1, 2022, the modified maturity date of the loan.

Given that Plaintiff has established that there are not disputes of fact as to the existence of an obligation and non-payment by LV 35, Plaintiff has established a *prima facie* case for foreclosure.

## B. Affirmative Defenses

"[O]nce a plaintiff mortgagee in a foreclosure action has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *United States v. Watts*, 13-cv-3211 (ADS)(WDW), 2014 WL 4275628, at *2 (E.D.N.Y. May 28, 2014), *report and recommendation adopted*, 13-CV-3211 (ADS)(WDW), 2014 WL 4293815 (E.D.N.Y. Aug. 28,

2014).  "Thus, the burden shift[s] to [the] defendant to raise a triable issue of fact regarding his affirmative defenses to foreclosure." *Fortress Credit Corp. v. Hudson Yards, LLC*, 912 N.Y.S.2d 41, 41 (App. Div. 2010).

Here, Defendants raise six affirmative defenses.  Answer ¶¶ 25-31.  These defenses include that (1) Defendants have made every monthly payment to the prior holder of the note, i.e., 35th Ave Funding; (2) Defendants were never notified that Green Mountain was the holder of the note and the monthly payments had to be made to it; (3) that Green Mountain lacks standing to prosecute this mortgage foreclosure proceeding; (4) Defendants have made full payment of each and every monthly payment; (5) Green Mountain did not properly serve the Defendants; and, (6) Green Mountain lacks authority to prosecute the action.  *Id.*

Additionally, as mentioned above, Defendants also assert an equitable defense of unclean hands predicated on the institution of the foreclosure action despite prior counsel's representations that Defendants should remit the money to escrow.[15]  Defs' Opp. at PageID 855-56.  Defendants contend that "New York recognizes the 'clean hands' requirement in foreclosure actions, under which courts will not assist a party when the right asserted is contrary to the public interest." *Emigrant Sav. Bank v. Elan Mgmt. Corp.*, 668 F.2d 671, 675 (2d Cir. 1982) (citing *Dry Dock Sav. Inst. v. Harriman Realty Corp.*, 270 N.Y.S. 428 (Sup. Ct. 1934), *aff'd* 280 N.Y.S. 981 (App. Div. 1935)).

In its supplemental briefing, Plaintiff maintains that (1) Defendants waived all of its defenses given the clauses in the Mortgage and the Amendment; (2) the unclean hands argument

---

[15] For the same reasons the Court *sua sponte* grants the amendment of Plaintiff's complaint to include a default under the theory that Defendants separately failed to pay the full amount of the loan at the maturity date, *see* note 13, *supra*, the Court also deems the unclean hands defense appropriately notified to Plaintiff.  Indeed, this has been Defendants' substantive defense against foreclosure since its inception and there is no surprise or prejudice to Plaintiff in allowing the Court to consider it despite only explicitly being announced in Defendants' motion papers.  *See* Defs' Opp. at PageID 855-56; OA Tr. at 49:15-51:8; Def's Supp. Br. at PageID 916-17.

is without merit; and (3) the "Addresses for Notices" clause in the mortgage is inapplicable to the event of a change in lender given the terms of the Mortgage. *See generally* Pl's Supp. Br.

In its analysis of the six remaining affirmative defenses raised by Defendants, the Court will first examine whether the defenses are precluded by the waivers in the Loan Modification or Agreement, or whether they are capable of survival, before assessing Plaintiff's specific arguments as to whether a genuine dispute of material fact remains. *See Wells Fargo Bank, N.A. v. Bivona & Cohen, P.C.*, 12-CV-5212 RA, 2015 WL 5752595, at *6 (S.D.N.Y. Sept. 30, 2015).

### 1.    Waiver Provisions

The Modification Agreement signed by LV 35 contains the following provision:

> **No Offset/Defenses** . . . Borrower [LV 35] further acknowledges it has no defenses to payment of the Balance Due, and/or enforcement of the Note, and/or enforcement of the Mortgage and has no right of offset or claim against Lender and hereby waives any and all defenses in or to any claim, action or proceeding made or brought by lender [now, Green Mountain] in an attempt to collect the Balance Due or to enforce any or all of the Loan Documents.

Modification Agreement ¶ 4 at PageID 106; *See* Pl. Memo, ECF 49-10 at PageID 824. *See also* Mortgage at § 4.18 at PageID 50.[16]

It is true that, as a general matter, New York courts have "held that the waiver of the right to assert defenses, counterclaims or set offs" contained in a mortgage modification agreement "is enforceable and thus not violative as against public policy" *per se. Weiss*, 65 N.Y.S.3d at 155 (collecting cases); *see Parasram v. DeCambre*, 668 N.Y.S.2d 454 (App. Div. 1998) (affirming that defendants' "affirmative defenses and counterclaims were properly rejected on the basis of his waiver in the mortgage of the right to interpose in a foreclosure proceeding any defense, setoff or

---

[16] "Mortgagor represents, warrants and covenants that there are no offsets, counterclaims or defenses against the Indebtedness, the Mortgage or the Note and that Mortgagor and the undersigned has full power, authority and legal right to execute the Mortgage and to keep and observe all of the terms of the Mortgage on Mortgagor's part to be observed or performed."

counterclaim"); *cf. Red Tulip, LLC*, 842 N.Y.S.2d at 209 ("Relying on *Citibank* [*v. Plapinger*, 66 N.Y.2d 90, 92 (1985)], New York courts have consistently upheld broadly worded waiver language of this type to preclude the assertion of defenses to a guaranty.").

However, not all defenses may be captured by such waiver provisions.  For example, "it has long been held that a waiver provision will not be enforced as to defenses based on fraud, as such enforcement would violate public policy." *CWCapital Asset Management LLC v. Charney-FPG 114 41st Street LLC*, 117469/2009, 2013 WL 5606731 (N.Y. Sup. Ct. Oct. 7, 2013); *see Sterling Nat. Bank & Tr. Co. of New York v. Giannetti,* 384 N.Y.S.2d 176, 177 (App. Div. 1976).

Moreover, the New York Court of Appeals has established that mortgage foreclosure "cases are not always clear concerning whether what is being discussed is waiver, estoppel, bad faith or unconscionable conduct." *Nassau Tr. Co. v. Montrose Concrete Prod. Corp.*, 56 N.Y.2d 175, 183 (1982).  "They do establish, however, 'that a mortgagor is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of waiver by the mortgagee, or estoppel, or bad faith, fraud, oppressive or unconscionable conduct on the latter's part.'"  *Id.* (citing *Ferlazzo v. Riley*, 278 N.Y. 289, 291 (1938)); *accord Citidress II v. 207 Second Ave. Realty Corp.,* 802 N.Y.S.2d 393 (App. Div. 2005) (cited by Plaintiff); *Green Mountain Holdings (Cayman) Ltd. v. La Hacienda Bufeis LLC*, 21-cv-0574 (ENV), 2023 WL 11804095, at *4 (E.D.N.Y. Mar. 6, 2023), *report and recommendation adopted in part, rejected in part*, 21-CV-574 (ENV) (CLP), 2024 WL 1926076 (E.D.N.Y. May 2, 2024).  "It is also well established that implicit in all contracts is an implied covenant of fair dealing and good faith." *T.C. Murphy Lumber Co. v. Top Ridge, LLC*, 162 N.Y.S.3d 924 (Sup. Ct. 2022) (mortgage foreclosure case finding genuine issue of whether bad faith existed) (citation omitted) .

"Equity, it is true, follows the law, but it does not follow it if the law works a patently shocking result." *Dry Dock*, 270 N.Y.S. at 430; *accord Emigrant Sav. Bank*, 668 F.2d at 675 ("[C]ourts will not assist a party when the right asserted is contrary to the public interest[.]"); *cf. Kopsidas v. Krokos*, 724 N.Y.S.2d 342 (App. Div. 2002) ("The right to maintain an action for a partition is not absolute and is subject to the equities between the parties. . . unclean hands is a defense to the equitable remedy of partition").

The Court concludes that there exist several genuine disputes of material fact that must go to a jury before any foreclosure action may be duly commenced.

### a. Notice Provisions

Defendants had made mortgage payments on or between the 8th or 10th of every month to the true mortgage holder in interest until June 2021. At the relevant time this was 35th Ave Funding.

Unbeknownst to Defendants, their Mortgage had been resold on the secondary market and bought by Green Mountain on June 29, 2021, who brought in its own loan servicer, FCI. FCI was also new to LV 35. At that time Green Mountain nor its servicer, FCI, thought it prudent to let Defendants know about this material change in circumstances. Rather, 10 days later, on July 9, 2021, the day after any payment would be due under the Modification Agreement, FCI purportedly sent the Borrower Welcome Letter to the Subject Premises only. No copy was ever sent any copies to Defendants' attorney listed in the Mortgage's notice provision. The parties genuinely dispute whether Section 4.13 covers assignments of mortgages to new lenders. *See* Pl's Supp. Br. at PageID 906. While Plaintiff's point to various other places in the Mortgage which *require* notice to be sent under the terms of § 4.13, the Mortgage is silent to this core issue. Notably, the Mortgage in the "Further Assurances Clause" contemplates that any assignments by the borrower

(mortgagor) must be noticed to the lender (mortgagee) "for carrying out the intention or facilitating the performance of the terms of the Mortgage[.]"  That clause states in full that:

> The Mortgagor *will*, at the sole cost of the Mortgagor, and without expense to the Mortgagee, do, execute, acknowledge and *deliver all* and every such further acts, deeds, mortgages, assignments, *notices of assignment, transfers* and assurances as the *Mortgagee* s*hall from time to time require*, *for the better assuring, assigning, transferring and confirming unto the Mortgagee the property and rights* hereby mortgaged or assigned or intended now or hereafter so to be, or which the Mortgagor may be, *or for carrying out the intention or facilitating the performance of the terms of the Mortgage*, or for filing, registering or recording the Mortgage and, on demand, will execute and deliver, and hereby authorizes the Mortgagee to execute and file in the name of the Mortgagor to the extent it may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments to evidence more effectively the lien hereof upon the Mortgaged Property or any part thereof.

Mortgage § 1.02 at PageID 19 (emphases added).

Thus, notice of an assignment is at least authorized and required to be given from the borrower to the lender under the Mortgage's own terms.  But the Mortgage is silent, and therefore subject to two interpretations, as to whether such an authorized notice also applies to the lender in relation to the lender "carrying out the intention or facilitating the performance of the terms of the Mortgage."  *Id.*  While silence could mean that such a notice was not required, as Plaintiff argues, it would seem to be contrary to the intent of the parties in such a contract to authorize but not require notice of such assignments because without notice of an assignment, the borrower would be unable to properly perform under Mortgage and pay the proper borrower, as is the case here. And such case would necessarily be contrary to the purpose of "facilitating the performance of terms of the mortgage."  *Id.*  "[W]here the contract's language is ambiguous, its interpretation is a question of fact normally reserved for a jury".  *Well Luck Co. v. F.C. Gerlach & Co.*, 421 F. Supp. 2d 533, 539 (E.D.N.Y. 2005) (citing *State v. Home Indem. Co.,* 66 N.Y.2d 669 (1985)); *Cf. Mount*

*Vernon Fire Ins. Co. v. Harris*, 193 F. Supp. 2d 674, 677 (E.D.N.Y. 2002) ("Determining whether or not the delay in disclaiming was reasonable is generally a question of fact for the jury.").

Separately, on July 15, 2021, after (erroneously) receiving the July 2021 mortgage payment, 35th Ave Funding, via its law firm MMPS, sent the Borrower Goodbye letter to the Subject Property (where Vera did not live) and Vera's home address at 108-68 50th Avenue, Queens.[17]  Vera contends he did not receive this letter until much later and was only put on notice of any issue with the mortgage when NYCB told him about the *lis pendens* filed on the Subject Property.  *See* OA Tr. at 39:16-25, 44:10-17.  Whether Vera had notice at this juncture is thus also genuinely in dispute.

### b.  Failure to Abide by Condition Precedent

Neither Green Mountain nor FCI further contacted defendants until February 2022, some seven months later, when Green Mountain, through its lawyers, sent the Notice of Default and Acceleration to Defendants.  However, under the terms of the mortgage, the election of this remedy required the Mortgagee, now Green Mountain, to "declare" such a remedy.  *See* Mortgage § 3.01 at PageID 39 ("If an Event of Default shall have occurred, Mortgagee may declare . . . sums . . . payable immediately and upon such declaration such principal and interest and other sums shall immediately become due and payable").  Indeed, Plaintiff's supplemental brief concedes as much. Pl's Supp. Br. at 904-05.

While Mortgage is silent as to who this declaration must be made, considering the basic guiding principle for a court in a contract dispute is to determine the intent of the parties. *See Catsoulis v. Parcells*, 06-28164, 2009 WL 5585493 (N.Y. Sup. Ct. Oct. 01, 2009) ("In interpreting a contract, the intent of the parties governs. A contract should be construed so as to give full

---

[17]  And, for some inexplicable reason ,35[th] Avenue Funding did not notify or send back the Bank checks until months later in June 2022.

meaning and effect to all of its provisions.  Words and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement.  Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law[.]").  Here, in a mortgage agreement, a reasonable jury could find any declaration made by the mortgagee should have been made to Defendants, the mortgagor. Plaintiff's counsel conceded that this notice was not mailed in accordance with the Notice provision of the mortgage, as a copy was not also mailed to Defendants' attorney as required under § 4.13(a).  "Under New York law, failure to comply with a condition precedent enumerated in a mortgage agreement is an affirmative defense to a mortgage foreclosure action."  *Onewest Bank, N.A. v. Rosado*, 14 CIV. 9917 (LGS), 2016 WL 3198305, at *3 (S.D.N.Y. June 7, 2016) (citing *Wells Fargo Bank, N.A. v. Eisler*, 988 N.Y.S.2d 682 (App. Div. 2014)).  Accordingly, this affirmative defense may go to a jury.

### c.  Equitable Defenses

Notwithstanding the notice issue, the record also provides enough facts that Green Mountain may have been acting in bad faith in its attempt to foreclose.

Where "a mortgagee makes promises in bad faith, on which the mortgagor relies to his or her detriment, the mortgagee can be equitably estopped from foreclosing on the mortgage." *Massachusetts Mut. Life Ins. Co. v. Gramercy Twins Assocs.*, 606 N.Y.S.2d 158, 160 (App. Div. 1993); *Nassau Tr. Co.*, 56 N.Y.2d at 184 ("An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury") (internal citations omitted).

It is an open question as to whether Green Mountain, through its agents, waived foreclosure, are estopped, or otherwise acted with unclean hands.  However, as aptly stated by the Court of Appeal in *Nassau*:

> He who prevents a thing from being done may not avail himself of the non-performance which he has, himself, occasioned, for the law says to him, in effect; "This is your own act, and, therefore, you are not damnified." The principle is fundamental and unquestioned. Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. We need not go into the question of the accuracy of the description. The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.

*Nassau Tr. Co.*, 56 N.Y.2d at 185.

The *Nassau* case is particularly apt here.  In that case, the Court of Appeals reviewed the mortgage foreclosure action where waiver, unconscionability, and unclean hands were asserted. *Id.* at 183.  In reversing the lower court's grant of summary judgment, the New York Court of Appeals found "unrefuted facts from which, notwithstanding [mortgagor's] admitted delinquencies, a waiver of the right to declare a default and foreclose may be found by the trier of fact." *Id.* at 186.  Specifically, the Court of Appeals pointed to a letter from an officer of the mortgagee bank referring to a conversation with the President of the mortgagor corporation. By the letter, mortgagee granted an extension of payment and agreed to consider further forbearance for a "period of time necessary to complete a closing" on a proposed sale of the mortgaged property. *Id.* at 180.

This case is sufficiently analogous.  Notwithstanding Defendants own technical "delinquencies" there was, in the end, a directive provided by the Plaintiff's then-counsel in writing for Defendants to place the proceeds that would have gone to paying the mortgage into Defense counsel's attorney escrow account.  Undisputed documentary evidence establishes that M&W attorney Weinreb requested that defense counsel Scher "Please hold the June funds in your

escrow account until [the M&W Director] returns and can contact the client for further direction." Ex I. to Scher Default Aff., ECF 17-11. On this representation, Defendants began and continued to pay the monthly interest payments into escrow. *See* Scher Default Aff. ¶¶ 17-20. At some point thereafter, counsel was "ghosted" by M&W. *See id.*; Affirmation of Jonathan L. Scher, ECF 51, ¶ 4. And, prior to Defendants' purported discovery of Green Mountain being the new lender, they had indeed made every mortgage payment as initially contemplated—just to the wrong servicer as they did not have actual notice of the change until May 2022. *See* Ex. D to Scher Default Aff., ECF 17-6. The question of good or bad faith is also bolstered by the purported oral promise not to pursue default made to Defense counsel. Scher Default Aff. ¶¶ 6-9. From the facts adduced above, there are questions to be resolved by a jury as to whether there existed estoppel, bad faith, fraud, oppressive or unconscionable conduct on Green Mountain's part.

Though Defendants resist it, New York law has long been clear on the principles of equity and equities place in in the law of mortgages. "The American legal system rightfully 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" *Souratgar v. Lee Jen Fair,* 818 F.3d 72, 79 (2d Cir. 2016) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945)). "Equity looks to the substance and not merely to the form." *Young v. Higbee Co.*, 324 U.S. 204, 209 (1945). "[I]t was never contemplated that either mortgagor or mortgagee should have an unconscionable advantage over the other. [New York Law] seeks to invest every mortgage foreclosure sale with a conscience" *Cent. New York Mortg. & Title Co. v. Williams*, 279 N.Y.S. 451, 455 (Sup. Ct. 1935).

"As to equity's role in the present case, the over-riding consideration here, as in all such cases, is that the legal right which a party has should not be manipulated to work injustice."

*Markese v. Cooper*, 333 N.Y.S.2d 63, 73 (Co. Ct. 1972) (citing *Noyes v. Anderson*, 124 N.Y. 175, 179 (1891) ("And this is upon the principle of equity jurisprudence that a party having a legal right shall not be permitted to avail himself of it for the purposes of injustice or oppression.")).

This Court cannot agree with Green Mountain that it is "faced with a mere error in technical procedure where the same result would have been reached if another route had been followed and the error therefore should be overlooked." *Ferlazzo*, 278 N.Y. at 292.  Indeed, Defendants own course of conduct in the absence of any notice as required under the Mortgage demonstrates that had they had such notice, they would have simply paid their mortgage on time.  Green Mountain's conduct, whether deliberate or negligent, precluded Defendants from ever choosing that route. Instead, after purchasing the mortgage, Green Mountain provided no notice other than letting FCI send a Welcome Letter, delivery of which is suspect. *See* section F, *supra*.  After allowing the default interest to accrue for seven months, Green Mountain sent a deficient notice of default and acceleration and sought foreclosure just at the maturity date of Mortgage, potentially destroying Defendants attempts to renegotiate.  In sum, "[i]ssues are here raised a determination of which affects the substantial rights of both parties" which require a "trial and full hearing of all the evidence by the trial court." *Id.*

## C.     Striking of Fifth Affirmative Defense

Plaintiffs seek to strike Defendants' fifth affirmative defense as to improper service.  *See* Pl's Memo at PageID 830-31.  Under Federal Rule of Civil Procedure 12(f), a court may strike from a pleading any "insufficient defense." Fed. R. Civ. P. 12(f).  "Motions to strike an affirmative defense are disfavored and should generally not be granted." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 20-CIV-10832 (AT)(SN), 2022 WL 748150, at *3 (S.D.N.Y. Mar. 11, 2022).  Moreover, Plaintiff provides no legal authority in its opening papers to support its position with regard to the

circumstances presenting in the instant case, and plaintiff does not further elaborate on this point

in its reply.  Thus, based on the current record, the Court will not strike Defendant's affirmative

defense at this time.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is **DENED** as to

foreclosure, and plaintiff's motion to strike defendants' fifth affirmative defense is **DENIED**.

**SO ORDERED.**

_____
          _/s/_
ORELIA E. MERCHANT
United States District Judge

Dated:          September 25, 2024
                Brooklyn New York